

Google Office of General Counsel
1600 Amphitheatre Parkway
Mountain View, CA 94043

RE: OkCaller.com
October 17, 2023

Dear Google Legal Team,

I write to address the alleged termination of Google's long-standing strategic reverse phone search partnership with OkCaller.com. This termination has raised serious concerns about potential evidence corruption under 18 U.S.C. §1512.

On August 24, 2023, I sent a letter requesting an investigation into the apparent §1512 matter, specifically with regard to the *Coronavirus Reporter* case. My letter emphasized the necessity of preserving the *status quo* as it existed at the outset of the *Coronavirus Reporter* case, along with all pertinent evidence, including Electronically Stored Information (ESI). Furthermore, on February 13, my client sent a direct email to your office, seeking confirmation that evidence preservation procedures had been appropriately initiated.

Regrettably, these requests seem to have been misdirected to a generic "Removals" department and have, unfortunately, remained unaddressed. While we acknowledge the receipt of your response in good faith, it appears that Google has not sufficiently investigated the core issue. The response from removals@google.com contained the following statement:

> "We received your August 24, 2023 letter regarding your client, Coronavirus Reporter, and the website and your 'advertising partner' OkCaller.com. Contrary to your assertion that 'Google removed OkCaller.com from its listings,' OkCaller.com remains listed in Search and is equally eligible to appear in Search results for user queries."

To clarify, the alleged conduct revolves around Google's removal of OkCaller from Google's reverse phone search algorithm, rather than a straightforward domain removal. Since 2013, when users queried phone numbers like "8005551212" on Google, they were generally redirected to OkCaller or a handful of other competitors. Google had identified OkCaller as a "strategic" account in an email dated 2014. Since then, OkCaller successfully handled a significant portion of Google's mobile phone reverse phone searches, processing up to a quarter million queries daily.

As outlined in my previous letter, on Thanksgiving 2022, Google abruptly removed over 98% of the reverse phone queries that had been directed to OkCaller since 2013. As a result, Google users seeking information about the owners of American mobile phone numbers are no longer directed to OkCaller, rendering the website unviable for ongoing operation. Google employees who had been in contact with OkCaller.com for years have ceased communication. Curiously, a dozen competitors in the reverse-search field remain unaffected.

1000 Elm Street, Suite 800, Manchester, New Hampshire 03101
Tel: 603-622-8100  Fax: 888-912-1497

We kindly request confirmation that Google has indeed investigated this matter and is fully compliant with evidence preservation regulations. We further request that all individuals involved in this matter be identified and their names preserved for possible subpoena in *Coronavirus Reporter*.

It remains perplexing why Google chose to drop OkCaller in favor of cached Personally Identifiable Information (PII) websites, such as spokeo.com. Particularly, this decision seems contradictory in light of the recent request by the U.S. Marshals to restrict cached PII of federal judges. As you are aware, OkCaller collaborated with Google back in 2013 to ensure that the reverse search Search Engine Results Pages (SERPs) never cached CNAM caller ID. OkCaller was the first website to seek this level of PII protection, more than a decade ago. It is paramount that Google swiftly reintroduces this unique protective measure.

Google's advertising partnership with OkCaller has been mutually profitable since its inception in 2013, generating over $5 million annually, with a 60/40 split between OkCaller and Google AdSense. This revenue has now decreased by 98% to $30,000 per annum. Under Sherman and RICO treble damages provisions, OkCaller has already incurred damages exceeding $10 million. Litigation in this matter would undoubtedly be expensive for both parties. A conservative estimate suggests that a three-year trial could accumulate over $30 million in damages and $15 million in attorney's fees.

I respectfully urge Google to consider an alternative dispute resolution (ADR) mediation process to address what appears to be a persistent misunderstanding of this critical issue. If Google is amenable to ADR, please contact me at your earliest convenience. In the absence of ADR, I anticipate escalating this matter within the Department of Justice sometime this month.

Sincerely,

Keith Mathews, Esq.