# EXHIBIT 2

Jeffrey D. Isaacs, M.D.
11482 Key Deer Circle
Wellington, FL 33449
212-257-0737
jeffreydi@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DR JEFF ISAACS<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>GOOGLE LLC<br><br>　　　　　Defendant. | Case No. **24-cv-80395-RLR**<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>DISCOVERY |

## **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO GOOGLE LLC**

To: Google LLC Legal Team

Date: August 12, 2024

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Dr. Jeff Isaacs, hereby requests that Defendant Google LLC respond to the following interrogatories in writing and under oath within thirty (30) days of service.

1. Describe in detail all reasons and decision-making processes that led to the substantial November 2022 changes (hereby "effective termination") of the partnership between Google LLC and OkCaller.com and Google Search placement and/or SERP rankings of its phone directory pages.

2. Identify all individuals at Google LLC, or its attorneys, who were involved in or consulted about the decision to change the search algorithm or manual curation that negatively impacted OkCaller.com's appearance in Google search results.

3. Describe the specific changes made to Google's search algorithm, or manual curation settings, that affected the visibility and ranking of OkCaller.com in search results.

4. Identify and describe any communications between Google LLC or its legal representatives and Apple Inc. or Apple's legal representatives regarding Dr. Jeff Isaacs' involvement as a witness and/or party in the Apple antitrust litigation.

5. Identify all instances in which Google LLC became aware of or was informed about Dr. Jeff Isaacs' role as a party to or witness in the Apple antitrust litigation, including the source of this information.

6. Describe any discussions or communications within Google LLC regarding Dr. Jeff Isaacs' involvement in the Apple antitrust litigation and how it may impact the partnership with OkCaller.com or rankings or appearance in Search.

7. Identify all reverse phone search websites that Google LLC ranks in its search engine results that have features or functionalities similar to those initially implemented by OkCaller.com. Identify the processes and procedures involved in curating and/or ranking these websites in Search.

8. Describe Google LLC's awareness of any reverse phone search websites that replicated the interface, design, or functionality of OkCaller.com since its inception, and explain any actions taken by Google LLC in response to this awareness.

9. Describe in detail any investigation or analysis conducted by Google LLC concerning the potential infringement of Dr. Jeff Isaacs' patent (RE48847) by other reverse phone search websites or Play Store apps.

10. Explain the rationale behind Google LLC's decision not to engage in mediation with Dr. Jeff Isaacs or OkCaller.com/Greenflight regarding a resolution of this matter.

11. Explain any specific changes OkCaller could implement to regain its presence on Google search and prior organic traffic levels.

12. Identify all individuals or entities outside of Google LLC, including legal representatives, who have communicated with Google LLC about Dr. Jeff Isaacs' role

as a witness in any litigation, including the Apple antitrust case, or about allegations against him.

13. Describe any agreements or understandings between Google LLC and Apple Inc. that could have influenced the decision to terminate the partnership with OkCaller.com or to alter its ranking in search results. Specifically this shall include any purported security knowledge exchanges between the companies. In other words, could or did Apple flag OkCaller as an unsafe or otherwise adverse risk site, leading to Google's subsequent effective termination.

14. Identify and describe any internal policies or guidelines at Google LLC related to the treatment of websites that replicate the key features and functionalities of existing sites like OkCaller.com. Include global sites for other phone systems that copied the look and feel and functionality of OkCaller.

15. Explain the steps, if any, taken by Google LLC to address or remedy the decline in OkCaller.com's search rankings after Dr. Jeff Isaacs raised concerns about the issue.

16. Explain any lost or auto-deleted ESI that may impact this case, why it occurred, and what remediation is possible.

17. Explain how reverse phone sites are manually curated by Google and selected based on criteria for inclusion in Search. Explain specifically how this industry, and other information portals, have millions of pages that each may have a PageRank or derived metric score, but are subject to human and or manual curation and selection. In other words, explain how sites like OkCaller are featured on Google not purely algorithmically, but on human scoring and deliberation of factors. Explain what factors

are considered in phone search, and information portals/directorys/vertical search niches, generally.

18. Identify and describe and explain how aspiring competitors to currently ranked vertical niche search portals can establish competitive and meaningful rankings on Search. Include discussion of the Webmaster/Search Console submission tools such as sitemaps. Include documentation or knowledge Google possesses that many valid competitors are never ranked, despite substantial investments in time and money and developer resources.

19. Explain why FactMed.com was removed from substantial search presence, and how it compared to the Search's primary listing in that field (FDA adverse event informatics). Explain the losses to consumers and patients from only ranking the less accurate information provided by the main competitor.

20. Identify and describe generally what efforts Google has contemplated to provide more transparency to developers of vertical niche informatics sites (such as FactMed or OkCaller) as to the metrics used to evaluate them. Include what impact this could have on competition. Include comparison to established best practices such as government-bidding contract scoring, where a search site like FactMed or Okcaller could see how it compares to competitors in scoring, and either dispute these scores or improve areas to foster competition and obtain ranking, resulting in better overall search results for consumers. Explain why Google has not implemented such transparency in nearly two decades. Provide information if such transparency was ever researched and considered by Google.

21. Identify and describe Google's estimates on the overall loss of time and developer resources that results from vertical search sites never being ranked on Search, despite having preferable and or higher quality data and interface. Explain the corresponding estimate on loss of quality and quantity of consumer search results from the non-ranking/erroneous ranking of seach sites that out-compete existing SERP results, such as FactMed or Okcaller and their respective competitors.

22. Identify and describe the impact of the *DOJ v Google* verdict on Google's policies and procedures relevant to web developers of vertical niche search sites like FactMed and/or OkCaller.

Issued on this 12th day of August 2024.

/s/ Jeffrey D. Isaacs
Jeffrey D. Isaacs, M.D.
11482 Key Deer Circle
Wellington, FL 33449
212-257-0737
jeffreydi@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, a true and correct copy of the foregoing Plaintiff's First Set of Interrogatories was served via email upon the following:

Google LLC Legal Team

/s/ Jeffrey D. Isaacs
Jeffrey D. Isaacs, M.D.
11482 Key Deer Circle
Wellington, FL 33449
212-257-0737
jeffreydi@gmail.com