**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:24-cv-80395-RLR-BER**

GREENFLIGHT VENTURE CORPORATION,

    Plaintiff,

v.

GOOGLE LLC,

    Defendant.

_____

**DEFENDANT GOOGLE'S MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ...........................................................................................................1

ARGUMENT ................................................................................................................2

I.     Count 1 Fails to State a Section 2 Claim Because Plaintiff Is Not a Participant in the Alleged Relevant Market and Thus Lacks Antitrust Standing. ................................. 2

II.    Count 2 Fails to State a Section 1 Claim Because There Are No Well Pleaded Facts Supporting an Agreement Between the Defendant and a Third Party. .................... 4

III.   Count 3 Fails to State a Section 2 Claim. ........................................................... 7

       A.     Relevant Market, Monopoly Power, and Antitrust Standing................................ 7

       B.     Refusal to Deal.................................................................................... 8

IV.   Count 4 Fails to State a Claim Under the Florida Deceptive and Unfair Trade Practices Act. ...................................................................................................... 10

V.    Count 5 Fails to State a Claim Under the California Unfair Competition Law............... 11

       A.     The "Unlawful Business Practices" Prong. ......................................... 12

       B.     The "Unfair" Prong............................................................................. 12

       C.     The "Fraudulent" Prong. .................................................................... 12

VI.   Count 6 Fails to State a Claim for Patent Infringement.................................................. 13

       A.     Plaintiff's Direct Infringement Claims Should Be Dismissed............................. 14

       B.     Plaintiff's Indirect and Willful Infringement Claims Should Be Dismissed. ....... 16

       C.     Plaintiff Has No Basis to Assert Infringement of RE'847 Patent Claims 1–6. .... 18

    CONCLUSION....................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

*Cases* **Pages**

*Addiction & Detoxification Inst. LLC. v. Carpenter*,
620 Fed. App'x. 934 (Fed. Cir. 2015)................................................................17

*Aerotec Int'l, Inc. v. Honeywell Int'l,* Inc.,
836 F.3d 1171 (9th Cir. 2016) .........................................................................10

*Align Tech., Inc. v. 3Shape A/S*,
339 F. Supp. 3d 435, 449 (D. Del. 2018)..........................................................18

*Andren v. Alere, Inc.*,
207 F. Supp. 3d 1133 (S.D. Cal. 2016)..............................................................13

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018) .................................................................14–16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................1, 11, 14, 15

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)........................................................................................8

*Associated Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*,
459 U.S. 519 (1983).......................................................................................3

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990).......................................................................................3

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021).........................................................................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................4, 5, 7, 14, 15

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .........................................................................16

*Boyd v. Experian Info. Sols., Inc.*,
692 F. App'x 980 (11th Cir. 2017) ...................................................................1

*Brooks v. Blue Cross & Blue Shield of Fla.*,
116 F.3d 1364 (11th Cir. 1997) (per curiam).....................................................9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..................................................................................12

# TABLE OF AUTHORITIES

*(continued)*

| *Cases* | **Pages** |
| --- | --- |

*Coronavirus Reporter, et al. v. Apple, Inc., et al.*,
   85 F.4th 948 (9th Cir. 2023) ...................................................................................2

*Cross v. Dick's Sporting Goods, Inc.*,
   No. 21-198, 2022 WL 138038 (N.D. Ind. Jan. 14, 2022) ................................14

*DJ Lincoln Enters., Inc. v. Google, LLC*,
   No. 20-14159, 2021 WL 3079855 (S.D. Fl. July 21, 2021), *aff'd*, 2022 WL 203365
   (11th Cir. Jan. 24, 2022) (per curiam) .............................................................11

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022) ............................................................................5

*Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*,
   797 F.3d 1248 (11th Cir. 2015) .......................................................................7, 8

*Farmers Ins. Exch. v. Superior Court*,
   2 Cal. 4th 377 (1992...........................................................................................12

*Fed. Trade Comm'n v. Alcoholism Cure Corp.*,
   No. 10-266, 2012 WL 12903173 (M.D. Fla. July 3, 2012) ..............................10

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ..............................................................................3

*Feldman v. Palmetto Gen. Hosp., Inc.*,
   980 F. Supp. 467 (S.D. Fla. 1997) ......................................................................4

*Fla. Seed Co. v. Monsanto Co.*,
   105 F.3d 1372 (11th Cir. 1997) .......................................................................3, 7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013)..........................................................................19

*Gen. Indus. Corp. v. Hertz Mountain Corp.*,
   810 F.2d 795 (8th Cir. 1987) .............................................................................10

*Glob. Tech Led, LLC v. Every Watt Matters, LLC*,
   No. 15-61933, 2016 WL 6682015 (S.D. Fla. May 19, 2016)............................16

*H. Lundbeck A/S v. Lupin Ltd.*,
   87 F.4th 1361 (Fed. Cir. 2023) ..........................................................................17

## TABLE OF AUTHORITIES
*(continued)*

|  *Cases* | **Pages** |
|---|---|

*Hawk Tech. Sys. v. Brickell Fin. Ctr.*,
   No. 13-24005, 2014 WL 11946879 (S.D. Fla. Feb. 27, 2014) ..........................................16

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016).................................................................................................3

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012).........................................................................................17

*In re ZTE (USA) Inc.*,
   890 F.3d 1008, 1012 (Fed. Cir. 2018)...............................................................................14

