# EXHIBIT 3

Ayelet Faerman, Esq.
Faerman Law P.A.
3859 NW 124 Ave
Coral Springs, FL 33065
954-271-8484
ayelet@faerman.law

Keith Mathews
Attorney for Plaintiff
*Pro Hac Vice*
American Wealth Protection
Manchester, NH 03105
Ph. 603-622-8100
keith@awplegal.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GREENFLIGHT VENTURE CORPORATION<br>   *on behalf of themselves*<br>   *and all others similarly situated*<br><br>                              Plaintiff,<br><br>vs.<br><br>GOOGLE LLC<br><br>                              Defendant. | Case No. **24-cv-80395-RLR**<br><br><br>**PLAINTIFF'S FIRST SET<br>OF WRITTEN INTERROGATORIES**<br><br><br><br>DISCOVERY |

## PLAINTIFF GREENFLIGHT VENTURE CORPORATION'S
## FIRST SET OF WRITTEN INTERROGATORIES TO GOOGLE LLC

To: Google LLC Counsel of Record
Date: August 20, 2024

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff GREENFLIGHT VENTURE CORPORATION hereby requests that Defendant Google LLC respond to the following interrogatories in writing and under oath within thirty (30) days of service.

1. Describe in detail all major innovations or improvements to Google Search, including transparent evaluation metrics for subjective VSP quality rankings, that have been implemented in the past ten years, including the rationale for each and any associated user feedback or impact assessments.

2. Identify and describe all internal discussions, meetings, or strategic decisions where the decline or stagnation of Google Search innovation was acknowledged, and explain the outcomes of these discussions.

3. Explain how Google determines the allocation of revenue generated from search engine activities to non-search-related projects, including any internal policies or guidelines governing these decisions.

4. Describe any internal assessments, studies, or surveys conducted by Google that indicate a decline in user satisfaction with Google Search over the last decade, including any actions taken in response.

5. Describe any projects to improve Search that were considered, abandoned or not implemented, including any efforts to provide better transparency and fairness to VSP and web developers. Explain Google's approach to transparency in its search engine

operations, including any past or present initiatives aimed at increasing transparency and the reasons for their success or failure.

6. Does Google acknowledge VSP and web developers were impacted by the felony Sherman Act conduct alleged in *DOJ v Google* which resulted in a civil guilty verdict? If so, how does Google propose VSP and web developers should be compensated? How does Google anticipate their representation in the penalty stage of the DOJ case? Does, or should, this case overlap with that process?

7. Describe in detail the decision-making processes, including any risk assessments, business impact analyses, and legal reviews, that led to the substantial changes made in November 2022 to the relationship between Google LLC and OkCaller.com, specifically regarding Google Search placement and SERP rankings of OkCaller's phone directory content. Include all alternative actions considered to "effective termination" and the reasons they were rejected.

8. Identify all individuals at Google LLC, including external legal counsel and consultants, who participated in or were consulted regarding the decision to alter the search algorithm or apply manual curation that resulted in a significant negative impact on OkCaller.com's appearance in 2022 Google search results. Describe each individual's role and the specific input they provided.

9. Identify all instances, including specific dates and sources, in which Google LLC became aware of Greenflight and its owners' involvement as a party or witness in federal USDC technology litigation. Describe how this awareness was disseminated within Google LLC and any subsequent actions taken in response.

10. Identify all reverse phone search websites currently ranked in the top twenty by Google SERPs and identify which have features, functionalities, or user interfaces in common to those implemented by OkCaller.com, including GR-1188 CNAM queries and Spam reports. Provide a detailed explanation of the curation and ranking criteria, and any manual adjustments in effect, for these top twenty sites in Google Search.

11. Describe in detail any investigation or analysis conducted by Google LLC concerning the potential infringement of Greenflight's patent (RE48847) by other reverse phone search websites or Play Store apps. Include any recommendations made as a result of these investigations and whether they were implemented.

12. Explain the rationale and decision-making process behind Google LLC's refusal to engage in mediation with Greenflight or its owners regarding a resolution of this matter. Include any internal communications or legal advice that influenced this decision.

13. Explain any specific actions or changes OkCaller.com could implement, as communicated by Google LLC, to regain its previous search ranking and organic traffic levels. If no such guidance was provided or is not available, explain why no remedial measures were available.

14. Describe any agreements, understandings, or knowledge-sharing protocols between Google LLC and Apple Inc. that may influence a website or VSP's SERP rankings and indexing, and whether or not OkCaller was subject to any such practice or procedure. Specifically address any protocols or shared databases in effect whereby Google can receive security or reputational concerns issued by Apple concerning a VSP or app or website.

15. Identify and describe any internal policies, guidelines, or practices at Google LLC related to the treatment and ranking of websites that replicate ("copycat") key features and functionalities of existing sites like OkCaller.com. Include how these policies have been applied to both domestic and international sites.

16. Identify and describe the specific processes through which aspiring competitors to currently ranked niche search portals can establish meaningful rankings on Google Search. Include an analysis of Webmaster/Search Console tools and methods, and the effectiveness of these tools on indexing new entrants' content.

17. Explain why FactMed.com was removed from substantial search visibility and how it compared to the highest ranked site in that field, eHealthMe, on quality metrics for FDA adverse event informatics, and in terms of accuracy and user engagement. Describe Google's knowledge of emails sent to FactMed from leading academic researchers thanking FactMed for their service. Describe the impact on consumer information quality and the public health implications of Google's "effective termination" decision.

18. Identify and describe Google's estimates of the overall loss of VSP developer resources and investment, stemming from the failure to index or rank on Google Search. Include Google's analysis of the corresponding loss in consumer search result quality, especially for cases where a new site offers higher quality data or better user interfaces than established competitors.

19. Do end-users navigate to Google.com solely with the intent to perform a phone/address/person search, and if so, how many by annual volume? Indicate based on this response whether or not Google considers itself a competitor in reverse search

and/or whitepages services, identifying reasons for and against Google Search's characterization as such a service.

20. Identify any SS7 or PSTN contracts Google has entered into since 2014, whereby it contracted to obtain GR-1188 or CNAM services in the NANPA territory. Summarize the receipts for CNAM or GR-1188 queries that Google has paid during this timeframe.

21. Describe the impact of the *United States (DOJ) v. Google* verdict on Google's internal policies and procedures related to web developers of niche search sites like Dreamstime, FactMed, or OkCaller that have alleged unfair and anticompetitive ranking and indexing.

Please govern yourselves accordingly.

Respectfully submitted on this 20th day of August 2024.

/s/ Ayelet Faerman
Ayelet Faerman, Esq.
Faerman Law P.A.
3859 NW 124 Ave
Coral Springs, FL 33065
954-271-8484
ayelet@faerman.law

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing First Set of Written Interrogatories has been served on this 20th day of August, 2024, to all parties of record, including GOOGLE LLC counsel of record, via electronic mail as per the Federal Rules of Civil Procedure and Local Court Rules.

/s/ Ayelet Faerman
Ayelet Faerman, Esq.
Faerman Law P.A.
3859 NW 124 Ave
Coral Springs, FL 33065
954-271-8484
ayelet@faerman.law