UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:24-cv-80395-RLR-BER

GREENFLIGHT VENTURE CORPORATION,

   Plaintiff,

v.

GOOGLE LLC,

   Defendant.

---

**DEFENDANT GOOGLE'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.   GFVC Fails to Allege a Section 2 Claim. .................................................................. 1

    A.   GFVC Has Not Alleged an Antitrust Injury. ................................................. 1

    B.   To the Extent It Was Pleaded, the Monopoly Leveraging Claim Fails. ....... 3

II.  GFVC Fails to Allege a Section 1 Claim. .................................................................. 5

III. GFVC Does Not Allege Any Anticompetitive Conduct Under Count 3. ................ 6

IV.  GFVC's State Law Claims Also Fail. ....................................................................... 7

V.   GFVC's Patent Infringement Claims Should Be Dismissed. .................................. 8

# **TABLE OF AUTHORITIES**

*Cases* **Pages**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
    836 F.3d 1171 (9th Cir. 2016) ...................................................................................7

*Associated Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*,
    459 U.S. 519 (1983)....................................................................................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................3

*Blue Shield of Va. v. McCready,*
    457 U.S. 465 (1982)................................................................................................1, 2

*Blue Water Innovations, LLC v. Fettig*,
    No. 18-60671, 2019 WL 1904589 (S.D. Fla. Mar. 8, 2019).......................................9

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .................................................................................8, 9

*Disc Disease Sols., Inc. v. VGH Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)...................................................................................9

*Duty Free Americas., Inc. v. Estee Lauder Cos., Inc.*,
    797 F.3d 1248 (11th Cir. 2015) ..................................................................................3

*Feldman v. Am. Dawn, Inc.*,
    849 F.3d 1333 (11th Cir. 2017) ..................................................................................2

*Fla. Seed Co. v. Monsanto Co.*,
    105 F.3d 1372 (11th Cir. 1997) ..................................................................................1

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.,*
    806 F.3d 162 (3d Cir. 2015).......................................................................................2

*In re Flat Glass Antitrust Litig.,*
    385 F.3d 350 (3d Cir. 2004).......................................................................................6

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)...................................................................................8

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    626 F.3d 1327 (11th Cir. 2010) ..............................................................................3–4

*Kendall v. Visa U.S.A.*, *Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ....................................................................................6

# **TABLE OF AUTHORITIES**

*Cases (continued)*                                                                                                   **Pages**

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013)......................................................................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)..................................................................................9, 10

*MCI Commc'ns Corp. v. AT&T*,
    708 F.2d 1081 (7th Cir. 1983) .......................................................................................7

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
    734 F.2d 705 (11th Cir.1984) .......................................................................................5

*Morris Commc'ns Corp. v. PGA Tour, Inc.*,
    364 F.3d 1288 (11th Cir. 2004) .................................................................................6–7

*Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*,
    748 F.2d 602 (11th Cir. 1984) ......................................................................................5

*Southaven Land Co. v. Malone & Hyde, Inc.*,
    715 F.2d 1079 (6th Cir. 1983) ......................................................................................2

*Spanish Broadcasting Sys. v. Clear Channel Comms.*,
    376 F.3d 1065 (11th Cir. 2004) ....................................................................................3

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993).......................................................................................................3

*Sunbeam Television Corp. v. Nielsen Media Research, Inc.*,
    711 F.3d 1264 (11th Cir. 2013) ....................................................................................2

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) ....................................................................................8

*United States v. Google*,
    No. 20-cv-03010, 2024 WL 3647498 (D.D.C. Aug. 5, 2024) ..................................1, 5

Plaintiff Greenflight Venture Corporation ("GFVC") operates a reverse telephone search website that received some volume of traffic starting in 2015, which over time diminished, with a significant reduction occurring in 2022. FAC ¶ 23. GFVC makes the wild allegation (based on speculation plus the temporal proximity of the events) that the reduction in traffic reflects retaliation by Google for GFVC's filing of an appellate brief in a case against Apple. FAC ¶¶ 33–34. The original complaint asserted a single patent infringement count. DE 1. GFVC now concedes that its allegations of direct infringement were without merit, Opp. at 19 n.9. What remains of its patent infringement theory is equally invalid.

