Ayelet Faerman, Esq.
Faerman Law P.A.
3859 NW 124 Ave
Coral Springs, FL 33065
954-271-8484
ayelet@faerman.law
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

GREENFLIGHT VENTURE CORPORATION
*on behalf of themselves*
*and all others similarly situated*

     Plaintiff,

vs.

GOOGLE LLC

     Defendant.

Case No. **24-cv-80395-RLR**

**PLAINTIFF'S SUR-REPLY TO
GOOGLE'S MOTION TO DISMISS**

TABLE OF AUTHORITIES ---------------------------------------------------------------------------------- 2

INTRODUCTION ------------------------------------------------------------------------------------------------- 3

ARGUMENT------------------------------------------------------------------------------------------------------- 3

I.     GREENFLIGHT HAS ADEQUATELY ALLEGED SHERMAN SECTION TWO------------- 3

II.    GREENFLIGHT HAS ADEQUATELY ALLEGED SHERMAN SECTION ONE ------------- 5

III.   GREENFLIGHT HAS ADEQUATELY ALLEGED A REFUSAL TO DEAL ------------------ 7

IV.    STATE LAW CLAIMS UNDER THE UCL ARE PROPERLY PLED---------------------------- 9

V.     GREENFLIGHT'S PATENT INFRINGEMENT CLAIMS ARE PROPERLY PLED --------- 11

CONCLUSION ---------------------------------------------------------------------------------------------------- 12

# TABLE OF AUTHORITIES

### CASES

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ------------------------------------------------------------------------------------- 4

Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519 (1983)--------------------------- 4

Blue Shield of Va. v. McCready, 457 U.S. 465 (1982)------------------------------------------------------------------------ 3

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)--------------------------------------------------- 6

Disc Disease Solutions Inc. v. VGH Solutions, Inc. 888 F.3d 1256, 1260 (Fed. Cir. 2018) -------------------------------12

DJ Lincoln Enters. v. Google, LLC, 20-CV-14159-Rosenberg/Reinhart (S.D. Fla. Jul. 27, 2022) ------------------------- 9

Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992)----------------------------------------------- 4

Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005)----------------------------------------- 5, 8, 11

Lifetime Industries, Inc. v. Trim-Lok, Inc. 869 F.3d 1372, 1379 (Fed. Cir. 2017) ----------------------------------------12

LiMandri v. Judkins, 52 Cal. App. 4th 326, 336-37 (1997)------------------------------------------------------------------ 9

MCI Commc'ns Corp. v. Am. Tel. & Tel. Co., 708 F.2d 1081, 1132-33 (7th Cir. 1983) ------------------------------------ 8

Morris Communications Corp. v. PGA Tour, Inc., 364 F.3d 1288 (11th Cir. 2004) --------------------------------------- 7

National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602 (11th Cir. 1984) -------------- 6

Rembrandt Soc. Media, LP v. Facebook, Inc., 950 F. Supp. 2d 876, 882 (E.D. Va. 2013) --------------------------------12

TransPetrol, Ltd. v. Radulovic, 764 So. 2d 878, 879-80 (Fla. 4th DCA 2000)---------------------------------------------- 9

United States v. Google, No. 20-cv-03010, 2024 WL 3647498 (D.D.C. Aug. 5, 2024) --------------------------------------- 3

## GREENFLIGHT'S SUR-REPLY TO GOOGLE LLC'S MOTION TO DISMISS

### INTRODUCTION

Plaintiff Greenflight Venture Corporation ("Greenflight") respectfully submits this Sur-reply to matters raised by Defendant Google LLC ("Google") in its Reply brief. That pleading improperly introduced new legal arguments and related mischaracterizations. These notably include a deceptive bait-and-switch attempting to use their reply to broaden Google's prior FDUTPA win with this Honorable Court, extending it to California UCL claims. In all, these reflect either a concerning lack of due diligence on Google's part or a deliberate attempt to mislead the Court.

