**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:24-cv-80395-RLR-BER**

GREENFLIGHT VENTURE CORPORATION,

    Plaintiff,

v.

GOOGLE LLC,

    Defendant.

_____

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**
**<u>FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    Count 1 Fails to State a Section 2 Claim. ................................................................ 2

II.   Count 2 Fails to State a Section 1 Claim. ................................................................ 4

    A.    Count 2 Fails for All Alleged Markets Because It Fails to Allege an Agreement.. 4

    B.    Count 2 Fails for Additional Reasons. ................................................................. 7

III.  Count 3 Fails to State a Section 2 Claim. ................................................................ 9

IV.   Count 4 Fails to State a Claim Under California's Unfair Competition Law.................. 11

    A.    The "Unlawful Business Practices" Prong. ......................................................... 11

    B.    The "Unfair" Prong. ......................................................................................... 13

    C.    The "Fraudulent" Prong. ................................................................................... 16

V.    Count 5 Fails to State a Section 2 Claim. ................................................................ 17

CONCLUSION .................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                                              **Pages**

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................11

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985) ..............................................................................................6

*Bailey v. Allgas, Inc.*,
  284 F.3d 1237 (11th Cir. 2002) .............................................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................3, 5

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982) ..............................................................................................4

*Coronavirus Reporter v. Apple Inc.*,
  85 F.4th 948 (9th Cir. 2023) .................................................................................2

*Casault v. Fed. Nat. Mortg. Ass'n*,
  915 F. Supp. 2d 1113 (C.D. Cal. 2012) ...............................................................16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ..............................................................................11, 13, 15

*City of San Jose v. Off. of the Com'r of Baseball*,
  776 F.3d 686 (9th Cir. 2015) ...............................................................................14

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ..............................................................................16

*Dreamstime.com, LLC v. Google LLC*,
  No. 20-16472, 2022 WL 17427039 (9th Cir. Dec. 12, 2022)............................15

*Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*,
  797 F.3d 1248 (11th Cir. 2015) .............................................................................9

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) .................................................................................3

*Feldman v. Jackson Mem'l Hosp.*,
  571 F. Supp. 1000 (S.D. Fla. 1983) ....................................................................17

**TABLE OF AUTHORITIES**

*(continued)*

<table>
<tr><td align="center">*Cases*</td><td align="right">**Pages**</td></tr>
</table>

*Feldman v. Palmetto Gen. Hosp., Inc.*,
   980 F. Supp. 467 (S.D. Fla. 1997) ...................................................................................7

*Fla. Seed Co. v. Monsanto Co.*,
   105 F.3d 1372 (11th Cir. 1997) ...................................................................................4, 9

*Green Country Food Market, Inc. v. Bottling Group*,
   371 F.3d 1275 (10th Cir. 2004) ...................................................................................8, 9

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..........................................................................15

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .......................................................................................14

*In re Brinker Data Incident Litig.*,
   No. 18-686, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020)................................................12

*In re Flat Glass Antitrust Litig.*,
   385 F.3d 350, 360 (3d Cir. 2004).....................................................................................6

*JES Properties, Inc. v. USA Equestrian, Inc.*,
   No. 802CV1585T24MAP, 2005 WL 1126665 (M.D. Fla. May 9, 2005) ........................17

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .........................................................................................6

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
   72 F.3d 1538 (11th Cir. 1996) .........................................................................................4

*Lombard's Inc. v. Prince Mfg. Inc.*,
   583 F. Supp. 1572 (S.D. Fla. 1984) .................................................................................5

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) .........................................................................................11

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
   317 F.3d 703 (7th Cir. 2003) .........................................................................................17

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
   734 F.2d 705 (11th Cir.1984)) .........................................................................................5

## <u>TABLE OF AUTHORITIES</u>
*(continued)*

| *Cases* | **Pages** |
|---|---|

*Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*,
  748 F.2d 602 (11th Cir. 1984) ........................................................................5

*Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
  555 U.S. 438 (2009)........................................................................................6

*Park-Kim v. Daikin Applied Americas, Inc.*,
  747 F. App'x 639 (9th Cir. 2019) .................................................................12

*Sinaltrainal v. Coca-Cola Co.*,
  578 F.3d 1252 (11th Cir. 2009) ...........................................................3, 5, 6

*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*,
  12 F.3d 609 (6th Cir. 1993) ...........................................................................9

