**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

Case No. 9:24-cv-80395-RLR-BER

GREENFLIGHT VENTURE CORPORATION,

   Plaintiff,

v.

GOOGLE LLC,

   Defendant.

---

**DEFENDANT GOOGLE'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT .......................................................................................................................................1

I.      Count 1 Fails to State a Section 2 Claim. ................................................................................ 1

II.     Count 2 Fails to State a Section 1 Claim. ............................................................................... 2

        A.      Plaintiffs Fail to Show that SAC Plausibly Alleges an Agreement. ...................... 2

        B.      Count 2 Fails for Additional Reasons. .................................................................. 3

III.    Count 3 Fails to State a Section 2 Claim. ............................................................................... 5

IV.    Count 4 Fails to State a Claim Under California's Unfair Competition Law..................... 5

        A.      The "Unlawful Business Practices" Prong. ............................................................. 5

        B.      The "Unfair Business Practices" Prong. ................................................................ 7

        C.      The "Fraudulent Business Practices" Prong........................................................... 8

V.     Count 5 Fails to State a Section 2 Claim. ............................................................................... 9

CONCLUSION ...................................................................................................................................10

# **TABLE OF AUTHORITIES**

|  |  |
|---|---|
| *Cases* | **Pages** |

*American Tobacco Co. v. United States*,
    328 U.S. 781 (1946)..................................................................................................9

*Beasley v. Tootsie Roll Indus., Inc.*,
    85 Cal. App. 5th 901 (1st Dist. 2022).......................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................1

*Bloom v. Alvereze*,
    498 Fed. App'x 867 (11th Cir. 2012) .....................................................................10

*Cable Holdings of Ga., Inc. v. Home Video, Inc.*,
    825 F.2d 1559 (11th Cir. 1987) ................................................................................1

*Camacho v. Auto. Club of S. Cal.*,
    142 Cal. App. 4th 1398 (2d Dist. 2006)...................................................................8

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) ..................................................................................1

*Casault v. Fed. Nat. Mortg. Ass'n*,
    915 F. Supp. 2d 1113 (C.D. Cal. 2012) ...................................................................9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................................5, 7, 8

*Central Va. Community College v. Katz*,
    546 U.S. 356 (2006)..................................................................................................9

*Dreamstime.com, LLC v. Google LLC*,
    470 F.Supp.3d 1082 (N.D. Cal. 2020) .....................................................................8

*Dreamstime.com, LLC v. Google LLC*,
    54 F.4th 1130 (9th Cir. 2022) ..................................................................................8

*Drum v. San Fernando Valley Bar Assn.*,
    182 Cal. App. 4th 247 (2d Dist. 2010).....................................................................7

*Feldman v. Palmetto Gen. Hosp., Inc.*,
    980 F. Supp. 467 (S.D. Fla. 1997) .......................................................................3, 4

*Fla. Seed Co. v. Monsanto Co.*,
    105 F.3d 1372 (11th Cir. 1997) ................................................................................1

# TABLE OF AUTHORITIES
*(continued)*

                                      *Cases*                                             **Pages**

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................................7

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ............................................................................................7

*Huls v. Llabona*,
  437 F. App'x. 830 (11th Cir. 2011) ....................................................................................6

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................................9

*In re Flat Glass Antitrust Litig.*,
  385 F.3d 350, 360 (3d Cir. 2004) ........................................................................................3

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................................................................9

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ...........................................................................................4

*JES Prop., Inc. v. USA Equestrian, Inc.*,
  253 F. Supp. 2d 1273 (M.D. Fla. 2003) ..............................................................................3

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
  72 F.3d 1538 (11th Cir. 1996) .............................................................................................2

*Lombard's Inc. v. Prince Mfg. Inc.*,
  583 F. Supp. 1572 (S.D. Fla. 1984) .....................................................................................3

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) .............................................................................................................2

*People v. Casa Blanca Convalescent Homes, Inc.*,
  59 Cal. App.3d 509 (4th Dist. 1984) ...................................................................................8

*Sidibe v. Sutter Health*,
  4 F. Supp. 3d 1160 (N.D. Cal. 2013) ..................................................................................7