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017).........................................................................................16

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
   626 F.3d 1327 (11th Cir. 2010) ...........................................................................................5

*JES Prop., Inc. v. USA Equestrian, Inc.*,
   253 F. Supp. 2d 1273 (M.D. Fla. 2003) ..............................................................................5

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...........................................................................................13

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
   72 F.3d 1538 (11th Cir. 1996) .............................................................................................4

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017)....................................................................................14, 17

*Lombard's Inc. v. Prince Mfg. Inc.*,
   583 F. Supp. 1572 (S.D. Fla. 1984), *aff'd*, 753 F.2d 974 (11th Cir. 1985)........................4

*MCI Commc'ns Corp. v. AT&T*,
   708 F.2d 1081 (7th Cir. 1983) ...........................................................................................10

*Morris Communications Corp. v. PGA Tour, Inc.*,
   364 F.3d 1288 (11th Cir. 2004) .....................................................................................9, 10

*Musselman v. Blue Cross & Blue Shield of Ala.*,
   684 F. App'x 824 (11th Cir. 2017) ...................................................................................5, 7

**TABLE OF AUTHORITIES**

*(continued)*

|                                  | *Cases* | **Pages** |

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) (en banc) ............................................................... 3

*Queen City Pizza, Inc. v. Domino's Pizza, Inc*.,
  124 F.3d 430 (3d Cir. 1997) ............................................................................ 6

*Sundesa, LLC v. JH Studios, Inc.*,
  No. 19-1809, 2020 WL 4003127 (M.D. Fla. July 15, 2020) ............................... 14

*TransPetrol, Ltd. v. Radulovic*,
  764 So. 2d 878 (Fla. 4th DCA 2000) ................................................................ 11

*Universal City Studios v. Nissim Corp.*,
  No. 14-81344, 2015 WL 1124704 (S.D. Fla. Mar. 12, 2015) .............................. 18

*Upstream Holdings, LLC v. Brekunitch*,
  No. 22-3513, 2022 WL 17371052 (C.D. Cal. Aug. 3, 2022) .............................. 14

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) .................................................................................... 8, 9

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc*.,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................................ 13

*Watson v. Bally Mfg. Corp.*,
  844 F. Supp. 1533 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438 (11th Cir. 1996) ........... 9

*Whitepages, Inc. v. Isaacs*,
  196. F. Supp. 3d 1128 (N.D. Cal. 2016) .......................................................... 18

*Whitepages, Inc. v. Greenflight Venture Corp.*,
  698 F. App'x 613 (Fed. Cir. 2017) .................................................................. 18

## <u>TABLE OF AUTHORITIES</u>
*(continued)*

|  | Pages |
|---|---|
| *Other Authorities* | |

35 U.S.C. § 271(c) ...........................................................................................................17

5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1357 (1990)......9

Cal. Bus. & Prof. Code § 17200 ......................................................................................11

M.P.E.P. § 1455 ..............................................................................................................19

This action began as a *pro se* patent infringement suit.  DE 1.  After the flaws in that claim were bared in Defendant's Motion to Dismiss, DE 16, a First Amended Complaint ("FAC") was filed by the original plaintiff, Dr. Jeffrey Isaacs, and a new, related party he controls, Greenflight Venture Corporation ("GFVC").  DE 24.[1]  The FAC changed tack entirely, appending claims sounding in federal antitrust law and related state laws, as well as class action contentions.  The resultant sprawl fares no better than the original complaint.  The new claims either do not allege essential elements or, at best, parrot them in conclusory fashion without allegations of facts in support, such as to fail under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The FAC's tweaks to the original patent infringement claim do not rectify its deficiencies.  The patent count continues, among other things, to fail to identify what Google does that allegedly infringes the asserted patent.  For the reasons discussed below, the motion to dismiss the FAC should be granted.

## BACKGROUND

Plaintiff GFVC operates a website known as OkCaller.com that provides reverse phone search capability to its users.  FAC ¶¶ 23–24.[2]  The FAC uses the term "reverse phone search" to mean one in which a user seeks to obtain or verify information regarding the owner of a particular telephone number.  FAC ¶ 77.

Defendant Google LLC ("Google") operates the world's most widely used general search engine.  FAC ¶ 11.  The FAC defines a "general search engine" as an application that allows consumers to find responsive information on the internet by entering keyword queries.  FAC

---

[1] The original plaintiff's claims have been either dismissed or severed and stayed.  DE 26.

[2] As Google must on a motion to dismiss, it accepts as true all *adequately-pleaded* allegations of fact.  *See Boyd v. Experian Info. Sols., Inc.*, 692 F. App'x 980, 983 (11th Cir. 2017) (affirming district court's dismissal of claim because it was not adequately pleaded).

1

¶ 60.  The FAC asserts that a general search engine such as Google is "distinct" from a reverse phone search application such as OkCaller.com because of the breadth of types of information that can be accessed using a general search engine.  FAC ¶¶ 60, 67.

According to the FAC, beginning in 2015, OkCaller.com had over 200,000 users per day. FAC p. 15 (chart).  GFVC attributes its volume of usage, in part, to how OkCaller.com was displayed and ranked on Google's search engine results pages in response to user search queries. FAC ¶ 54.