After an August 5, 2024 opinion in *United States v. Google,* No. 20-cv-03010, 2024 WL 3647498 (D.D.C.), GFVC switched gears and latched its grievances to a new area of the law: antitrust. DE 24. Trying to make that case somehow relevant, GFVC attempts to shoehorn its product into the general search engine ("GSE") market at issue there. Opp. at 4. But the Opposition's contention that GFVC's product "could evolve into [a] GSE[]," *id.,* is flatly contradicted by the FAC (which contends that GSEs are "unique" because they offer a "one-stop shop" for all queries and that reverse phone searches are "distinct" from GSEs, FAC ¶¶ 60, 67), and in all events implausible. GFVC's many other efforts to plead a federal antitrust or state law competition claim also fail.

## ARGUMENT

### I. GFVC Fails to Allege a Section 2 Claim.

#### A. GFVC Has Not Alleged an Antitrust Injury.

GFVC fails to show "that it is a customer or competitor in the relevant antitrust market"—therefore, it cannot prove antitrust injury and lacks antitrust standing as to Count 1. *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997). GFVC's reliance on *Blue Shield of Va. v. McCready,* 457 U.S. 465 (1982), to argue that it need not be a direct competitor

to establish standing is misguided. Opp. at 3. The plaintiff in *McCready* was a consumer of psychotherapeutic services who alleged that she was injured by defendants' conspiracy to restrain competition in the market for such services; the Supreme Court held that plaintiff's injury fell under a very narrow exception because the harm to her was "a necessary step in effecting the ends of the alleged illegal conspiracy." 457 U.S. at 479. Indeed, the Supreme Court clarified *McCready* the very next year, explaining that a plaintiff must be "directly harmed by the defendants' unlawful conduct" to establish antitrust injury. *Associated Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 529 n.19 (1983).

*McCready* thus only applies to plaintiffs "directly targeted for harm by parties ultimately wishing to inflict a derivative harm on a competitor," meaning that the defendant used the plaintiff as "a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographical market." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 172 (3d Cir. 2015); *Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086 (6th Cir. 1983). Eleventh Circuit law is not to the contrary. The opinion relied on by GFVC, *Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*, did not find an antitrust injury had been pleaded. It did not even reach the issue, finding a lack of antitrust standing on other grounds. 711 F.3d 1264, 1272–73 (11th Cir. 2013).

Notwithstanding the Opposition's repeated, hollow invocation of a "direct harm," it fails to allege *facts* that Google used OkCaller as a means to injure competitors in the general search services market. Thus, *McCready* is inapposite. The alleged facts here are instead, at most, those of *Feldman v. Am. Dawn, Inc.*, where antitrust standing was lacking because the alleged injury was only an "*effect* of the conspiracy . . . Feldman's 'financial injury' was 'secondary' to the goal of reduced competition in the market . . ." 849 F.3d 1333, 1341–42 (11th Cir. 2017).

2

GFVC does not allege that Google's purported actions as to OkCaller, a single reverse phone search provider, were an effort to harm competition in the general search services market. And even if it had made such an allegation, it would be implausible. The same goes for the claim that OkCaller might "evolve into" a GSE. Opp. at 4. That claim is both implausible and contradicted by the FAC itself (contending that GSEs are "unique" because they offer a "one-stop shop" for all queries and that reverse phone searches are "distinct" from GSEs, FAC ¶¶ 60, 67).

### B. To the Extent It Was Pleaded, the Monopoly Leveraging Claim Fails.

GFVC next argues that Count 1 should be interpreted as one for "monopoly leveraging." Opp. at 4. To allege monopoly leveraging, GFVC must define the market in which Google is attempting to harm competition through its purported monopoly in the GSE market, and, among other things, show that Google monopolized or attempted to monopolize that second market. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993). Because GFVC fails to adequately plead either element, its Section 2 claim fails even if it could show antitrust standing.[1]

GFVC begins its argument by fabricating a quote, purported to be from the decision in *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015). Opp. at 10. It then spins beyond recognition the language of *Spanish Broadcasting Sys. v. Clear Channel Comms.,* 376 F.3d 1065, 1075 (11th Cir. 2004), Opp. at 10, and fails to recognize that even the Court's actual reasoning is no longer good law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Contrary to GFVC's misrepresentations, it is established law in this circuit that antitrust claims should be dismissed when they fail to provide "factual allegations of the cross-

---

[1] GFVC makes much of a House of Representatives subcommittee report, Opp. at 4–7, 15, but does not so much as suggest that this report addresses reverse phone search providers.