Google asserts that "GFVC switched gears and latched its grievances to a new area of the law: antitrust," implying that Greenflight's antitrust claims are a recent and opportunistic development. (Reply at 1). This assertion is demonstrably false. Google's portrayal that Greenflight is asserting antitrust claims only after a recent opinion in *United States v. Google*, No. 20-cv-03010, 2024 WL 3647498 (D.D.C. Aug. 5, 2024), is both fundamentally inaccurate and misleading. The First Amended Complaint ("FAC") references extensive pre-litigation correspondence between Attorney Mathews and Google spanning nearly two years, during which Greenflight consistently raised antitrust concerns and alleged violations of 18 U.S.C. § 1512. (FAC ¶¶ 35-36). Over a year ago, Mathews' provided draft antitrust complaints that incorporated verbatim findings from the Congressional Subcommittee on Antitrust and DOJ's General Search Engine ("GSE") market—long before the DOJ's case against Google was decided. By ignoring this extensive history, Google either displays a fundamental misunderstanding of the case or has chosen to misrepresent the facts to the Court.

### ARGUMENT

### I. GREENFLIGHT HAS ADEQUATELY ALLEGED SHERMAN SECTION TWO

Google still contends that Greenflight lacks antitrust standing because it is purportedly not a customer[1] or competitor in a relevant antitrust market and that *McCready* is inapplicable. (Reply at 1-3). Google attempts to distinguish *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982), arguing that Greenflight's injury does not fall within the narrow exception recognized in that case. (Reply at 1-2). However, *McCready* and multiple other cases cited support the principle that antitrust standing extends to plaintiffs whose injuries are "inextricably intertwined" with the anticompetitive conduct. *Id*. at 484.

The FAC explicitly alleges that Google has leveraged its monopoly power in the General Search Engine market to injure Vertical Search Providers ("VSPs"). (FAC ¶¶ 19-21, 83-84). Specifically, the

---

[1] The Court can also determine that nearly every American is a "customer" of Google GSE Search. Moreover, if the Court agrees the *Aspen* exception applies, it can reject all 12(b)(6) arguments on Sherman Section Two.

FAC states: "Google has leveraged this [GSE] monopoly to injure VSPs as a whole by reducing competition and consumer VSP choice." (FAC ¶ 83). Greenflight, as a VSP operating in the reverse phone search market, has suffered direct injury as a result of Google's anticompetitive conduct. Now, Google incorrectly asserts that Greenflight must be a customer or competitor in the GSE market to establish antitrust standing. (Reply at 1). This misstates the law. *Kodak* is controlling law here, and Google's reply is conspicuously silent on *Kodak*. In *Eastman Kodak Co. v. Image Technical Services, Inc*., 504 U.S. 451 (1992), the Supreme Court held that a monopolist in one market can violate Section 2 of the Sherman Act by harming competition in a secondary market.  The Supreme Court made clear that this leveraging violates Section 2 of the Sherman Act, even if the defendant does not monopolize the secondary market. *Kodak*, 504 U.S. at 479 n.29.

Therefore, Greenflight need not allege that Google monopolizes the VSP or reverse phone[2] search markets. It is sufficient to allege that Google has monopoly power in the GSE market and is using that power to harm competition in the VSP market, which is precisely what the FAC alleges. (FAC ¶¶ 19-21, 83-84). The FAC and supporting documents, including the House Subcommittee Report on Antitrust, explicitly describe how Google's conduct harms competition among VSPs. The Report expresses concern about "proliferating verticals" and how Google leverages its dominance in search to disadvantage competing providers in specialized markets. (FAC ¶¶ 19, 83; Opposition at 4-7). Greenflight's injury is thus directly analogous to the proliferating vertical.

Google also now argues that Greenflight's claim that it could evolve into a GSE is "implausible" and purportedly "contradicted by the FAC itself." (Reply at 2). This is inappropriate on a motion to dismiss. At the pleading stage, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether VSPs could evolve into a GSE is a factual matter that cannot be resolved at this stage. Google makes heroic efforts to conclude otherwise, misconstruing statements that GSE's do "not necessarily" perform reverse search queries. The Court should look beyond these diversions to the simple reality: Google's monopoly of search has obvious downstream injury.