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)........................................................................................6

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001) .......................................................16

## <u>TABLE OF AUTHORITIES</u>
*(continued)*

| *Other Authorities* | **Pages** |
|---|---|
| Cal. Bus. & Prof. Code § 17200 | 11, 13, 16 |
| 18 U.S.C. § 1512 | 13 |

This Court granted Defendant Google LLC's Motion to Dismiss the federal antitrust and patent claims of the First Amended Complaint ("FAC") (DE 24). *See* DE 53 (Order of November 8, 2024); DE 58 (Order of November 19, 2024). Judgment was reserved on Plaintiffs' state law claims and leave to amend permitted. DE 53; DE 60 (Order of December 16, 2024). Plaintiffs now have filed a Second Amended Complaint ("SAC") that has abandoned the patent and Florida Unfair Trade Practices claims. DE 61; *see also* DE 59. In what remains, the SAC pays lip service to the deficiencies the Court previously identified, but the new allegations do not rectify the fundamental flaws in the Plaintiffs' claims that this Court previously identified. Google respectfully requests the Court dismiss the Second Amended Complaint with prejudice.

## BACKGROUND

Plaintiff GFVC operates websites, including one named OkCaller.com that provides what the SAC calls "reverse phone search" capability. SAC ¶ 20.[1] Google operates the world's most widely used general search engine. SAC ¶ 6. The SAC defines a "general search engine" as a platform that allows consumers to find responsive information on the internet by entering keyword queries. SAC ¶ 60. The SAC asserts that a general search engine ("GSE") such as that operated by Google is "distinct[]" from platforms offered by Vertical Search Providers ("VSPs") such as OkCaller.com because of the breadth of types of information that can be accessed using a general search engine versus VSPs that provide "depth and domain specificity" that general search services cannot replicate. SAC ¶¶ 60, 68, 69.

---

[1] The SAC makes passing reference to another website owned by GFVC, FactMed.com, but largely ignores it when attempting to articulate a claim. To the extent Plaintiffs contend that the SAC asserts a claim based on alleged harm to FactMed.com, any such claim fails, at a minimum, for the reasons explained below as to OkCaller.com.

1

According to the SAC, beginning in 2015, OkCaller.com had over 200,000 users per day. SAC p. 15 (chart).  Plaintiffs attribute OkCaller.com's volume of usage, in part, to how the site was displayed and ranked on Google's search engine results pages in response to user search queries.  SAC ¶ 54.  Over time, other websites began to emulate OkCaller.com and its share of traffic fell.  SAC ¶¶ 55, 59; *see also* SAC p. 15 (chart).  In late 2022, OkCaller.com's traffic allegedly fell to near zero.  SAC p. 15 (chart).  The SAC speculates that OkCaller.com's decline is connected in some fashion to actions that it claims Google took in response to the filing of an appellate brief by plaintiff Dr. Isaacs in a case he had brought against Apple Inc., although this allegation is coupled with statements such as "as best as Plaintiffs' [sic] can ascertain prior to discovery."  SAC ¶¶ 35–38.[2]

## ARGUMENT

### I.     Count 1 Fails to State a Section 2 Claim.

Count 1 of the SAC repeats Count 1 of the FAC in alleging a "general search services" relevant antitrust market (FAC ¶ 99, SAC ¶ 104), and that Google has "maintained and abused its monopoly power in [GSEs]" (FAC ¶ 100, SAC ¶ 105) through exclusionary conduct that has "foreclosed a substantial share of the general search services market" (FAC ¶ 101, SAC ¶ 106). Like the FAC, the SAC alleges that GSEs are "unique" platforms that "enable users to retrieve responsive information from the internet by entering keyword queries."  SAC ¶ 60.

The Court dismissed Count 1 of the FAC for a lack of antitrust standing because "[t]he Plaintiff has not sufficiently alleged that it is a market participant in the general search services

---

[2] The appeal in Dr. Isaacs's case against Apple described in these paragraphs of the SAC is *Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948 (9th Cir. 2023) (affirming district court's dismissal with prejudice of all claims of Jeffrey Isaacs and related parties against Apple, including alleged antitrust violations).

market." DE 53 at 5–6 & n.3; *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." (citation and quotation marks omitted)); DE 41 at 2–4. The revised allegations of Count 1 of the SAC fail for the same reason; the SAC continues to fail to adequately plead facts that would give rise to antitrust standing.