*Sinaltrainal v. Coca-Cola Co.*,
  578 F.3d 1252 (11th Cir. 2009) ...........................................................................................4

**TABLE OF AUTHORITIES**
*(continued)*

*Cases* **Pages**

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
    634 F. Supp. 2d 1009 (N.D. Cal. 2007) ..............................................................................6

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (4th Dist. 1999)..................................................................................8

*St. George v. Pinellas County*,
    285 F.3d 1334 (11th Cir. 2002) ...........................................................................................3

*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*,
    12 F.3d 609 (6th Cir. 1993) .................................................................................................4

*Williams v. Obstfeld*,
    314 F.3d 1270 (11th Cir. 2002) ...........................................................................................5


*Statute* **Pages**

18 U.S.C. § 1512.................................................................................................................6

The nature of Plaintiffs' purported claims is revealed in the opening paragraph of the Opposition brief, which analogizes "Big Tech" to George Orwell's *1984*.  DE 63 at 1.  Plaintiffs' animus towards Google cannot replace applicable law, which they scorn as "technical distinctions."  DE 63 at 2.  Beyond its rhetorical embellishments, Plaintiffs—once again—take liberties with the law, including fabricating case quotations.  DE 63 at 19 (purporting to quote *American Tobacco*, 328 U.S. at 810); *see also* DE 48 at 3, and 8 n.3.  Most fundamentally, Plaintiffs seem to believe that they should be excused from pleading adequate facts now and can await discovery.  *E.g.*, DE 63 at 8.  That is not the law.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (courts should not "send[] the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint" (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984))).  The Court has previously dismissed similar, if not identical, claims of the FAC.  DE 53.  Google respectfully requests that the Court do the same with the claims of the SAC and with prejudice.

## ARGUMENT

### I. Count 1 Fails to State a Section 2 Claim.

GFVC fails to show "that it is a customer or competitor in the relevant antitrust market" and therefore cannot prove antitrust injury and lacks antitrust standing as to Count 1.  *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997); *see* DE 62 at 2–4.

GFVC persists in its implausible claim that it could become a GSE.  The new "facts" alleged are simply more speculation that a website that, since its founding, has been limited to performing reverse telephone number look-ups by accessing Caller Name ID systems, SAC ¶ 47, could morph into a website that could respond to any query, no matter the subject matter.  And even if GFVC's allegations were plausible (and they are not) it would still need to allege "(1) an intention to enter the business and (2) a showing of preparedness to enter the business."  *Cable*

1

*Holdings of Ga., Inc. v. Home Video, Inc.*, 825 F.2d 1559, 1562 (11th Cir. 1987) (cleaned up). Plaintiffs have alleged neither.

Likewise, the Court previously and correctly held that the fact that a link to GFVC's website can be included in the SERP which Google creates in response to a user's query does not give GFVC antitrust standing. DE 53 at 8. In response, GFVC has pleaded additional facts about the *mechanism* by which its website might become visible to Google Search (*i.e.*, the use of Google Webmaster Tools ("GWT")), but none of that changes the fundamental dynamics the Court reviewed and rejected previously. Nor does GFVC's invocation of *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018), DE 63 at 3, advance its cause. That case does not address antitrust standing, which is the issue on which GFVC's Count 1 fails.

In sum, Plaintiffs continue to have no answer to what the Court identified as the germane question: "how was the Plaintiff in the instant case used as a conduit for the Defendant to harm competing search engines, such as Bing?" DE 53 at 5. Plaintiffs new allegations do not even attempt to answer that question. And merging together two insufficient arguments does not render a valid one. DE 63 at 6 ("[T]he addition of GWT to the GSE market, combined with recent developments (Googlebot access) substantiating the 'proliferating vertical' as actual GSE competitors, squarely places OkCaller's harm in the 'inextricably intertwined' category.").

## II.     Count 2 Fails to State a Section 1 Claim.

### A.     Plaintiffs Fail to Show that SAC Plausibly Alleges an Agreement.

A Section 1 claim requires "an agreement between two or more persons to restrain trade, because unilateral conduct is not illegal under section 1." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996). Plaintiffs do not so much as attempt to identify such an agreement, with the exception of references to the "ISA Agreement" with Apple, for which they fail to allege any facts to show that it is an agreement "to restrain trade." *See* DE 62 at 4–6.