Other websites began to emulate OkCaller.com and, by 2018, its traffic had fallen by approximately half.  FAC ¶ 56; *see also* FAC p. 15 (chart).  As still more websites offering similar services emerged, OkCaller.com's usage continued to decline.  FAC p. 15 (chart); FAC ¶ 59.  In late 2022, OkCaller.com's traffic allegedly fell to near zero.  FAC p. 15 (chart). The FAC speculates that OkCaller.com's decline is connected in some fashion to actions Google took after Dr. Issacs filed an appellate brief in a case he had brought against Apple, Inc., although the allegation is coupled with statements such as "as best as Plaintiffs' [sic] can ascertain prior to discovery."  FAC ¶¶ 33–36.[3]

## ARGUMENT

**I.    Count 1 Fails to State a Section 2 Claim Because Plaintiff Is Not a Participant in the Alleged Relevant Market and Thus Lacks Antitrust Standing.**

Count 1 alleges that "general search services" is a relevant antitrust market, FAC ¶ 99, and that Google has "maintained and abused its monopoly power in general search services," FAC ¶ 100, through exclusionary conduct that has "foreclosed a substantial share of the general

---

[3] The appeal in Dr. Isaacs's case against Apple described in these paragraphs of the FAC is *Coronavirus Reporter, et al. v. Apple, Inc., et al.*, 85 F.4th 948 (9th Cir. 2023) (affirming district court's dismissal with prejudice of all claims of Jeffrey Isaacs and related parties against Apple, Inc., including alleged antitrust violations).

search services market," FAC ¶ 101.  GFVC asserts that market is comprised of general search engines, a type of entity it contends is "unique," FAC ¶ 60, and that vertical search providers, such as itself, are "distinct" from those general search engines, FAC ¶ 67.

A private plaintiff that brings a federal antitrust claim must demonstrate antitrust standing, including antitrust injury.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).  "Antitrust injury" means more than simply the type of injury that would satisfy the Article III standing requirement.  *See Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) (affirming district court's dismissal due to lack of antitrust standing and stating that "[a]ntitrust standing requires more than . . . required by Article III of the Constitution."); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (en banc) ("[A]ntitrust standing and Article III standing are not one and the same, and we not only may—but we must—reject claims under Rule 12(b)(6) when antitrust standing is missing.").

To satisfy that antitrust standing requirement, a plaintiff must, among other things, show "that it is a customer or competitor in the relevant antitrust market."  *Fla. Seed Co.*, 105 F.3d at 1374 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 539 (1983)).  Where the plaintiff's alleged injuries do not occur in the alleged relevant market at issue, the plaintiff has not shown antitrust injury and thus lacks antitrust standing.  It is well-established that "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury."  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020); *see also In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016).

On this point, the FAC's allegations are clear: GFVC is not a general search engine and it does not participate in the only antitrust market alleged to be impacted in Count 1, a general

search services market.  FAC p. 36 (title of First Claim); FAC ¶ 99.  It therefore cannot satisfy the antitrust standing requirement, this defect is incurable, and Count 1 must be dismissed.

## II.    Count 2 Fails to State a Section 1 Claim Because There Are No Well Pleaded Facts Supporting an Agreement Between the Defendant and a Third Party.

Count 2 asserts a Sherman Act Section 1 claim with regards to three alleged markets: general search services, vertical search provider (VSP) services, and reverse phone search services.  The antitrust standing issues identified in Section I, *supra*, similarly require the dismissal of Count 2 as it relates to an alleged general search services relevant market.  *See Feldman v. Palmetto Gen. Hosp., Inc*., 980 F. Supp. 467, 470 (S.D. Fla. 1997) (dismissing Sherman Act Section 1 and Section 2 claims because "plaintiff lacks antitrust standing").

Count 2 fails for additional reasons.  A Section 1 claim requires "an agreement between two or more persons to restrain trade, because unilateral conduct is not illegal under section 1." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996).  To be sure, Count 2 mimics the words of this requirement: "Google has entered into agreements and engaged in unilateral and bilateral practices that unfairly demote the search rankings of [GFVC]." FAC ¶ 108; *see also* FAC ¶ 112 ("agreements with strategic partners that result in manipulation of search rankings").  But those conclusory allegations do not plead facts that actually establish the existence of any agreement between Google and a third party to restrain trade, much less how any such agreement harmed Plaintiff.  As such, they do not satisfy Rule 12(b)(6).  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lombard's Inc. v. Prince Mfg. Inc*., 583 F. Supp. 1572, 1573–74 (S.D. Fla. 1984), *aff'd*, 753 F.2d 974 (11th Cir. 1985) (dismissing Section 1 claim because although plaintiff identified a purchase agreement, the "plaintiff's conclusory allegation of a conspiracy to restrain trade will not survive a motion to dismiss").

GFVC states that Count 2 is "intended to invoke the claim theory discussed in

4

*Dreamstime v. Google LLC, Ninth Circuit.*"  FAC ¶ 107.  If GFVC means to suggest that one can adequately plead a claim by reference to a claim made by an unrelated party, it is wrong. *Musselman v. Blue Cross & Blue Shield of Ala.*, 684 F. App'x 824, 828 (11th Cir. 2017) (to survive a motion to dismiss "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face'" (citing *Twombly*, 550 U.S. at 570)).  In any event, the Ninth Circuit in *Dreamstime* affirmed the dismissal, with prejudice, of the antitrust claims brought there.  *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1134 (9th Cir. 2022).  GFVC misrepresents the *Dreamstime* opinion when it asserts that the Ninth Circuit "held that Google's self-preferencing and manipulation of SERPs could constitute a claim under Sherman Act § 1." FAC ¶ 107.  GFVC appears to rely on *dicta* from that decision in which the court mused as to whether a claim the plaintiff there expressly had disavowed could have satisfied Rule 12(b)(6)'s pleading requirements.  54 F.4th at 1142.  But given that such a claim had been disavowed, the decision did not examine the question closely.  It certainly did not "hold" that such a claim, much less the claim asserted here, could proceed.  To the contrary, the Ninth Circuit's holding was to affirm the dismissal of plaintiffs' claims with prejudice.  54 F.4th at 1134.