3

elasticity of demand or other indications of price sensitivity" necessary to define the market.  *See* MTD at 5-6 (citing *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338–39 (11th Cir. 2010)).  Although GFVC attempts to avoid this requirement by arguing that such allegations are not necessary when defining markets for free digital products, Opp. at 6 n.3, it fails to discuss the alternative factors suggested in that context, such as the impact of quality on substitutability.

Even if either the VSP or reverse phone search markets were properly defined, GFVC still falls short by failing to allege facts showing that Google is a monopolist in either market.  For the VSP market, for which GFVC "invokes the broadest definition[,]" it studiously avoids even an estimate of the percentage of the alleged market that Google accounts for.  FAC ¶¶ 71–76.  The allegation that Google has monopolized this alleged market is implausible given that it is alleged to include Amazon, Expedia, Booking.com and the "tens or hundreds of thousands" of other entities that provide vertical search services.  Opp. at 7.

As to the reverse phone search market, GFVC does not offer a plausible allegation that Google competes in it.  Indeed, GFVC concedes that "the reverse phone search market is a ***distinct relevant market*** characterized by a particular service that ***general search engines***, social media platforms, and online directories ***do not necessarily provide***."  Opp. at 8 (emphasis added).  Ignoring its critical concession, GFVC elsewhere tries to argue that because one can enter a query on Google Search that includes a telephone number, Google competes in the reverse phone search market.  Opp. at 8–9.  But under GFVC's nonsensical reasoning, Google competes in any market that can be *reached* via search query.  Meaning, for example, that a high volume of Google searches for, say, insurance would somehow make Google a competitor in the online insurance market, despite not selling insurance.  GFVC was right the first time: reverse phone search is a distinct service that general search engines do not provide.  Opp. at 8.

4

## II. GFVC Fails to Allege a Section 1 Claim.

Lacking a plausible claim, GFVC resorts to umbrage that counsel for Google did not perceive the allegation that "Google has entered into agreements and engaged in unilateral and bilateral practices that unfairly demote the search rankings of competitors," FAC ¶ 108, as a reference to, *inter alia,* the vertical agreement between Google and Apple pursuant to which Apple sets Google as the default search engine in Apple's Safari browser in exchange for a revenue share. Opp. at 10 (citing ¶ FAC 11).[2] As Google explained in its Motion to Dismiss, one cannot satisfy the pleading requirements by simply identifying any agreement between Google and a third party—GFVC must plead facts that establish the existence of an agreement which restrains trade and specifically harms GFVC in a relevant antitrust market. MTD at 4.

First, GFVC lacks standing to sue regarding the agreement between Apple and Google because its claimed injury is far too remote. *See* § I.A. The agreement between Google and Apple to make Google the default search engine on the Safari browser is not alleged to directly harm GFVC. To establish standing, the "plaintiff must be the target against which anticompetitive activity is directed. . . . [i]ncidental or consequential injury . . . does not give a plaintiff standing . . ." *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 608 (11th Cir. 1984) (quoting *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 710 (11th Cir.1984)). GFVC does not come close to pleading some direct effect from this agreement. Its talk of an alleged duopoly, FAC ¶ 11, does not explain how such an agreement is anticompetitive with respect to OkCaller specifically. GFVC's threadbare formulation does not

---

[2] FAC ¶ 11 refers to a relationship between Google and Apple as described in the "DOJ verdict" (meaning, *United States v. Google*). The Google – Apple agreement is described there as "an agreement between Google and Apple, wherein Google pays Apple a share of its search ads revenue in exchange for Apple preloading Google as the exclusive, out-of-the-box default GSE on its mobile and desktop browser, Safari." 2024 WL 3647498, at *50.

5

even state whether it is pleading a horizontal or vertical restraint of trade; it certainly does not reach any of the elements of this claim in its pleading.

The unidentified agreements with so-called high-spend advertisers fare no better. To bring a Section 1 claim, GFVC must provide enough facts to show an illegal agreement—there is a higher pleading standard for Section 1 claims without direct evidence because "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as . . . an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008). GFVC's assertion that some providers like Whitepages and Spokeo spend more on Google advertising, FAC ¶ 110, and the fact that some results are placed higher on Google's search results page, are not enough to plead a conspiracy under Section 1. Even assuming the truth of these allegations, nothing in them is inconsistent with Google exercising its business judgment as to what search results are best to serve. In the absence of direct evidence that Google and Whitepages agreed on advertising spend in return for better organic search placement, GFVC is required to plead certain plus factors such as evidence that Google had a motive to enter into this conspiracy and evidence that Google acted contrary to its independent economic interests. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004). The FAC fails to plead any of those plus factors.