Moreover, Google's reliance on cases such as *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983), is misplaced. That case does not overrule *McCready*, but rather emphasizes the need to consider the directness of the injury and the plaintiff's relationship

---

[2] Greenflight has alleged Google monopolizes the reverse search market. The allegations are not cursory, as the reply suggests, but based on Greenflight's experience processing 300 million phone queries. As pre-litigation correspondence indicated, over 90% of traffic to Okcaller's website and apps derived from Google. The company monetizes this traffic, controls it, and therefore, monopolizes the market.

to the alleged anticompetitive conduct. Here, Greenflight's injuries are direct and proximately caused by Google's conduct. The Subcommittee confirms this: specialized search firms are beholden to Google for traffic. Even if the Subcommittee hadn't determined this, the duopoly allegations alone suffice. Google and Apple control nearly all US internet content, which includes reverse search, and therefore, their decision to exclude OkCaller from any significant visibility is a direct injury by any definition, and certainly at the Rule 12 stage.

Lastly, the reply either misunderstands or misrepresents SSNDQ, when it claims "for free digital products, Opp. at 6 n.3, it fails to discuss the alternative factors suggested in that context, such as the impact of quality on substitutability." (Reply at 3). The Opposition clearly states "Significant academic discussion exists on metrics like SSNDQ, where quality serves as price for substitutability."[3]

## II.    GREENFLIGHT HAS ADEQUATELY ALLEGED SHERMAN SECTION ONE

Rather than acknowledge that they improperly denied the existence of an anticompetitive contract—the agreement between Google and Apple (the "Apple ISA agreement")—Google now introduces new and deflective arguments in its Reply. These arguments not only mischaracterize the FAC but also fail to address the substantive allegations of anticompetitive conduct harming Greenflight. In its Motion to Dismiss, Google failed to acknowledge the explicit allegations in the FAC regarding the anticompetitive agreement between Google and Apple. (FAC ¶¶ 11, 19, 108-109). Instead, Google argued that Greenflight failed to allege any agreements that restrain trade. In its Reply, Google shifts its position, acknowledging the agreement but arguing that Greenflight lacks standing and that the FAC fails to allege how the agreement specifically harms Greenflight. (Reply at 5-6).

These are new arguments raised for the first time in a reply brief and should be disregarded. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court."). Google's attempt to introduce these arguments now is an improper effort to shield its litigation misconduct of initially denying the existence of the pleaded agreement. Even if the Court considers Google's new arguments, they are without merit.

Google contends that Greenflight lacks standing with the new argument that the claimed injury is too remote and that incidental or consequential injury does not confer standing. (Reply at 5). This

---

[3] SSNDQ means small but significant non-transitory decrease in quality. For further reference, the Court may take judicial notice of https://digitalregulation.org/approach-to-market-definition-in-a-digital-platform-environment/ An incorrect quote from *Duty Free v. Estee Lauder* exists in the Objection; the correct excerpt follows: "Defining a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability—actual or potential—to take significant amounts of business away from each other… We consider a variety of factors in the calculus, including industry or public recognition" (i.e. Subcommittee report)

argument mischaracterizes both the law and the allegations in the FAC. Antitrust standing is conferred upon parties who suffer antitrust injury—"injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The FAC alleges that the Google-Apple ISA agreement directly harms Greenflight by reinforcing Google's monopoly power in the GSE market, which it leverages to suppress competition in the VSP and reverse phone search markets. (FAC ¶¶ 19-21, 83-84). The agreements limit Greenflight's – or any competitor – ability to reach users on Apple devices[4], as Google is the default search engine, thereby reducing visibility and traffic to OkCaller. (FAC ¶¶ 23-25, 33, 54, 83-84). They also serve to exclude Greenflight from essential channels of distribution, resulting in direct economic harm. (FAC ¶¶ 83-84). Rather than remote, these injuries are direct and proximately caused by Google's anticompetitive conduct, satisfying the requirements for antitrust standing.

Google also inserts the new argument that the FAC does not even state whether it is pleading a horizontal or vertical restraint of trade and fails to reach any elements of the claim. (Reply at 5). Despite Google's improper new argument attempting to narrow down this agreement's legal ramifications, the FAC clearly alleges both horizontal and vertical aspects. Google and Apple, through a vertical agreement, have agreed to make Google the default search engine on Apple's Safari browser in exchange for a revenue share. (FAC ¶¶ 11, 19, 108). The agreement has anticompetitive effects in horizontal markets by foreclosing competition and reinforcing Google's dominance in search and related markets. (FAC ¶¶ 19-21, 83-84). Synergies between the duopolies also substantiate horizontal agreement implications. The FAC alleges that the agreement between Google and Apple contributes to a duopoly over internet content and distribution, which harms content providers like Greenflight. (FAC ¶¶ 11, 19). By securing default status on Apple's Safari browser, Google forecloses competition and limits the ability of users to access alternative services. This consolidation of control over search and content distribution stifles innovation and suppresses competition in the market.