The SAC again claims that Plaintiffs are "competitors," and makes the new (and inscrutable) allegation that "Plaintiffs are competitors under [proposed] DOJ and [active] EU regulations to permit competing developers access to Googlebot data." SAC ¶ 107 (brackets in original). If by that Plaintiffs mean such regulations would administratively define OkCaller.com as a "competitor" for purposes of permitting access to certain data, that still does not make the allegation that OkCaller.com would become a general search engine, SAC ¶ 4, any less implausible. *See* DE 53 at 6 n.3 (rejecting GFVC's contention that it could have evolved into a GSE). The allegation also is contradicted by other portions of the SAC. *See* SAC ¶ 66 ("The creation, maintenance, and growth of a general search engine requires significant capital investment, highly complex technology, access to effective distribution, and adequate scale."). The Court thus need not credit it. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) ("The vague and conclusory nature of these allegations is insufficient to state a claim for relief, and 'will not do.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

Plaintiffs now argue that they are market participants in the general search engine market by virtue of being users of "GWT" (Google's Webmaster Tools), which developers can use to "present, monitor, and improve their sites' visibility." SAC ¶¶ 62, 107. But the SAC does not

3

allege a market for webmaster tools.  Google Search and GWT are different, non-interchangeable products serving different groups of users, *see* SAC ¶¶ 60, 62, and there is no well-pleaded allegation to the contrary.  The two cannot be a part of the same antitrust market. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002) (explaining that a determination of the boundaries of the relevant product market requires an examination reasonable substitutes (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)).  Plaintiffs therefore have not suffered antitrust injury from the fact that they purportedly are consumers of Google Webmaster Tools.  *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) ("Basically, a plaintiff must show that it is a customer or competitor in the *relevant* antitrust market." (emphasis added)).

Plaintiffs' other revised allegations relevant to Count 1 all founder on this Court's rejection of the Plaintiffs' *McCready* argument.  *See* DE 53 at 2–6 (analyzing *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982)).  That is, however one characterizes the role of website owners in the general search market, there is no allegation (nor could there be) that Google's actions as to OkCaller.com were "a conduit for the Defendant to harm competing search engines, such as Bing."  DE 53 at 5.

## II.   Count 2 Fails to State a Section 1 Claim.

### A.   Count 2 Fails for All Alleged Markets Because It Fails to Allege an Agreement.

Count 2 of the SAC repeats Count 2 of the FAC in alleging a Sherman Act Section 1 claim across multiple markets.  A Section 1 claim requires "an agreement between two or more persons to restrain trade, because unilateral conduct is not illegal under section 1." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996).  The Court dismissed Count 2 of the FAC because it failed to contain more than a conclusory allegation of an agreement.  DE

53 at 10.  The SAC makes little effort to remedy this deficiency.  Like the FAC, the SAC relies on vague references to alleged agreements.  *E.g.*, SAC ¶ 115 (referring to non-specific "explicit and implicit understandings, arrangements, and contractual obligations").  Such conclusory allegations do not plead facts that actually establish the existence of any agreement between Google and a third party to restrain trade, much less how any such agreement harmed Plaintiffs. As such, they do not satisfy Rule 12(b)(6).  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Sinaltrainal*, 578 F.3d at 1268; *Lombard's Inc. v. Prince Mfg. Inc.*, 583 F. Supp. 1572, 1573–74 (S.D. Fla. 1984), *aff'd*, 753 F.2d 974 (11th Cir. 1985) (dismissing Section 1 claim because although plaintiff identified a purchase agreement, the "plaintiff's conclusory allegation of a conspiracy to restrain trade will not survive a motion to dismiss").

While the SAC adds allegations not found in the FAC, these allegations relate to arguments that this Court has already considered and rejected.  For example, the SAC now makes explicit that it is relying on an agreement between Google and Apple to make Google the default search engine on the Safari browser for its Section 1 claim.  *See* SAC ¶ 113.  But this Court previously found that agreement did not support a Section 1 claim because "Plaintiff has not alleged, and it certainly has not plausibly alleged, how it has suffered some direct effect from this agreement."  DE 53 at 10–11; *see also* DE 48 at 5–6.  The SAC contains no additional allegations or explanations as to how this agreement directly harms Plaintiffs, which is fatal to the Section 1 claim.  *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 608 (11th Cir. 1984) (holding that a "plaintiff must be the target against which anticompetitive activity is directed. . . . [i]ncidental or consequential injury . . . does not give a plaintiff standing . . ." (quoting *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 710 (11th Cir. 1984))).