2

Merely alleging a company has an agreement with a third party is insufficient to state an antitrust claim.  As explained in Google's opening brief, the Eleventh Circuit has held dismissal proper where a plaintiff identified an agreement, but otherwise made "conclusory allegation[s] of a conspiracy to restrain trade."  DE 62 at 5 (citing *Lombard's Inc. v. Prince Mfg. Inc.*, 583 F. Supp. 1572, 1573–74 (S.D. Fla. 1984), *aff'd*, 753 F.2d 974 (11th Cir. 1985)).

Plaintiffs seek to avoid the requirement that they allege an agreement to restrain trade by arguing that "the Eleventh Circuit allows plaintiffs to plead 'plus factors' from which one can infer a conspiracy or agreement."  DE 63 at 11.  In response to Google's motion, Plaintiffs identify a single "plus factor," arguing that Google purportedly acts contrary to its self-interest by preferencing large advertising spend to the detriment of short-term user satisfaction, citing *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004).  *See* DE 63 at 11–12.  Plaintiffs include no citation to the SAC that has any discussion of Google's alleged undermining of short-term interests in consumer satisfaction, and Plaintiffs' brief is the first time this allegation appears.  It therefore carries no weight.  *See, e.g.*, *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (at the motion to dismiss stage, the scope of the Court's review is limited to the four corners of the complaint).  Even if the Court were to consider Plaintiffs' argument to supplement its pleading, preferencing high-spend advertisers is not plausibly contrary to Google's interest.  DE 62 at 6.

**B.     Count 2 Fails for Additional Reasons.**

*General Search Services*:  As explained above, Plaintiffs lack antitrust standing as to this market.  *See Feldman v. Palmetto Gen. Hosp., Inc.*, 980 F. Supp. 467, 470 (S.D. Fla. 1997).

*Vertical Search Provider Services*:  Plaintiffs do not contest that its alleged VSP market contains products that are not substitutes.  DE 63 at 7.  That admission dooms the claim.  *JES Prop., Inc. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1282 (M.D. Fla. 2003).  Their

3

invocation of a so-called SSNDQ test, DE 63 at 7, does not save it.  Even if satisfaction of such a test could suffice (and no case is cited suggesting it would), merely citing a test and alleging facts that would satisfy it are two different matters.  The allegations related to a SSNDQ test in the SAC are conclusory and cannot satisfy *Iqbal*.  SAC ¶¶ 64, 70, 73, 81, 85; *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) ("The vague and conclusory nature of these allegations is insufficient to state a claim for relief, and will not do." (cleaned up)).

***Directory Information Services***:  Plaintiffs do not attempt to address the deficiencies identified in Google's opening brief, instead insisting that they be allowed to develop their market definition as the case develops.  DE 63 at 8.  That is not the law.  *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338–39 (11th Cir. 2010) (dismissal of Sherman Act claim because "the complaint's allegations of the relevant product market are legally insufficient").

***Internet Content Access***:  Plaintiffs are wrong to suggest that the antitrust standing is not a requirement for a Section 1 claim.  *See Feldman*, 980 F. Supp. at 470 (dismissing both Section 1 and Section 2 claims because "plaintiff lacks antitrust standing").  For the reasons discussed above and in Google's opening brief, DE 62 at 8, Plaintiffs lack standing to bring Section 1 claims in this (ill-defined) market.

***Single-Brand Market for Google Referred Traffic***:  Google's opening brief pointed out, *inter alia*, that (1) in order to maintain a single-brand market claim the product must be "unique" and "no reasonable substitutes [can] exist" and (2) the SAC admits that alternatives exist.  DE 62 at 9 (quoting *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 614 (6th Cir. 1993); SAC ¶ 78).  Plaintiffs do not address this argument, instead rebutting the imagined argument that single-brand markets are *per se* forbidden.  DE 63 at 9 ("While courts do treat single-brand markets skeptically, it is not accurate to suggest they are *per se* barred at the motion-to-dismiss

4

stage."). Google never argued such, and Plaintiffs' response to a strawman argument does not save their flawed single-brand market theory.