Count 2 adds two additional alleged relevant markets not asserted in Count 1: a VSP market and a reverse phone search market.  Those market allegations are threadbare and inadequate.  They fail to provide "factual allegations of the cross-elasticity of demand or other indications of price sensitivity . . . [that] are crucial to understanding whether a separate market exists[.]"  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338–39 (11th Cir. 2010) (dismissing plaintiff's Sherman Act claim because "the complaint's allegations of the relevant product market are legally insufficient"); *see also JES Prop., Inc. v. USA Equestrian, Inc*., 253 F. Supp. 2d 1273, 1282 (M.D. Fla. 2003) ("Where an antitrust plaintiff fails to define its proposed

relevant market with reference to rule of reasonable interchangeability and cross-elasticity of

demand, or alleges a proposed relevant market that clearly does not encompass all

interchangeable substitute products even when all factual inferences are granted in plaintiff's

favor, relevant market is legally insufficient and a motion to dismiss may be granted." (citing

*Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430, 436 (3d Cir. 1997)).

GFVC's allegations fail this test.  As to a VSP market, GFVC includes Google Shopping,

FAC ¶ 71, but fails to address Amazon or Walmart.  The same market allegedly includes Google

Flights, FAC ¶ 71, but fails to address booking.com or Expedia.  FAC ¶ 71.  The idea that

GFVC's product, a reverse phone lookup, is interchangeable with Google Flights or Google

Shopping is implausible.

The reverse phone lookup market allegations fare no better.  The FAC itself refers to the

*many* competitors to OkCaller.com, FAC ¶ 55 (alleging it was "emulated literally around the

web" by "dozens of phone websites"), but when the alleged "relevant market" is discussed, it

manages to mention only two.  FAC ¶ 80.  The FAC thus ignores dozens of obvious competitor

websites and applications that GFVC admits market themselves as "reverse phone lookup."  The

alleged market also includes Google, which the FAC contends is a "general search engine."

FAC ¶ 11.  There is no contention that Google offers the same sort of reverse phone lookup

functionality as OkCaller.com does.  Indeed, the FAC equivocates, stating "*to the extent* Google

itself serves as a reverse search service."  FAC ¶ 87 (emphasis added).  Any theoretical market

broad enough to include both Google's general search engine and dedicated reverse phone

lookup applications such as OkCaller.com would have to consider other alternatives as well:

whether that be other general search engines, social media, online directories, or many others.

The FAC utterly fails to do so.

### III.        Count 3 Fails to State a Section 2 Claim.

Count 3 of the FAC presents the third variant of GFVC's antitrust claims: an alleged unlawful refusal to deal under Section 2 of the Sherman Act.  Among other things, such a claim requires, like any other Section 2 claim: well-pleaded allegations of relevant market and monopoly power in that market, *see Duty Free Americas, Inc. v. Estee Lauder Cos., Inc*., 797 F.3d 1248, 1263 (11th Cir. 2015), as well as a plaintiff with antitrust standing, *see Fla. Seed Co., Inc.*, 105 F.3d at 1374.  Finally, it requires an actionable refusal to deal.

### A.        Relevant Market, Monopoly Power, and Antitrust Standing.

The failure of the FAC to meet the fundamental requirements of relevant market, monopoly power, and antitrust standing have been largely addressed in Sections I & II, *supra*. As to the alleged general search engine market, GFVC lacks antitrust standing because it is not a participant in that market.  *See* Section I, *supra.*

As to the alleged VSP and reverse phone search markets, plaintiffs' allegations of a properly defined market fail.  *See* Section II, *supra*.  In addition, the allegations of Google's monopoly power in those markets are implausible.  *Musselman*, 684 F. App'x at 828 ("When ruling on a Rule 12(b)(6) motion . . . the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'") (citing *Twombly*, 550 U.S. at 570).  In the VSP market, it alleges monopoly power in searches for travel information, while ignoring competitors such as booking.com, Expedia, and others; it alleges monopoly power in shopping-related searches, ignoring competitors such as Amazon and Walmart, among others.  FAC ¶ 71.  Likewise, in the reverse phone lookup market, the complaint only contains speculation as to the percentage of queries that go to Google.  The FAC states "Google is estimated to own over 90% of the reverse phone search market in the USA."  FAC ¶ 80.  Estimated by whom?  That speculation is stated in mathematical terms does not make it well-pleaded.

B.      **Refusal to Deal.**

Count 3 fails for an additional, independent reason: the failure to allege anticompetitive conduct.  *Duty Free Americas, Inc.*, 797 F.3d at 1265.  Count 3 expressly invokes the Supreme Court's 1985 decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), FAC page 39 (Count 3 title), ¶¶ 118–19.  GFVC's claims, however, cannot satisfy the four decades of law that have interpreted the boundaries and limitations of *Aspen Skiing*.