**III.   GFVC Does Not Allege Any Anticompetitive Conduct Under Count 3.**

GFVC argues that its Count 3 claim does not require allegations showing a plausible relevant market, Google's monopoly power in that market, or antitrust standing. Opp. at 12. GFVC is wrong. *See, e.g.,* MTD § III.A; *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004) (dismissing a refusal to deal claim and noting that analyzing such a claim requires determination of the "relevant market . . . [and] whether the defendant possessed

monopoly power in that market."). These failures—alone—require dismissal of Count 3.

Count 3 fails for the further reasons discussed in the Motion to Dismiss at 8–10. GFVC's reliance on the outdated essential facilities doctrine, and its attempt to insert Apple into this Count despite its absence in the Complaint, cannot save this claim. *Compare* Opp. at 15–16 *with* FAC ¶ 124. The essential facilities doctrine requires that the plaintiff, as defendant's *competitor*, is denied access to defendant's essential facility. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1132–33 (7th Cir. 1983). As discussed above, GFVC does not plausibly plead that OkCaller is Google's competitor in the general search services market. *See* § I.A. Additionally, GFVC has not been denied access to Google's search engine as GFVC concedes that OkCaller still appears in Google's search results. *See* DE 34-4; MTD at 9 n.4. And even if OkCaller was completely removed from Google, GFVC has not adequately alleged that such removal entirely prevents OkCaller from offering its services, since users can still navigate to the site directly. *See Aerotec Int'l, Inc. v. Honeywell Int'l,* Inc., 836 F.3d 1171, 1185 (9th Cir. 2016) (holding that a facility is only essential if "control of the facility carries with it the power to *eliminate* competition in the downstream market." (emphasis in original)).

**IV.    GFVC's State Law Claims Also Fail.**

Counts 4 and 5 of the FAC generally replead GFVC's insufficient federal antitrust claims, and thus fail to state a claim for the same reasons. MTD at 10, 12. The Opposition conjures new, allegedly deceptive practices, Opp. at 17–18, but they continue to fail to state a claim because there are no allegations that show Google had any duty to disclose how it ranks search results or its agreements with advertisers, and none of this conduct is pled according to the particularity requirements of Rule 9(b). *See* MTD at 11, 12–13.

Finally, GFVC argues that its retaliation claim should survive even though the only connection it alleges between Dr. Isaacs's participation in the Apple antitrust case and OkCaller's decline in web traffic is that these events allegedly occurred in the same time period. Opp. at 18 n.8. The only actual case GFVC cites for this proposition is a Title VII case. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363–64 (11th Cir. 2007).[3] Nothing in that case suggests that it applies outside its unique context.

### V.     GFVC's Patent Infringement Claims Should Be Dismissed.

***Direct Infringement.*** GFVC concedes it has no claim that Google directly infringes its patent: "Counsel clarifies that Google is not alleged to directly infringe the '847 reissue patent." Opp. at 19 n.9. The claims of direct infringement should be dismissed with prejudice.[4]

***Indirect Infringement.*** To state a claim against Google for indirect infringement, the FAC must plead: 1) direct infringement by a third party, and 2) a basis for Google's liability for inducing or contributing to that infringement. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1322 (Fed. Cir. 2017). The FAC falls short on both fronts.

*1.* GFVC's claims of infringement by a third party fail for the same reason its now-abandoned direct infringement claims against Google failed—there are no "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). The only third parties that GFVC now identifies as potential infringers are "app developers." *See* Opp. at 19-20. The FAC does not identify any specific infringing product, and refers only to "service

---

[3] Opp. at 18 n.8 also cites "*Hunt v. Florida Department of Corrections,* 666 F.3d 1257, 1264 (11th Cir. 2012)" but the case that appears at that citation in the Federal Reporter is a Tenth Circuit bankruptcy case and the undersigned could locate no Eleventh Circuit case by that name.

[4] GFVC falsely contends it did not bring a claim for direct infringement. *Compare* Opp. at 19, n. 9 *with* FAC ¶ 166 ("Google LLC has directly infringed Claims 1-10 of the '847 patent. . . .").