Google relies on *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602 (11th Cir. 1984), to argue that Greenflight's injury is too remote. (Reply at 5). However, in *National Independent Theatre*, the plaintiffs were not directly harmed by the defendants' conduct. In contrast, Greenflight alleges direct harm resulting from the agreements that limit its ability to compete and reach users. One need not look far for direct harm, contrary to Google's claims otherwise. Hundreds of millions of people "google phone numbers," and agreements like ISA make

---

[4] Google clearly tries to downplay the ISA agreement, referring to its relevance to Safari. Make no mistake, this $20billion agreement controls valuable search traffic from nearly every Apple user – both Mac and iOS – around the world.

sure that happens on none other than Google's platform. That's direct competition to reverse phone services like OkCaller. It certainly meets the "inextricably intertwined" standard of *McCready* and similar authority.

Google asserts that the FAC does not allege harm in a relevant antitrust market. (Reply at 5). This is false. The FAC defines the relevant markets as the GSE market, the VSP market, and the reverse phone search market. (FAC ¶¶ 60-65, 66-69, 78-80). It alleges that Google's agreements and conduct harm competition and consumers in these markets by foreclosing competition and limiting consumer choice.

Likewise, Google dismisses the allegations regarding agreements with high-spend advertisers like Whitepages and Spokeo, arguing that such agreements could suggest rational, legal business behavior. (Reply at 5-6). However, the FAC alleges that these agreements result in the manipulation of organic search rankings, favoring certain advertisers over competitors like Greenflight. (FAC ¶¶ 110-112). This conduct harms competition by limiting the visibility of competing services and reducing consumer choice. At the pleading stage, Greenflight is not required to prove the existence of an illegal agreement with direct evidence. It is sufficient to allege facts that plausibly suggest an unlawful agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III.   GREENFLIGHT HAS ADEQUATELY ALLEGED A REFUSAL TO DEAL

The Reply introduces incorrect case law which Google purports applies to *Aspen*, and advances new arguments on the *MCI* essential facilities doctrine. The new arguments regarding alternative access that are both improper and frivolous.

Google doubles-down that Greenflight must allege a plausible relevant market and monopoly power in that market to state a refusal to deal claim under Section 2. (Reply at 6). This is incorrect. Google cites *Morris Communications Corp. v. PGA Tour, Inc.,* 364 F.3d 1288 (11th Cir. 2004), but this case cannot save them. (Reply at 6). *Morris Communications* is distinguishable. In *Aspen Skiing*, the Supreme Court held that a monopolist's unilateral termination of a voluntary and profitable course of dealing with a competitor, without legitimate business justification, can constitute anticompetitive conduct under Section 2, without the necessity of defining a relevant market or establishing monopoly power through detailed market analysis. 472 U.S. at 608-11.

The Supreme Court in *Aspen Skiing* found an antitrust violation because the monopolist's refusal to deal was contrary to its own short-term economic interests, which was critical to the decision. *Morris Communications* concerns more general cases where the plaintiff must define a relevant market and demonstrate monopoly power, which is common in refusal-to-deal claims outside the narrow

*Aspen Skiing* framework. With OkCaller, Google terminated a profitable partnership where they made millions each year. *Aspen* applies under such circumstances; this case exemplifies Aspen, where old, previously profitable business partners are dropped for a monopolist's ever-expanding profit grab. The focus in a refusal to deal claim under *Aspen Skiing* is on the defendant's anticompetitive conduct, specifically the unjustified refusal to continue a prior course of dealing that was profitable and beneficial to both parties. The Court emphasized the importance of the monopolist's intent and the impact on competition, rather than requiring a detailed market definition. Therefore, Google's assertion that Greenflight must allege a relevant market and monopoly power is misplaced.

Additionally, in its reply Google introduces a new argument that Greenflight has not been denied access to Google's search engine because OkCaller still appears in search results, and even if it were removed, users can navigate directly to the site. (Reply at 6-7). This argument is both improper, as it is raised for the first time in the Reply, and frivolous. Raising new arguments in a reply brief deprives Greenflight of the opportunity to respond and is generally disallowed. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). The argument regarding alternative access was not presented in the Motion to Dismiss and should therefore be disregarded.