The SAC also avers that Google preferences high-spend advertisers, SAC ¶ 114, an argument that the Court already has considered and rejected, *see* DE 53 at 10, n.7 (citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008)).  But even taking as true (and it is not) that Google preferences high-spend advertisers in its search results, this is at most an allegation that Google deals with entities that provide it more revenue differently than those that provide less.  This is not anticompetitive conduct prohibited by the Sherman Act.  *See Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) ("[A]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.").  Google is under no duty to treat all entities equally; to the contrary, as this Court has recognized, Google has no duty to deal with GFVC at all.  *See* DE 53 at 11–12 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) and *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004)).

Moreover, the SAC fails to plausibly allege that this purported practice is the result of an agreement[3] and not merely Google's business judgment as to what search results are best to serve.  In the absence of allegations of direct evidence that Google and unnamed advertisers agreed on advertising spend in return for better organic search placement, Plaintiffs are required to plead certain "plus factors," such as evidence that Google had a motive to enter into this conspiracy and evidence that Google acted contrary to its independent economic interests.  *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004).  The SAC fails to plead any of those plus factors.

_____

[3] The SAC alleges that "[t]his conduct amounts to more than mere unilateral self-preferencing; it arises from explicit and implicit understandings, arrangements, and contractual obligations that preserve Google's supremacy." SAC ¶ 115.  The Court need not credit such a conclusory allegation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009).

**B.      Count 2 Fails for Additional Reasons.**

Count 2 alleges five relevant markets: general search services, VSP services, directory information services market, internet content access, and single-brand Google-referred traffic market.  SAC ¶ 112.  The allegations in the SAC are deficient for these markets for the following reasons.

**_General Search Services_**:  The antitrust standing issues identified in Section I, *supra*, similarly require the dismissal of Count 2 as it relates to an alleged general search services market.  *See Feldman v. Palmetto Gen. Hosp., Inc*., 980 F. Supp. 467, 470 (S.D. Fla. 1997) (dismissing both Section 1 and Section 2 claims because "plaintiff lacks antitrust standing").

**_Vertical Search Provider Services_**:  The Court previously observed that the FAC's alleged vertical search provider market was so broad as to preclude any plausible claim of monopolization by Google.  DE 53 at 7.  While there has been some shifting of the proverbial deck chairs in SAC ¶¶ 68–70, Plaintiffs continue to define the alleged market to include any "specialized online platform" that provides results for a specific "category of data or services." The SAC expressly identifies Expedia and Yelp as examples of such providers and the definition, on its face, reaches entities such as Amazon and Walmart (which are specialized as to shopping).  SAC ¶ 68.  In sum, the claim fails for the same reason as the FAC did.[4]

**_Directory Information Services_**:  The Court previously observed that the allegations of the "reverse phone number lookup" market were much the same as the VSP market.  DE 53 at 7. In the SAC, Plaintiffs have renamed that market to "directory information services," but the Court's conclusion remains applicable for two principal reasons.  First, the SAC itself admits to

---

[4] The market definition further fails in that the allegation that Plaintiffs' product, OkCaller.com, is a substitute for, say, Expedia, is implausible.

the *many* competitors to OkCaller.com.  SAC ¶ 55 (alleging it was "emulated literally around the web" by "dozens of phone websites").  Second, and critically, if the market is large enough to also include Google (which it must if there were to be a plausible claim) it must include all manner of substitutes, whether "other general search engines, social media platforms, online directories, etc."  DE 53 at 8.  As this Court held, there can be no plausible allegation of monopolization of such a market.  *Id.*

**_Internet Content Access_**:  This alleged market appears for the first time in the SAC, which defines it as "[g]eneral search engines and smartphone application distribution platforms, taken together."  SAC ¶ 82.[5]  Among other flaws, the claims as to this market fail because OkCaller.com is not a market participant.  Tacking "smartphone application distribution platforms" onto general search engines cannot cure the same standing issues that doom Count 1.