### III.  Count 3 Fails to State a Section 2 Claim.

As explained in Google's opening brief, Count 3 suffers from multiple, independent fatal flaws that require its dismissal. *See* DE 62 at 9–11. In their opposition, Plaintiffs principally address one—suggesting that GFVC's prior relationship with Google was equivalent to the one described in *Aspen Skiing*. The SAC comes nowhere close. GFVC argues its relationship with Google was akin to a "joint venture." DE 63 at 12. But such a legal conclusion is entitled to no weight unless facts are alleged to support it. A joint venture requires the following elements: "(1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control." *Williams v. Obstfeld*, 314 F.3d 1270, 1275–76 (11th Cir. 2002) (cleaned up). The SAC does not allege such facts (nor could it).

### IV.  Count 4 Fails to State a Claim Under California's Unfair Competition Law.

#### A.  The "Unlawful Business Practices" Prong.

Under this prong of the UCL, the statute borrows violations of other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Thus, if the Sherman Act allegations are dismissed, they cannot provide the basis to satisfy this prong (whether they remain relevant to the "unfair" prong is discussed in § IV.B., *infra*). *See Beasley v. Tootsie Roll Indus., Inc.*, 85 Cal. App. 5th 901, 912–16 (1st Dist. 2022) (affirming dismissal of UCL claims under "unlawful" prong for failure to allege violations of any law). The opposition argues that because the SAC references the Sherman Act, "as well as other federal and state laws," SAC ¶ 131, it can satisfy this prong because, supposedly, it need not state the "statutory violation with specificity." DE 63 at 15. Plaintiffs are wrong. It is well established that "the

5

plaintiff bringing a claim based on the unlawful prong must identify the particular section of the statute that was allegedly violated, and must describe with reasonable particularity the facts supporting the violation." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (citing cases) (granting a motion to dismiss an unlawful claim under the UCL because claimant did "not specify any statute that they allege was violated"). Plaintiffs argue that their invocation of 18 U.S.C. § 1512 elsewhere in the SAC satisfies this requirement. This is incorrect for three independent reasons. First, it is not clearly invoked in Count 4. Second, as previously explained, DE 62 at 13, Plaintiffs do not specify which offense under 18 U.S.C. § 1512 Google allegedly committed, and certainly do not state any of the distinct elements or *mens rea* requirements required for each offense. *Compare* SAC ¶ 136 *with Sonoma Foods, Inc.*, 634 F. Supp. 2d at 1022 (explaining that a plaintiff must specify the section of the statute allegedly violated, along with particular facts supporting the violation). Third, as described in Google's first motion to dismiss, the allegation rests entirely on speculation. DE 41 at 11 n.7; DE 48 at 8; *see also* DE 62 at 13.

Finally, the Opposition makes an entirely new allegation—that Google violated the FTC's "Enforcement Policy Statement on Deceptively Formatted Advertisements." DE 63 at 15. It is axiomatic that "[p]laintiffs cannot amend a complaint through an argument raised in opposition to a motion to dismiss." *Huls v. Llabona*, 437 F. App'x. 830, 832 n.5 (11th Cir. 2011) (per curiam). But even if this allegation had been made in the SAC, it would fail. Leaving aside whether a policy statement can satisfy this prong of the UCL in the first place, the FTC guidance concerns *advertisements*. There is no allegation in the SAC alleging that Google acted deceptively (or at all) with regard to advertisements.