Since *Aspen Skiing*, it has become well settled that a company's unilateral refusal to deal is not unlawful, absent extremely limited circumstances.  *See Duty Free Americas, Inc.*, 797 F.3d at 1265–66.  There is a "long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal."  *Id.* at 1265 (quoting *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, *LLP*, 540 U.S. 398, 408 (2004) ("*Trinko*")).  Thus, "the Court has 'been very cautious in recognizing . . . exceptions' to that rule 'because of the uncertain virtue of forced sharing and the difficulty of identifying and remedying anticompetitive conduct by a single firm.'"  *Id.* (quoting *Trinko*, 540 U.S. at 408).  In *Trinko*, the Court explained that the *Aspen Skiing* decision was "at or near the outer boundary of § 2 liability."  540 U.S. at 399.  The facts that placed *Aspen Skiing* there critically included a defendant who refused to sell to the plaintiff at the defendant's own market retail price after the two parties engaged in a long-term profitable course of dealing. *Duty Free Americas*, 797 F.3d at 1266 (citing *Trinko*).

Unlike in *Aspen Skiing*, where there had been a prior course of dealing pursuant to which the parties jointly offered a product together, the FAC here contains no such allegation.  Instead, the FAC vaguely points to an alleged refusal "to provide fair and equitable access to [Google's] search engine results."  FAC ¶ 120.  GFVC has not (and could not) allege that Google *previously* agreed with Plaintiff to rank OkCaller.com in any particular manner, or at any particular rate, in

its search engine results.  Nor does GFVC allege any facts to support the notion that Google has decided to not display Plaintiff's webpages in Google Search results if Google's algorithms determine that they are relevant to a user query.  Indeed, GFVC admits that OkCaller.com has not been removed from Google and that reverse phone queries continue to emanate from Google to the website, albeit at a significantly lesser rate.  *See* DE 34-4 (referring to a reduction in the number of reverse phone queries to OkCaller and acknowledging that there has not been a "domain removal").[4]  GFVC's allegations therefore cannot satisfy *Trinko*.

GFVC's reliance on the so-called "essential facilities doctrine" in Count 3 does not improve its claim.  FAC ¶ 123.  That doctrine never has been recognized by the Supreme Court. *Trinko*, 540 U.S. at 411.  The lower courts that even have considered such a Section 2 theory have placed strict limits on it:  "Under the essential facility test, a company that has exclusive control over a facility essential to effective competition may not deny potential competitors access to the facility on reasonable terms and conditions if to do so would create or maintain monopoly power in the relevant market.  . . . In the absence of any purpose to create or maintain a monopoly, however, a company may deal or refuse to deal with whomever it pleases.  . . . Even a company with monopoly power . . . may refuse to deal with them if valid business reasons exist."  *Morris Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294–95 (11th Cir. 2004).  Put another way, such actions are only unlawful if they are "without a legitimate purpose

---

[4] The Court is permitted to consider this document for at least two reasons.  First, this is among the writings referred to in FAC ¶ 34 and a court may consider writings explicitly referenced and relied on (but not attached) to a complaint on a motion to dismiss.  *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).  Second, the court is permitted to consider "items appearing in the record of the case" when determining whether to grant a motion to dismiss.  *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n. 1 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438 (11th Cir. 1996), quoting 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1357 (1990).

that makes sense only because it eliminates competition." *Id.* at 1295 (quoting *Gen. Indus. Corp. v. Hertz Mountain Corp.*, 810 F.2d 795, 804 (8th Cir. 1987)).  As explained by an out-of-Circuit case post-*Trinko*:  "Because mandating access, as the essential facilities doctrine implies, shares the same concerns as mandating dealing with a competitor, a facility is essential 'only if control of the facility carries with it the power to *eliminate* competition in the downstream market.'" *Aerotec Int'l, Inc. v. Honeywell Int'l,* Inc., 836 F.3d 1171, 1185 (9th Cir. 2016) (emphasis in original).[5]

The FAC does not adequately allege that Google is an essential facility for OkCaller.com, such that Google's actions have eliminated the firm from offering reverse phone search services. To the contrary, GFVC acknowledges it still receives traffic via Google.  Nor does GFVC allege that Google's actions only could make sense because they have eliminated competition.  GFVC itself acknowledges it does not know why it dropped in Google's rankings, expressing a need for discovery, and indeed hypothesizes a reason unrelated to competition.  FAC ¶ 36.

**IV.    Count 4 Fails to State a Claim Under the Florida Deceptive and Unfair Trade Practices Act.**

Count 4 alleges a violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA").  Plaintiff attempts to support this claim with the same allegations of "monopolistic and anticompetitive conduct" that purportedly support their antitrust claims.  FAC ¶ 126.  The FDUTPA is to be read in harmony with federal antitrust law.  *Fed. Trade Comm'n v. Alcoholism Cure Corp.*, No. 10-266, 2012 WL 12903173, at *1, n.1 (M.D. Fla. July 3, 2012).  Accordingly, for the reasons set forth in Sections I-III above, GFVC has failed to state a claim under federal antitrust law and recasting them under FDUTPA does not change that outcome.

---

[5] GFVC relies only on a pre-*Trinko* out-of-Circuit case, *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081 (7th Cir. 1983).  FAC ¶ 123.