8

offering[s]," "apps" and "websites."  FAC ¶ 159.  The FAC does not attempt to map any of those onto any claim of the asserted patent.  It instead alleges that "apps . . . appear reasonably certain to infringe the patent[,]" followed by a generic discussion of technology divorced from any claim of the patent.  FAC ¶ 162.  While the FAC mentions two specific third parties—Spokeo and Whitepages—it does not allege their apps meet the limitations of any patent claim or how so.  *See* Opp. at 20 (citing FAC ¶¶ 160, 164).  That is insufficient to state a claim of direct infringement.  *See Bot M8*, 4 F.4th at 1353; *Blue Water Innovations, LLC v. Fettig*, No. 18-60671, 2019 WL 1904589, at *2 (S.D. Fla. Mar. 8, 2019).

Because the FAC lacks allegations explaining how any third party infringes, this case is different from those cited by GFVC.  In *Disc Disease Sols., Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018), the case "involve[d] a simple technology" and the plaintiff identified the accused product, included "photos of the product packaging" and alleged that the accused products met every element of at least one patent claim.  In *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) the complaint "identified where the alleged infringement occurred," "when it occurred," "who performed the allegedly infringing act," "and why" as well as "other facts supporting its allegations."  Those elements, which the Federal Circuit held were enough for fair notice of infringement in those cases, *Bot M8*, 4 F.4th at 1352–53, are missing here.  *E.g.*, FAC ¶ 162 (conceding "discovery is necessary to identify the infringing products").  Finally, GFVC cites *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir. 2013) for the proposition that it is not required to plead facts uniquely within the defendant's possession.  Opp. at 20.  Certainly *K-Tech*, based on now-abrogated Form 18, did not hold (as GFVC implies) that a plaintiff need not plead a plausible case for infringement if it has difficulty ascertaining facts supporting its claim.  Regardless, this is now a

case based on third party direct infringement, not Google's direct infringement.  *K-Tech* is thus inapposite because GFVC does not and cannot plausibly allege that Google has unique knowledge of the (unidentified but allegedly infringing) third party apps' or websites' functionality.

      **2.**  GFVC's inducement claim also should be dismissed because the FAC does not plausibly allege that Google was aware of any third party infringement, much less that Google had a specific intent to encourage that infringement.  Knowledge of infringement and intent to induce are mandatory elements of a claim for induced infringement.  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).  Further, GFVC's inducement claim is predicated on the allegation that Google "induces its *users* to infringe," not third party developers.  FAC ¶ 164 (emphasis added).  But GFVC concedes that "no users are alleged to infringe."  Opp. at 19 n.9.  Likewise, GFVC's sole contributory infringement allegation, FAC ¶ 165, is based on Google's actions in providing to users an unidentified "system for reverse phone lookups."  It too must fail in light of GFVC's abandonment of any allegation that Google or users directly infringe.  The allegation says nothing about third party developers.  Further, the FAC also lacks any plausible allegation establishing the required scienter element of contributory infringement.  *See* MTD at 17.  For these reasons, the indirect infringement claims should be dismissed.

      ***Willfulness.***  Because GFVC has not stated a claim for either direct or indirect infringement, its willful infringement claims likewise fail.  S*ee* MTD at 16, 18.

## CONCLUSION

For the reasons discussed above, the FAC should be dismissed with prejudice.

Date:  October 1, 2024

WILLIAMS & CONNOLLY LLP
Kenneth C. Smurzynski (*pro hac vice*)
Aaron P. Maurer (*pro hac vice*)
680 Maine Avenue, SW
Washington, DC 20024
+1 (202) 434-5000
ksmurzynski@wc.com
amaurer@wc.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
Madeline A. Woodall (*pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-80395@cases.warrenlex.com

Respectfully submitted,

/s/ *Sujey Herrera*
Edward M. Mullins (Florida Bar No. 863920)
Ana M. Barton (Florida Bar No. 85721)
Sujey S. Herrera (Florida Bar No. 92445)
REED SMITH LLP
200 South Biscayne Boulevard, Suite 2600
Miami, Florida, 33131
+1 (786) 747-0200
+1 (786) 747-0299 facsimile
emullins@reedsmith.com
abarton@reedsmith.com
sherrera@reedsmith.com

*Attorneys for Defendant Google LLC*