Even if considered, the argument is frivolous. Comparing this to *Aspen Skiing*, it is akin to suggesting that the plaintiff in that case was not harmed because skiers could still access the mountain by hiking or using a helicopter, ignoring the practical realities of the market and consumer behavior. The Supreme Court recognized that the monopolist's conduct in withdrawing cooperative access harmed competition and consumer choice, even if alternative, impractical means of access existed.

Similarly, in the digital marketplace, being effectively excluded from Google's search results significantly impedes Greenflight's ability to reach users and compete effectively. Google's dominance as the primary gateway to the internet for most users means that manipulation of search rankings or removal from search results effectively denies access to essential facilities, harming competition. This reliance is well documented by the Subcommittee.

Google also argues that the essential facilities doctrine requires the plaintiff to be a competitor in the defendant's market and that Greenflight does not plausibly plead that OkCaller is a competitor in the general search services market. (Reply at 6). This misstates the requirements of the essential facilities doctrine and ignores the allegations in the FAC. Under the essential facilities doctrine, a monopolist controlling an essential facility must provide access to competitors on reasonable terms when denial of access would eliminate competition in a downstream market. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081, 1132-33 (7th Cir. 1983). Greenflight alleges that Google's search

engine is an essential facility and that denial of access harms competition in the reverse phone search market, where Greenflight and Google compete. (FAC ¶¶ 121-124). And under alternative plead theories, reverse search could be a sub-type of GSEs, or evolve into them.

## IV.    STATE LAW CLAIMS UNDER THE UCL ARE PROPERLY PLED

In its Reply, Google conflates the legal standards of the Florida Deceptive and Unfair Trade Practices Act with those of California's Unfair Competition Law ("UCL"), attempting a bait and switch to apply Florida law to Greenflight's California UCL claim. This is misleading. Moreover, Google fails to address significant allegations in the FAC regarding the unfairness of a duopoly controlling internet content, which independently supports Greenflight's UCL claim under the unfair prong.

In its Motion to Dismiss, Google challenged Greenflight's FDUTPA claim by arguing that Greenflight failed to allege that Google had a duty to disclose, which is necessary for a deceptive omissions claim under Florida law. (MTD at 10-11). In contrast, Google did not raise this argument regarding UCL in its initial Motion. Now, in its Reply, Google improperly extends the duty to disclose argument to the UCL claim, attempting to pivot towards this Court's decision with another Google FDUTPA in *DJ Lincoln Enters. v. Google, LLC*, 20-CV-14159-Rosenberg/Reinhart (S.D. Fla. Jul. 27, 2022). This is an inappropriate conflation of legal standards and constitutes a bait and switch.

The duty to disclose under the UCL is more expansive than under FDUTPA. Under California law, the duty to disclose arises in broader circumstances than under Florida law, when: 1) The defendant makes partial representations but also suppresses some material facts, making the partial representation misleading; 2) The defendant actively conceals a material fact from the plaintiff; 3. The defendant has exclusive knowledge of material facts not known to the plaintiff. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997).

In contrast, under Florida law, a duty to disclose in the context of FDUTPA arises only in specific circumstances, such as when there is a fiduciary relationship or when a party has superior knowledge not readily available to the other party and knows that the other party is acting on the basis of mistaken knowledge. *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. 4th DCA 2000).

By attempting to apply the more restrictive Florida standard to the UCL claim, Google misleads the Court and ignores the clear legal standards governing the UCL. Even if the Court considers Google's new argument, Greenflight has sufficiently alleged that Google had a duty to disclose material information under the UCL. Google represents its search results as neutral and objective, creating an expectation among users and competitors that rankings are based solely on relevance and merit. (FAC ¶¶ 57-58, 128, 139). Google possesses exclusive knowledge of its search algorithms and

manipulative practices, which are not reasonably accessible to Greenflight or the public. (FAC ¶¶ 57-58). This includes knowledge about which services it will favor in search rankings, leading developers to waste thousands of person-hours developing projects without a fair opportunity to compete. Google actively conceals its preferential treatment of certain advertisers and its own services, misleading competitors and consumers about the true nature of its search results. (FAC ¶¶ 57-58, 128). Under *LiMandri*, these circumstances establish a duty to disclose under the UCL. Google's failure to disclose its manipulative practices is likely to mislead, satisfying the fraudulent prong of the UCL.