**_Single-Brand Market for Google Referred Traffic_**:  This alleged market also appears for the first time in the SAC.  This, again, is a variant on the general search engine market claims.  Instead of adding smartphone application distribution platforms (as in the purported Internet Content Access market addressed above), it subtracts all general search engines other than Google.  And fails, again, because it cannot cure the same standing issues as Count 1.

The allegation of such a market fails for additional reasons.  "Single-brand markets are, at a minimum, extremely rare."  *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008).  This rarity stems from the fact that "[i]n general, a manufacturer's own products do not themselves comprise a relevant product market. . . . [A] company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product."  *Green Country Food*

---

[5] The SAC names Apple's "App Store" as an example of a smartphone application distribution platform.  SAC ¶ 82.

*Market, Inc. v. Bottling Group*, 371 F.3d 1275, 1282 (10th Cir. 2004) (quotation marks and citation omitted).

    The SAC does not even come close to plausibly alleging that this is one of those extremely rare cases.  In order to plausibly plead a single brand market, the product must be "unique" and "no reasonable substitutes [can] exist." *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 614 (6th Cir. 1993).  Here, the SAC recognizes that "alternative search engines like Bing or Yahoo exist."  SAC ¶ 78.  The SAC also alleges that "[c]onsumers inherently trust Google's search results due to the company's reputation for delivering relevant and authoritative information.  This trust bestows upon Google-referred websites a perceived quality and legitimacy that is not easily replicated through other channels."  SAC ¶ 77.  But "trust" in Google Search's results is not enough to create a single brand market.  *Green Country Food Market*, 371 F.3d at 1282 ("Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market.").

## III.    Count 3 Fails to State a Section 2 Claim.

    Count 3 of the SAC—an *Aspen Skiing*-type refusal to deal claim—is a retread of Count 3 of the FAC.  *Compare* FAC ¶¶ 116–124 *with* SAC ¶¶ 119–128.  Claim 3 of the SAC is deficient for all the same reasons as Count 3 of the FAC.  *See* DE 41 at 7–10; DE 48 at 6–7.

    As the Court correctly found, to maintain its refusal to deal claim, the SAC must contain well-pleaded allegations of relevant market and monopoly power in that market, antitrust standing, and anticompetitive conduct.  DE 53 at 11; *see also Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1263 (11th Cir. 2015); *Fla. Seed Co., Inc.*, 105 F.3d at 1374.  The failure of the SAC to meet the requirements of relevant market, monopoly power, and antitrust standing are addressed in Sections I & II, *supra*.  As to the alleged general search engine market, Plaintiffs lack antitrust standing because they are not participants in that market.  *See*

Section I, *supra*.  As to the other alleged markets, Plaintiffs' allegations of a properly defined market fail.  *See* Section II, *supra*.

The SAC adds very little to the refusal to deal allegations that the Court previously found insufficient to maintain the claim.  The allegations remain "far removed" from those of *Aspen Skiing*, which themselves were "at or near the outer boundary" of antitrust liability.  DE 53 at 11–12; *see generally* DE 41 at 8–10.  There continues to be no allegation of an agreement between Google and OkCaller.com for OkCaller.com to appear in Google's search results.  The fact remains that Plaintiffs "[do] not even adequately allege that the Defendant has refused to deal."  DE 53 at 12.  The SAC does allege that "Google now shows -zero- pages for OkCaller (or perhaps one page) which represents an effective termination of the critical volume necessary for a directory services site to function and operate."  SAC ¶ 124.  But that allegation is premised on a screenshot contained in the SAC that returns zero results for the query "**<u>site</u>:**www.okcaller.com."  *See* SAC ¶ 27.  As the Court itself observed previously, Plaintiffs' domain is easily locatable using Google search, DE 53 at 12, n.9.  If one searches "www.okcaller.com" (www.google.com/search?q=www.okcaller.com), Plaintiffs' website is the first result.  Further, the allegation that Google shows "zero" results for OkCaller.com is inconsistent with Plaintiffs' admission that OkCaller.com has not been removed from Google and that reverse phone queries continue to emanate from Google to the website, albeit at a lesser rate.  *See* DE 34-4 (referring to a reduction in the number of reverse phone queries to OkCaller.com and acknowledging that there has not been a "domain removal").[6]

---

[6] The Court may consider this document for the reasons articulated at DE 53 at 12, n.9, and DE 41 at 9, n.4.