6

### B. The "Unfair Business Practices" Prong.

In *Cel-Tech,* the California Supreme Court made clear that the UCL has "a more precise test for determining what is unfair" than "amorphous" tests that use "[v]ague references to 'public policy.'" 20 Cal. 4th at 185. Plaintiffs ignore that, with repeated overtures to acts as "unfair" and violative of what they consider "public policy" should be. Plaintiffs also attack straw men. Google does *not* argue that the UCL is "bound by antitrust thresholds." DE 63 at 17. Instead, Google's argument is that Plaintiffs' "unfair" claim cannot survive because the factual allegations for that claim "overlap entirely with the business practices addressed in . . . the unlawful prong[] of the UCL." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017); *see also Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018); *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1181 (N.D. Cal. 2013). Indeed, the allegations in Count 4 (that Google engages in "manipulation of search rankings to favor its own products," that there are "losses of developer time and resources," and lack of transparency, SAC ¶¶ 132–34) are the very same allegations Plaintiffs make for their antitrust claims. *See* SAC ¶ 125 ("Google systematically favors its own products"); SAC ¶ 117 (developers have suffered "lost revenue streams [and] increased operational costs"); SAC ¶ 57 ("Google's methodologies lacked in transparency, resulting in antitrust losses"); SAC ¶ 73 ("reduce[d] transparency about how businesses are ranked").

The case that Plaintiffs rely on, DE 63 at 16, confirms that if "'the conduct is deemed reasonable and condoned under the antitrust laws,' there is no violation of the UCL" under the unfair prong. *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 253–54 (2d Dist. 2010) (citation omitted) (holding that defendant's "unilateral refusal" to sell its membership list to plaintiff, even if to suppress price competition, did not violate any prong of the UCL because

7

"'the right to refuse to deal remains sacrosanct' and 'the mere refusal to deal does not violate the spirit or policy of antitrust law.'" (collecting cases)).

Plaintiffs' other attempts to distinguish the case law fare no better. Plaintiffs claim that courts "have allowed 'unfair' UCL claims to proceed where a dominant platform's opaque policies injure smaller businesses[,]" DE 63 at 17, but cite only to *Dreamstime.com, LLC v. Google LLC*, where the court dismissed plaintiff's claims with prejudice. 470 F. Supp. 3d 1082 (N.D. Cal. 2020), *aff'd,* 54 F.4th 1130 (9th Cir. 2022). That the court muses, in a single sentence, whether a different claim could have satisfied Rule 12(b)(6)'s pleading requirements is pure dicta—it is not a holding that Google's ranking changes could be "unfair" as a matter of law. *Dreamstime*, 54 F.4th at 1142; *see also* DE 53 at 10 (rejecting Plaintiffs' reliance on dicta from *Dreamstime*). Plaintiffs' other case citations make it obvious that they are relying on rhetoric alone. They cite to *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 866 (4th Dist. 1999), DE 63 at 17, for an outdated standard of unfair conduct and omit that the internal citation for that standard comes from *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (4th Dist. 1984), which was expressly abrogated by *Cel-Tech.*, 20 Cal. 4th at 184–85. *See also* DE 63 at 16 *citing Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1398, 1405–06 (2d Dist. 2006) (holding no violation of the unfair prong for an insurance company to collect payment in a car accident from the uninsured plaintiff, even if the collection letter allegedly contained misrepresentations of the law). Because Plaintiffs fail to make any allegations unique to their unfair claim, it must fall together with the unlawful claim.

    C.    **The "Fraudulent Business Practices" Prong.**

As for the claim of fraudulent business practices, Plaintiffs are wrong on the law, and do not meet the heightened Rule 9(b) pleading requirements. DE 62 at 16. Plaintiffs concede that they do not and cannot plausibly plead any actual reliance from consumers as a result of

8

statements that Google is a "neutral search engine." Instead, Plaintiffs claim that they do not have to prove actual reliance, citing *In re Tobacco II Cases*. DE 63 at 18. That case in fact holds the opposite: "a claim of misrepresentation as the basis of [a] UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." 46 Cal. 4th 298, 306 (2009). *See, e.g.*, *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1012 (N.D. Cal. 2012) (law "require[s] a UCL claim to allege actual reliance[.]"); *Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1129 (C.D. Cal. 2012) (a claim of fraudulent conduct under the UCL "must allege the existence of a duty to disclose, as well as reliance[.]") (citation omitted), *aff'd*, 658 F. App'x 872 (9th Cir. 2016). Plaintiffs do not allege that Google has a duty to disclose its search ranking practices, nor do they allege that consumers actually rely on any alleged statements concerning how Google ranks search results. Because Plaintiffs fail to plead either of the two necessary elements of a fraud claim under the UCL, this claim must be dismissed.