To the extent Count 4 contains allegations beyond those rooted in antitrust law, it fares no better. While a FDUTPA claim need not necessarily involve an allegation of fraud, GFVC's does as it contends Google has "misled and deceived consumers." FAC ¶ 128.[6] Thus, GFVC must satisfy Rule 9(b)'s particularity requirements. It has not done so.

The conclusory allegations of Count 4 do not satisfy 9(b). In particular, no affirmative misrepresentation is alleged, much less with the particularity required under Rule 9(b). Nor does GFVC allege that Google intentionally withheld information it was required to disclose. Under Florida law, a duty to disclose arises only in specific circumstances, and GFVC has not alleged (much less with particularity) the circumstances from which such a duty might arise. *See DJ Lincoln Enters., Inc. v. Google, LLC*, No. 20-14159, 2021 WL 3079855 at *3–4 (S.D. Fl. July 21, 2021), *aff'd*, 2022 WL 203365 (11th Cir. Jan. 24, 2022) (per curiam); *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000).[7]

## V.      Count 5 Fails to State a Claim Under the California Unfair Competition Law.

For reasons similar to those discussed with respect to the FDUTPA claim, the California law claim fails as well. California's Unfair Competition Law ("UCL") has multiple prongs. *See* Cal. Bus. & Prof. Code § 17200. The FAC parrots the words of all of them, but fails to set forth sufficient factual matter to state a facially plausible claim for relief. *Iqbal*, 556 U.S. at 678.

---

[6] Resolving any doubt, GFVC's California law claims in Count 5 expressly contend Google's conduct is fraudulent. FAC ¶ 139.

[7] Count 4 also contains the outlandish accusation that Google has "violate[d] federal witness protection statutes, including 18 USC 1512." FAC ¶ 131. The body of the FAC makes clear that this charge rests on speculation and conclusory statements, as opposed to well-pleaded facts. The FAC alleges that "Plaintiff's legal counsel has determined that substantiated concerns [sic] exist that Google violated witness retaliation laws, such as Section 1512," FAC ¶ 35, and that "as best as Plaintiffs' can ascertain prior to discovery" Google acted against Dr. Isaacs after learning about his litigation history. FAC ¶ 36.

### A.       The "Unlawful Business Practices" Prong.

Under the UCL's unlawful business act or practice prong, the statute "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999) (citing *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992)). Count 5 alleges that Google "as detailed in the preceding counts" violated "the Sherman Act, FDUTPA as well as other federal and state laws." FAC ¶ 137. For all of the reasons discussed in Sections I-IV, *supra*, the pleading requirements of those borrowed violations have not been met.

### B.       The "Unfair" Prong.

The California Supreme Court has explained that any finding of unfairness to competitors under section 17200 must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 187–88. "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187. The FAC's attempt to meet the unfair prong consists of a single paragraph, parroting the words of that portion of the statute. For all the reasons set forth in Sections I-III, *supra*, GFVC has not set forth a plausible claim of an antitrust violation. The addition of a rote recital of California's UCL cannot convert a failed federal antitrust claim into a viable California state law claim.

### C.       The "Fraudulent" Prong.

A claim under the UCL's fraud prong must satisfy the particularity requirements of Rule

9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  And where a competitor

is suing for fraud under the UCL, it must "show deception to some members of the public[.]"

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001)

(explaining there is "no case under the 'fraudulent' prong of § 17200 allowing one competitor to

proceed against another on the basis that the defendant deceived him").  For an allegation of

misrepresentation, the plaintiff must specify with particularity what the misrepresentations

stated, when consumers were exposed, and which misrepresentations were material.  *Andren v.*

*Alere, Inc*., 207 F. Supp. 3d 1133, 1141 (S.D. Cal. 2016).  Claims of fraudulent omission require

a plaintiff to "allege facts either showing that the alleged omissions are 'contrary to a

representation actually made by the defendant, or showing an omission of a fact the defendant

was obliged to disclose.'"  *Id*.  The FAC is so impermissibly vague that it fails to state the type of

fraud claim Plaintiff is bringing, much less plead facts that could satisfy any of the requisite legal

elements.  Instead, Plaintiff invokes in sweeping terms a supposed deception of consumers and

competitors with regards to how Google ranks search results.  FAC ¶ 139.  However, the FAC

elsewhere makes clear that GFVC's dispute with Google is not about a misrepresentation made

to the public (without which there can be no fraud claim under the UCL), but really about

Google's refusal to discuss GFVC's wild theories with it.  FAC ¶¶ 33, 34.

**VI.    Count 6 Fails to State a Claim for Patent Infringement.**

This is not the first time Google has moved to dismiss claims of patent infringement in

this case.  Google previously moved to dismiss Dr. Isaacs's claims of infringement of U.S.

Patent No. RE48,847 on the basis that his complaint failed to identify an infringing product and

accordingly did not plausibly plead a claim of infringement.  *See* DE 16 (Google Motion to

Dismiss) at 6–7, 11–12.  Google also moved to dismiss on grounds that the complaint alleged

infringement of patent claims that were canceled.  *Id.* at 12.  The Court did not reach these

arguments, but instead dismissed Dr. Isaacs' patent infringement claim for lack of standing.  DE 26 (Order Granting Motion to Dismiss).