While the duty to disclose under FDUTPA is more limited, Greenflight has nonetheless alleged sufficient facts to suggest that such a duty exists. These were omitted in the Opposition, as the allegations pursuant to FDUTPA's "Illegal" prong suffice to prevent dismissal. Nonetheless, under Florida law, a duty to disclose arises when a party has superior knowledge not readily available to the other party and knows that the other party is acting on the basis of mistaken knowledge. Here, Google has superior knowledge of its search ranking algorithms and the criteria it uses to favor certain services, information not available to competitors like Greenflight. (FAC ¶¶ 57-58). Developers like Greenflight invest significant resources developing services under the mistaken belief that Google's search rankings are based on objective criteria, when in fact Google favors certain advertisers and its own services. (FAC ¶¶ 57-58, 83-84). Put more succinctly, Google (and the Subcommittee) know developers engage on projects doomed never be ranked, for anticompetitive reasons, but doesn't advise them to cease development. This breaches FDUTPA. These circumstances more than suggest that Google has a duty to disclose under the spirit of FDUTPA, as its superior knowledge and the developers' reliance on mistaken beliefs result in unfair practices and wasted resources.

**Google's Failure to Address the Unfairness of the Duopoly**

Both in its Motion to Dismiss and its Reply, Google conspicuously fails to address the FAC's significant allegations regarding the unfairness of a duopoly controlling internet content and access methods. The FAC alleges that Google and Apple collectively form a duopoly, stifling competition and innovation by controlling primary distribution channels and disadvantaging independent developers like Greenflight. (FAC ¶¶ 11, 28). This duopoly leads to unfair practices that harm competition and consumers, independently supporting Greenflight's claim under the unfair prong of the UCL. Upon information and belief, this is the first time the federal courts have directly adjudicated such a duopoly claim, and Google's failure to acknowledge it – especially in light of the ISA Agreement – is telling.

10

Under California law, an act or practice is "unfair" if it "violates the policy or spirit" of antitrust laws or "otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Google's failure to address this allegation in any meaningful way constitutes waiver of Rule 12, and serves as independent grounds for denying Defendant's 12(b)(6) motion.

Finally, Google contends that Title VII[5] framework for retaliation is unique and does not apply to UCL. That framework appears reasonable at this stage. Moreover, and contrary to Google's assertion, timing alone is not the sole basis for suspecting retaliation. The FAC clearly indicates unusual aspects of Google's actions. Wilson Sonsoni's correspondence on the matter – deflecting to theories of Google's unjust treatment by Apple – certainly raised more questions than it answered.

## V.    GREENFLIGHT'S PATENT INFRINGEMENT CLAIMS ARE PROPERLY PLED

Google introduces new arguments in its Reply, such as asserting that the FAC lacks allegations mapping the patent claims to the accused products and that Greenflight cannot plausibly allege that Google has unique knowledge of third-party infringing products' functionality. (Reply at 9). These arguments were not raised in the Motion to Dismiss and should be disregarded. *Herring v. Sec'y, Dep't of Corr.,* 397 F.3d 1338, 1342 (11th Cir. 2005).

In the Opposition, Greenflight clarified that while Google is not alleged to directly infringe the '847 Patent through its own products or services, the FAC focuses on indirect infringement through inducing or contributing to infringement by third parties. (Opposition at 19 n.9). Google asserts that Greenflight has conceded it has no claim that Google directly infringes the '847 Patent and that the direct infringement claims should be dismissed with prejudice. (Reply at 8). Despite Greenflight's clarified position, dismissal with prejudice would be premature.

Google further argues that the FAC fails to allege direct infringement by third parties because it does not identify specific infringing products or map any accused products onto the patent claims. (Reply at 8-9). This argument ignores the detailed allegations in the FAC and Opposition. The FAC specifically identifies Spokeo and Whitepages as third-party infringers offering reverse phone search services that infringe Claims 7-10 of the '847 Patent. (FAC ¶¶ 154, 159-160, 162). Moreover, the FAC alleges that there are numerous third-party infringers too numerous to count, including various app developers and websites offering reverse phone lookup services. (FAC ¶¶ 159, 162). These third parties infringe by practicing the claimed methods and systems of the '847 Patent.