The SAC adds a conclusory statement that "[a]s described in preceding sections, OkCaller.com had a formidable and significant preexisting, profitable relationship with Google." SAC ¶ 124. But the factual allegations contained in the SAC are not meaningfully changed from the FAC. The central premise of the allegations related to the relationship between the parties is that Google listed Plaintiffs' website in relevant search results and that Plaintiffs received ad revenue from visits to its website. New allegations related to the exact amount of ad revenue generated by OkCaller.com, SAC ¶ 23, or Google's alleged profits from thousands of other websites, SAC ¶ 24, do not change the analysis or the Court's conclusion that Plaintiffs have failed to state a claim, *see* DE 53 at 11–12.[7]

## IV.    Count 4 Fails to State a Claim Under California's Unfair Competition Law.

Count 4 alleges that Google has violated California's Unfair Competition Law prohibition of "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a "separate and distinct theory of liability" and "an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted). The SAC purports to allege a cause of action under each prong, but nevertheless fails to set forth sufficient factual matter to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    The "Unlawful Business Practices" Prong.

Under the UCL's unlawful business act or practice prong, the statute "'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20

---

[7] The "essential facilities doctrine" allegations remain unchanged, *compare* FAC ¶ 123 *with* SAC ¶ 127, and cannot save the failure to deal claim. *See* DE 53 at 12, n.9.

Cal. 4th 163, 180 (1999) (citing *State Farm Fire & Cas. Co. v. Superior Ct.*, 45 Cal. App. 4th

1093, 1103 (1996)); *see also In re Brinker Data Incident Litig.*, No. 18-686, 2020 WL 691848, at

*16 (M.D. Fla. Jan. 27, 2020) ("To state a cause of action based on an unlawful business act or

practice under the UCL, a plaintiff must sufficiently allege a violation of some underlying law.").

In two paragraphs of Count 4, Plaintiff identifies Google's purportedly unlawful business

practices:

> **131.**    Google's conduct, as detailed in the preceding counts,
> constitutes unlawful business practices in violation of the UCL
> because it violates the Sherman Act, as well as other federal and
> state laws.
>
> * * *
>
> **136.**    Google's actions are unfair and illegal to the extent the
> company retaliates against antitrust advocates, such as Plaintiffs.
> Beyond being unfair and un-American, the conduct violates federal
> witness protection statutes, including 18 USC 1512, and therefore is
> protected conduct under UCL. Plaintiff asserts elements of
> retaliation occurred, including a protected act – their previous
> federal antitrust advocacy, the aforementioned adverse events, and
> temporal proximity between these events. Plaintiffs seeks expedited
> production by Google of evidence surrounding the termination of
> OkCaller. Plaintiffs, as alleged, submit that Google has stonewalled
> reasonable requests for over one year, effecting a DARVO
> campaign to blame Plaintiffs for simple inquiry into antitrust
> matters.

SAC ¶¶ 131, 136.  For all of the reasons discussed in Sections I–III, *supra*, and in this Court's

prior orders, the pleading requirements of the alleged Sherman Act violations have not been met.

This conduct accordingly cannot serve as a predicate violation that can be addressed by the

unlawful prong of California's UCL.  *See Park-Kim v. Daikin Applied Americas, Inc.*, 747 F.

App'x 639, 640 (9th Cir. 2019) (nonprecedential) ("Plaintiffs cannot state a claim under the

unlawful prong of the California UCL because that claim is derivative of the plaintiffs' other

claims, and plaintiffs have failed to adequately plead a violation of any other law."); *see also*

DE 55 at 3 (GFVC noting that the UCL claim is "closely related to the federal claims previously analyzed by the Court").

As to the allegation of purported "witness retaliation," the SAC is wholly insufficient. The SAC speculates that OkCaller.com's decline is connected in some fashion to actions allegedly Google took after Dr. Isaacs filed an appellate brief in a case he had brought against Apple, although the allegation is hedged with statements such as "as best as Plaintiffs' [sic] can ascertain prior to discovery" and "*to the extent* the company retaliates against antitrust advocates." SAC ¶¶ 35–38, 136 (emphasis added). That speculation does not suffice. Finally, the allegation is non-specific, alleging violation of multiple "federal witness protection statutes." SAC ¶ 136. And while the SAC does identify 18 U.S.C. § 1512, it fails to plausibly plead which of the multiple witness tampering offenses contained in that section (each with distinct elements and *mens rea* requirements) Google allegedly violated. *See* 18 U.S.C. § 1512(b)–(d).