**V.      Count 5 Fails to State a Section 2 Claim.**

Plaintiffs spend the bulk of their opposition contending that duopoly or "shared monopoly" claims are not *per se* forbidden under Section 2. DE 63 at 18–19. In doing so, Plaintiffs primarily rely on *American Tobacco Co. v. United States*, 328 U.S. 781 (1946). To begin with, Plaintiffs' analysis fabricates quotations. Opposition at 19 quotes: "The power that controls the market by destroying competition . . . is a monopoly . . . though it be shared by three persons acting in concert." This language does not appear in *American Tobacco* or any other case that undersigned counsel was able to locate. In fact, the Court's review in *American Tobacco* was expressly limited to whether the exclusion of competitors is a necessary element of monopolizing under Section 2. 328 U.S. at 784. The discreet question of who must combine to constitute a conspiracy under section 2 was not squarely addressed. As such, Plaintiffs' reliance on the case is misplaced. *Cf. Central Va. Community College v. Katz*, 546 U.S. 356, 363

9

(2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated"). It remains true that the Eleventh Circuit has never recognized a claim under the Sherman Act for a duopoly or "shared monopoly" claim. *See* DE 62 at 17.

Regardless of its propriety as a legal theory generally, it is still the case that Plaintiffs have not plausibly pleaded that they have antitrust standing, *see* DE 62 § I, or any anticompetitive conduct on Google or Apple's part. For the first time, Plaintiffs state that the Apple ISA Agreement "signals a mutual commitment to lock out potential challengers to either platform." This allegation is nowhere made in the SAC, and Plaintiffs fail to provide an explanation (let alone a plausible one) as to how an agreement to make Google Search the default GSE on Apple devices indicates an intent to reinforce Apple's control over its App Store. Plaintiffs also claim that the ISA Agreement is "at the heart of Count V," but the SAC does not relate that agreement to Plaintiffs' duopoly claims in any way. *See* SAC ¶¶ 82–86 (definition of Internet Content Access market); ¶¶ 142–148 (Count 5). To the contrary, the only market that the SAC relates to the ISA agreement is the GSE market. SAC ¶ 12 ("Google has been found to control approximately 90% of the GSE market, which it has achieved and maintained through a series of exclusionary agreements and anticompetitive practices, such as the ISA Agreement with Apple. These practices have effectively foreclosed competition in the GSE market[.]").

## CONCLUSION

For the reasons discussed above, the SAC should be dismissed with prejudice. *See, e.g.*, *Bloom v. Alvereze*, 498 Fed. App'x 867, 884 (11th Cir. 2012) ("After a district court grants an opportunity to amend and identifies the pleading's deficiencies, if the plaintiff fails to submit a proper pleading, dismissal with prejudice is appropriate.").

| | |
|---|---|
| Date: January 28, 2025 | Respectfully submitted, |
| | /s/ *Edward M. Mullins* |
| Kenneth C. Smurzynski (*pro hac vice*) | Edward M. Mullins (Florida Bar No. 863920) |
| Aaron P. Maurer (*pro hac vice*) | Ana M. Barton (Florida Bar No. 85721) |
| WILLIAMS & CONNOLLY LLP | Sujey S. Herrera (Florida Bar No. 92445) |
| 680 Maine Avenue, SW | REED SMITH LLP |
| Washington, DC 20024 | 200 South Biscayne Boulevard, Suite 2600 |
| +1 (202) 434-5000 | Miami, Florida, 33131 |
| ksmurzynski@wc.com | +1 (786) 747-0200 |
| amaurer@wc.com | +1 (786) 747-0299 facsimile |
| | emullins@reedsmith.com |
| Matthew S. Warren (*pro hac vice*) | abarton@reedsmith.com |
| Erika H. Warren (*pro hac vice*) | sherrera@reedsmith.com |
| Madeline A. Woodall (*pro hac vice*) | |
| WARREN KASH WARREN LLP | *Attorneys for Defendant Google LLC* |
| 2261 Market Street, No. 606 | |
| San Francisco, California, 94114 | |
| +1 (415) 895-2940 | |
| +1 (415) 895-2964 facsimile | |
| 24-80395@cases.warrenlex.com | |

11