GFVC joined this action as a plaintiff via the FAC.  DE 24.  Rather than fix the fundamental errors in Dr. Isaacs's claims, GFVC has chosen to double down.  GFVC pleads a claim for infringement yet admits it still cannot identify any product that allegedly infringes. And GFVC reasserts infringement of canceled patent claims that are of no legal force, as Google previously set forth.  The Court should dismiss GFVC's infringement claims with prejudice.

### A.  Plaintiff's Direct Infringement Claims Should Be Dismissed.

To satisfy the plausibility standard set forth in *Twombly* and *Iqbal*, a patent infringement complaint must "place the alleged infringer on notice of what activity is being accused of infringement."  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (cleaned up).[8]  The most basic requirement of pleading infringement is identifying what purportedly infringes the patent.  *See Artrip v. Ball Corp.*, 735 F. App'x 708, 714–15 (Fed. Cir. 2018) (affirming dismissal of direct infringement claim because the complaint failed to identify an infringing product); *Cross v. Dick's Sporting Goods, Inc.*, No. 21-198, 2022 WL 138038, at *2 (N.D. Ind. Jan. 14, 2022) ("[A]n infringement claim must specifically identify the products accused of infringing[.]"); *Upstream Holdings, LLC v. Brekunitch*, No. 22-3513, 2022 WL 17371052, at *1 (C.D. Cal. Aug. 3, 2022) ("Plaintiff does not come close to alleging the necessary facts to plead a claim for patent infringement [because] Plaintiff does not identify an accused product.").

The FAC does not identify an infringing product, and accordingly fails at the threshold.

---

[8]  The substantive law of the U.S. Court of Appeals for the Federal Circuit governs patent cases. *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018); *Sundesa, LLC v. JH Studios, Inc.*, No. 19-1809, 2020 WL 4003127, at *3, n.2 (M.D. Fla. July 15, 2020).

Indeed, GFVC affirmatively pleaded that it does not know what infringes the patent: "Due to the large volume of apps on Play Store, and Google Ad monetized web sites, *discovery is necessary to identify the infringing products*." FAC ¶ 160 (emphasis added). GFVC's invitation to throw open the doors to burdensome discovery (for Google and presumably for third parties as well) on the mere hope that it eventually might find a claim is the exact harm that *Iqbal* and *Twombly* direct courts to avoid. *See Twombly*, 550 U.S. at 558 (courts should not "send[] the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint"); *Iqbal*, 556 U.S. at 684–86. The other allegations in the FAC provide no help. Some rely on conclusory language about "infringing apps" and "infringing websites," FAC ¶ 163, and "apps on the Google Play Store that are performing, implementing, and carrying out, processes and methods specified in the patent," FAC ¶ 166. Yet, others allege that unnamed "numerous apps on the Google Play Store appear reasonably certain to infringe the patent." FAC ¶ 162. These *ipse dixits* fall well short of articulating a plausible case of infringement. The only specific apps or webpages named in Count 6 are "Spokeo" and "Whitepages," FAC ¶¶ 154, 159, but the FAC does not allege that either of those infringes the RE'847 patent, much less plead a basis to hold Google accountable for infringement by these third parties.

GFVC's allegations are far less specific than those found wanting in *Artrip v. Ball Corp.*, 735 F. App'x 708 (Fed. Cir. 2018). The court there affirmed a Rule 12(b)(6) dismissal of a patent infringement suit alleging infringement "by use of one or more of the machines at least at the Bristol Plant," *id.* at 714, because the allegations "did not fairly identify the accused machines." *Id.* at 715. The court instructed that the "particular [products] that allegedly infringe" must be specified in some way, "for example, by photograph or name." *Id.* The

deficiencies in the FAC go beyond even those—GFVC not only has failed to identify any infringing products, it concedes it is unable to do so.  *See* FAC ¶ 160.

Because GFVC has not met its burden of identifying an accused product, it necessarily has not satisfied the further requirement to provide "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).  The FAC at most contains broad statements describing some—but not all—functions of the claimed technology untethered from any particular product.  *E.g.*, FAC ¶¶ 160, 162.  Such "broad functional language," *Artrip*, 735 F. App'x at 715, does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bot M8*, 4 F.4th at 1352 (quotation omitted).  Because "Plaintiff does not allege any facts concerning the accused devices," and has failed to describe "even in general terms, how the accused devices function," the direct infringement claims should be dismissed.  *Hawk Tech. Sys. v. Brickell Fin. Ctr.*, No. 13-24005, 2014 WL 11946879, at *1 (S.D. Fla. Feb. 27, 2014).

### B.      Plaintiff's Indirect and Willful Infringement Claims Should Be Dismissed.

Count 6 further alleges indirect infringement (contributory and induced infringement) as well as willful infringement.  FAC ¶¶ 164–68.  These claims fail for at least the reason that GFVC has not plausibly alleged direct infringement, a mandatory prerequisite to both indirect and willful infringement.  *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1322 (Fed. Cir. 2017) ("[A] finding of direct infringement is predicate to any finding of indirect infringement.");  *Glob. Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-61933, 2016 WL 6682015, at *4 (S.D. Fla. May 19, 2016) (dismissing willfulness claims for lack of direct infringement). Even apart from this, the FAC fails to adequately plead indirect and willful infringement.

1. <u>Contributory Infringement</u>.  To survive a motion to dismiss, a plaintiff alleging

contributory infringement must plausibly "plead facts that allow an inference that the

components sold or offered for sale have no substantial non-infringing uses."  *In re Bill of*

*Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).