---

[5] Counsel retracts the *Hunt v. Florida Corrections*, No. 2:21-cv-192 (M.D. Fla. 2022) citation. It was erroneous draft material, and redundant with the preceding and correct *Thomas v. Cooper* citation on temporal proximity.

Google has disregarded Opposition citation that at the pleading stage, a plaintiff is not required to provide detailed infringement contentions or map each element of the claims to the accused products. The Federal Circuit held that a complaint is sufficient if it identifies the accused products and alleges that the products meet each and every element of at least one claim. *Disc Disease Solutions Inc. v. VGH Solutions, Inc.* 888 F.3d 1256, 1260 (Fed. Cir. 2018). Similarly, the court held that detailed factual allegations are not necessary at the pleading stage as long as the complaint provides fair notice of the infringement claims. *Lifetime Industries, Inc. v. Trim-Lok, Inc.* 869 F.3d 1372, 1379 (Fed. Cir. 2017). Greenflight has identified the infringing parties (Spokeo, Whitepages, and numerous other app developers) and alleged that their services infringe the asserted patent claims. (FAC ¶¶ 159-162). This provides sufficient notice to state a plausible claim of direct infringement.

Google similarly contends that the FAC does not plausibly allege that Google was aware of any third-party infringement or had specific intent to encourage infringement. (Reply at 9-10). This misstates the allegations in the FAC and ignores key facts. The FAC alleges that Google has been aware of the '847 Patent for over a decade due to its longstanding relationship and collaboration with Greenflight. (FAC ¶¶ 152, 156; Opposition at 19-20). Google and Greenflight worked together on various projects, and Google was presumably aware of Greenflight's patent portfolio. Furthermore, Greenflight formally notified Google of the '847 Patent and potential infringement nearly two years ago through pre-litigation correspondence. (FAC ¶ 153; Opposition at 19-20). Despite this knowledge, Google continued to support and encourage the infringing activities.

Google continues to distribute and profit from infringing apps and services through its platforms, such as the Play Store and its advertising services. (FAC ¶¶ 161-168). Google provides tools and incentives to developers of infringing apps, demonstrating specific intent to induce infringement.

Knowledge of the patent and of the infringement can be established by pre-suit communications and the filing of the lawsuit. *Rembrandt Soc. Media, LP v. Facebook, Inc.,* 950 F. Supp. 2d 876, 882 (E.D. Va. 2013) ("[T]he requisite knowledge and intent may be established through the filing of the complaint.") Google's reliance on *Bot M8 LLC v. Sony Corp. of Am.* is misplaced. In *Bot M8*, the court acknowledged that while a plaintiff must plead sufficient facts to state a plausible claim, the level of detail required depends on the complexity of the technology and the nature of the case.

## CONCLUSION

For the foregoing reasons, Google's Motion to Dismiss should be denied in its entirety. Google's introduction of new arguments, misrepresentations, and failure to conduct due diligence undermine its Motion and raise serious concerns.

Respectfully submitted on this 7th day of October 2024.


/s/Ayelet Faerman                    /s/ Keith Mathews
AYELET FAERMAN, ESQ.                 Keith Mathews
FBN: 102605                          Attorney for Plaintiff
Faerman Law, P.A.                    *Pro Hac Vice*
3859 NW 124th Ave                    NH Bar No. 20997
Coral Springs, FL 33065             American Wealth Protection
Tel: (954) 271-8484                 Manchester, NH 03105
Fax: (954) 271-8474                 Ph. 603-622-8100
ayelet@faerman.law                  keith@awplegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on this 7th day of October 2024, to all parties of record via the CM/ECF filing system as per the Federal Rules of Civil Procedure and Local Court Rules.

| | |
|---|---|
| /s/Ayelet Faerman | /s/ Keith Mathews |
| AYELET FAERMAN, ESQ. | Keith Mathews |
| FBN: 102605 | Attorney for Plaintiff |
| Faerman Law, P.A. | *Pro Hac Vice* |
| 3859 NW 124th Ave | NH Bar No. 20997 |
| Coral Springs, FL 33065 | American Wealth Protection |
| Tel: (954) 271-8484 | Manchester, NH 03105 |
| F ax: (954) 271-8474 | Ph. 603-622-8100 |
| ayelet@faerman.law | keith@awplegal.com |

14