### B.      The "Unfair" Prong.

The California Supreme Court has explained that any finding of unfairness to competitors under section 17200 must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 186–87. "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

The SAC falls short here as well, again tying its UCL claim to its failed federal antitrust claims and non-pleaded witness retaliation allegation:

133.    Google's practices are also unfair within the meaning of the UCL because they offend established public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, web developers, and specialized content providers. Google's conduct has had the effect of stifling competition, reducing innovation, and causing significant financial harm to Plaintiffs and the class.   Google breached its duty to disclose by the aforementioned conduct, leading to significant losses of developer time and resources.

134.    Google's actions are unfair to the extent the developers invest substantial time, money, and resources to bring competitive services to consumers, but are squelched and (de)indexed or suppressed in Google Search. Similarly, Google's failure to implement transparent quality metrics, where developers could fairly compete and improve their work products, is unfair, especially given Google's two-decade timeframe to implement such metrics that are customary in other high volume disbursement allocations. Developer transparency would avoid wasted resources, and benefit consumers greatly, and therefore a monopolist like Google with 90% of the search market should provide such an offering.

* * *

136.    Google's actions are unfair and illegal to the extent the company retaliates against antitrust advocates, such as Plaintiffs.  . . .

SAC ¶¶ 133, 134, 136.  Paragraph 133, when read together with paragraphs 131 and 132, refers

to the conduct underlying Plaintiffs' failed and inadequately pleaded federal antitrust claims.

Thus, these allegations are insufficient to survive a motion to dismiss.  *See City of San Jose v.*

*Off. of the Com'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015) ("[I]f the same conduct is

alleged to be both an antitrust violation and an 'unfair' business act or practice for the same

reason . . . the determination that the conduct is not an unreasonable restraint of trade necessarily

implies that the conduct is not 'unfair' toward consumers." (quoting *Chavez v. Whirlpool Corp.*,

93 Cal. App. 4th 363, 375 (2001))); *see also Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th

Cir. 2018).  Plaintiffs' inadequately alleged witness retaliation theories also thus cannot amount

14

to "unfair" conduct.  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (holding that claims for unfair conduct under the UCL cannot survive a motion to dismiss if they "overlap entirely with the business practices addressed in the . . . unlawful prong[] of the UCL[.]").

As to paragraph 134, there are no well-pleaded allegations that developers who invest resources into developing their services and do not receive their desired Google Search rankings is contrary to any legislatively declared policy or that it "significantly" impacts competition, as required to state a violation of UCL.  *Cel-Tech*, 20 Cal. 4th at 187.  Similarly, there are no well-pleaded allegations that Google's business decision not to implement so called "transparent quality metrics" violates a legislatively declared policy or threatens to significantly impact competition.  Contrary to Plaintiffs' unfounded assertions (*see* SAC ¶ 133), Google does not have a duty to disclose its algorithms.  Indeed, the *Dreamstime* litigation on which Plaintiffs rely, SAC ¶¶ 18, 114, affirmed summary judgment of no UCL violation because there was no obligation to disclose a revision to its algorithm.  *Dreamstime.com, LLC v. Google LLC*, No. 20-16472, 2022 WL 17427039, at *2 (9th Cir. Dec. 12, 2022) ("Google had no affirmative duty under the parties' agreement to disclose its confidential algorithmic revision.").[8]  Furthermore, this argument rests on the implausible premise that disclosure of the algorithm by which Google ranks search results will lead to an improvement in the quality of websites.  Equally if not more plausible is that disclosure of Google's ranking criteria would encourage websites to manipulate content solely to achieve a higher ranking, diminishing overall quality and user experience.

---

[8] The court in *Dreamstime* also dismissed the claim of unfairness under the UCL because plaintiff "ha[d] not shown an antitrust violation" and therefore "fail[ed] the *Cel-Tech* test[.]" *Dreamstime.com*, 2022 WL 17427039, at *2.