The FAC states only "Google has alternatively infringed contributorily by providing to users a

system for reverse phone lookups, described above, that has no non-infringing uses."

FAC ¶ 165.  Merely restating the law is insufficient.  *See Addiction & Detoxification Inst. LLC.*

*v. Carpenter*, 620 Fed. App'x. 934, 938 (Fed. Cir. 2015) (repeating legal conclusion that a party

has contributorily infringed does not plead factual content that allows a court to draw the

reasonable inference that the defendant is liable).  Moreover, GFVC has not included any

plausible allegation that Google sells or offers an infringing instrumentality "knowing the same

to be especially made or especially adapted for use in an infringement of such patent."  35 U.S.C.

§ 271(c); *see H. Lundbeck A/S v. Lupin Ltd.*, 87 F.4th 1361, 1373 (Fed. Cir. 2023) (contributory

infringement statute "imposes a scienter requirement").

2. <u>Induced Infringement</u>.  To state a claim for induced infringement, "a complaint must

plead facts plausibly showing that the accused infringer 'specifically intended [another party] to

infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"  *Lifetime*

*Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading*,

681 F.3d at 1339) (alteration in original).  The FAC alleges that Google "induces its users to

infringe" by providing to those users some unnamed "system for reverse phone lookup," and

"induces infringement through a variety of anti-competitive behaviors including pay-for-play

ranking and encouraging Adwords/Ads expenditure."  FAC ¶ 164.  Putting aside questions as to

what Google system is alleged to infringe, or how so, or how Google's users are induced to use

Google's system because of alleged behavior directed at competitors (not users), the FAC lacks any allegation that Google intended users to infringe the RE'847 patent or knew that users of this unnamed "system" were infringing the patent.

3. <u>Willfulness</u>. To state a claim for willful patent infringement, a plaintiff must allege facts that would establish the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, infringed the patent; and (3) in doing so, knew, or should have known, that its conduct amounted to infringement of the patent. *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 449 (D. Del. 2018); *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021). The FAC fails to plausibly plead infringement as discussed above, and thus fails to plead the second element. It also fails to adequately plead the third element. The FAC alleges only that Google "has been made aware of the reissue patent issuance, and the underlying infringement claims, but still publishes infringing apps." FAC ¶ 168. Nowhere does the FAC identify the "infringing apps" or "underlying infringement claims" of which Google was allegedly made aware. (As discussed previously, the FAC admits that GFVC does not know what are the supposed "infringing apps.") These barebones allegations "do not provide the Court with an adequate basis to draw an inference of plausible culpability." *Universal City Studios v. Nissim Corp.*, No. 14-81344, 2015 WL 1124704, at *5 (S.D. Fla. Mar. 12, 2015).

**C.     Plaintiff Has No Basis to Assert Infringement of RE'847 Patent Claims 1–6.**

In *Whitepages, Inc. v. Isaacs*, all claims of U.S. Patent No. 8,861,698 (claims 1–6) were held invalid under 35 U.S.C. § 101. *See Whitepages, Inc. v. Isaacs*, 196. F. Supp. 3d 1128, 1130 (N.D. Cal. 2016).[9] Dr. Isaacs subsequently applied for a reissue of the '698 patent, naming

---

[9] This holding was summarily affirmed on appeal. *Whitepages, Inc. v. Greenflight Venture Corp.*, 698 F. App'x 613, 614 (Fed. Cir. 2017).

GFVC as the assignee.  DE 16-3 (RE'847 Prosecution History).  That reissue application was granted and became the RE'847 patent asserted here.  *See* DE 24-1 (RE'847).  Claims 1–6 were not allowed on reissue; the patent office allowed only claims 7–10.  *See id.* at 9; *see also* M.P.E.P. § 1455(II) ("All the claims of the original patent should appear in the reissue patent, with canceled patent claims being enclosed in brackets").

As set forth in Google's prior motion to dismiss, "[W]hen a claim is canceled, the patentee loses any cause of action based on that claim."  DE 16 (Motion to Dismiss) at 12 (quoting *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 721 F.3d 1330, 1340 (Fed. Cir. 2013)).  Nonetheless, the FAC alleges that "Google LLC has directly infringed Claims 1-10 of the [RE'847] patent, and contributorily infringed and induced others to infringe at [sic] Claims 1-10 of the [RE'847] patent."  FAC ¶ 166.  GFVC lacks any justifiable basis to assert canceled claims, and the Court should dismiss with prejudice any allegations concerning claims 1–6.

## CONCLUSION

For the reasons discussed above, the FAC should be dismissed with prejudice.

Date:  September 10, 2024

Kenneth C. Smurzynski (*pro hac vice*)
Aaron P. Maurer (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
+1 (202) 434-5000
ksmurzynski@wc.com
amaurer@wc.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
Madeline A. Woodall (*pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-80395@cases.warrenlex.com

Respectfully submitted,

/s/ *Edward M. Mullins*

Edward M. Mullins (Florida Bar No. 863920)
Ana M. Barton (Florida Bar No. 85721)
Sujey S. Herrera (Florida Bar No. 92445)
REED SMITH LLP
200 South Biscayne Boulevard, Suite 2600
Miami, Florida, 33131
+1 (786) 747-0200
+1 (786) 747-0299 facsimile
emullins@reedsmith.com
abarton@reedsmith.com
sherrera@reedsmith.com

*Attorneys for Defendant Google LLC*