### C.      The "Fraudulent" Prong.

Where a competitor is suing for fraud under the UCL, it must "show deception to some

members of the public[.]"  *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d

1099, 1121 (C.D. Cal. 2001) (explaining there is "no case under the 'fraudulent' prong of

§ 17200 allowing one competitor to proceed against another on the basis that the defendant

deceived him").  "Although a UCL claim need not plead the elements of common law fraudulent

deception, *it must allege the existence of a duty to disclose, as well as reliance*[.]  Violations that

sound in fraud must meet the pleading requirements under Federal Rule of Civil Procedure 9(b),

which require the 'who, what, when, where, and how' of the fraudulent misrepresentation."

*Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1129 (C.D. Cal. 2012) (emphasis

added) (citation omitted), *aff'd*, 658 F. App'x 872 (9th Cir. 2016).

The SAC contains only a single paragraph devoted to Google's alleged "fraud":

> **132.**    Google's actions have misled and deceived consumers,
> publishers, and developer competitors regarding the nature and
> operation of its search engine, including the manipulation of search
> rankings to favor its own products and those of its strategic partners
> while disadvantaging independent developers and specialized
> content providers, such as Plaintiffs. In short, consumers and
> developers believe their Google queries result in a reasonably fair
> and competitive SERP result, but this is often untrue. Google does
> not disclose when it provides unfair or self-preferencing SERP
> results, which violates UCL. Transparency metrics are needed to
> comply with UCL.

SAC ¶ 132.  This impermissibly vague paragraph does not come close to a plausible allegation of

fraud, let alone an allegation of fraud pleaded with particularity.  Plaintiffs merely invoke, in

sweeping terms, a supposed deception of consumers and competitors with regards to how Google

ranks search results.  And, as explained above, Google is not under any obligation or duty to

disclose how it ranks search results, the lack of which is fatal to Plaintiffs' fraud claim.

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006), as modified (Nov. 8,

2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").  Moreover, the SAC makes clear that Plaintiffs' dispute with Google is not about a misrepresentation made to the public (without which there can be no fraud claim under the UCL), but really about Google's refusal to disclose to Plaintiff the reasons for the purported change in traffic to Okcaller.com.  *E.g.*, SAC ¶¶ 33–36.

## V.     Count 5 Fails to State a Section 2 Claim.

The SAC's final count is new, contending that Google and Apple constitute a duopoly that "effectively dominates all meaningful channels by which consumers access online information," SAC ¶ 143, and "create[s] a scenario where anticompetitive conduct thrives, preventing Plaintiffs and the class from participating fairly in the digital marketplace," SAC ¶ 146.  This claim essentially takes Count I and adds "smartphone app distribution" to the alleged market.  SAC ¶ 143.  Among other flaws, the claims as to this alleged market fail because OkCaller.com is not a market participant.  Tacking "smartphone app distribution" onto general search engines cannot cure the standing issues discussed as to Count 1.

The duopoly claim fails for an additional, independent reason.  The Eleventh Circuit has never recognized a claim under the Sherman Act for a duopoly or "shared monopoly." *See JES Properties, Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665, at *18 (M.D. Fla. May 9, 2005), *aff'd on other grounds*, 458 F.3d 1224 (11th Cir. 2006).  And many other courts have rejected the concept as a matter of law.  *See Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[A] § 2 claim can only accuse one firm of being a monopolist."); *Feldman v. Jackson Mem'l Hosp.*, 571 F. Supp. 1000, 1011 (S.D. Fla. 1983) ("[A] shared monopoly, even if proven, would not necessarily violate § 2."), *aff'd*, 752 F.2d 647 (11th Cir. 1985).

17

**CONCLUSION**

For the reasons discussed above, the SAC should be dismissed with prejudice.

Date:  January 6, 2025

Respectfully submitted,

/s/ Edward M. Mullins

Kenneth C. Smurzynski (*pro hac vice*)
Aaron P. Maurer (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
+1 (202) 434-5000
ksmurzynski@wc.com
amaurer@wc.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
Madeline A. Woodall (*pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-80395@cases.warrenlex.com

Edward M. Mullins (Florida Bar No. 863920)
Ana M. Barton (Florida Bar No. 85721)
Sujey S. Herrera (Florida Bar No. 92445)
REED SMITH LLP
200 South Biscayne Boulevard, Suite 2600
Miami, Florida, 33131
+1 (786) 747-0200
+1 (786) 747-0299 facsimile
emullins@reedsmith.com
abarton@reedsmith.com
sherrera@reedsmith.com

*Attorneys for Defendant Google LLC*

19