Ayelet Faerman, Esq.
Faerman Law P.A.
3859 NW 124 Ave
Coral Springs, FL 33065
954-271-8484
ayelet@faerman.law
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GREENFLIGHT VENTURE CORPORATION *on behalf of themselves and all others similarly situated* <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE LLC <br><br> Defendant. | Case No. **24-cv-80395-RLR** <br><br><br> **PLAINTIFF'S MOTION FOR SPECIAL HEARING TO ADDRESS REPLY SUR-REPLY** |

## PLAINTIFF GREENFLIGHT VENTURE CORPORATION'S
## MOTION FOR SPECIAL HEARING TO ADDRESS REPLY AND SUR-REPLY

Plaintiffs Greenflight Venture Corporation and Jeffrey D. Isaacs, M.D., by and through undersigned counsel, respectfully move this Court for a special hearing and related relief in light of procedural irregularities and the potential unfair prejudice resulting from Defendant Google LLC's improper reply briefing.

On February 4, 2025, the Court issued an order dismissing this case. However, at the time of dismissal, Plaintiffs were in the process of filing a motion to strike Google's improper reply or, in the alternative, to file a sur-reply—a critical pleading that directly addressed misstatements in Google's reply and clarified technical aspects of Plaintiffs' claims, particularly regarding Counts I and II. Because the dismissal occurred before Plaintiffs could file, their opportunity to be fairly heard was effectively nullified. Accordingly, Plaintiffs respectfully request that the Court: 1) Hold a Special Hearing to address this matter of national importance , and 2) Supplement the Record to include Plaintiffs' intended sur-reply or, in the alternative, reconsider its ruling based on a fully informed briefing process.

Plaintiffs' sur-reply, prepared before the Court's ruling, specifically addressed the Court's concerns about market participation, standing, and the developer-facing side of Google's GSE ecosystem. However, the dismissal order preemptively foreclosed any consideration of these arguments—effectively allowing Google's reply to stand unchallenged. This deprived Plaintiffs of fundamental fairness in the briefing process and undermined the adversarial nature of these proceedings.

Google's reply (i) mischaracterized American Tobacco and Plaintiffs' duopoly allegations, (ii) ignored Supreme Court precedent on multi-sided platforms, and (iii) introduced misleading factual assertions regarding indexing markets. Additionally, Google erroneously accused Plaintiffs of "fabricating" quotations—an allegation factually untrue and highly prejudicial. Given that these arguments directly influenced the Court's ruling, Plaintiffs have a strong interest in supplementing the record to correct the reply's misstatements before a final judgment stands.

It is noted that the Court expressed difficulty in understanding certain technical aspects of Plaintiffs' claims, particularly regarding how Google Webmaster Tools ("GWT") operates as an integral part of the general search engine ("GSE") ecosystem. Given the national importance of this matter and the role of advanced technology in digital market competition, a hearing would allow direct clarification and explanation. Further, Plaintiff Dr. Isaacs, has been diagnosed with Asperger's and a past head injury (as disclosed over a decade ago). While counsel has ensured all pleadings were thoroughly researched, accurately discussed, and legally sound, it is important that the Court fully consider any technical explanations without undue reliance on assumptions about Plaintiffs' capabilities or reliance on AI-generated content. Plaintiffs have spent five years tirelessly researching the core issues here, particularly the complex intersection of digital marketplaces and *Amex* two sided platform legal theory. This was well before Google's AI transformer was publicly available. This appears to be where the Court's confusion lies – and a similar argument was made to the CAND District Court five years ago, again, before Google Transformer availability. A special hearing is necessary to explain to the Court these concepts, rather than dismissing them and faulting Plaintiffs for their inherent complexity.

This request is made in good faith and the Court's inherent authority permits the relief sought in the interest of fairness, judicial efficiency, and a complete record. Plaintiffs respectfully submit that a hearing would facilitate a more informed adjudication of the case, particularly given the complex and novel nature of the issues at hand.

*Below This Point Is Unmodified and Was Ready For Filing On February 4 Prior To Dismissal Order*

Plaintiff, Greenflight Venture Corporation ("Greenflight"), by and through undersigned counsel, respectfully moves this Court for leave to file a sur-reply in response to Defendant Google LLC's ("Google") Reply in Support of its Motion to Dismiss.

To ensure a fair and just adjudication of the issues, Greenflight respectfully seeks leave to file a sur-reply addressing Defendant Google's improper and prejudicial statements. Although the Local Rules do not expressly provide for sur-replies, this Court retains discretion to permit them when a reply brief raises new issues or arguments that, if unaddressed, would prejudice the moving party. Moreover, the Court possesses inherent authority under Federal Rule of Civil Procedure

12(f) to strike from the record any material that is redundant, immaterial, impertinent, or scandalous. Under Rule 12(f), a court may strike from a filing any 'redundant, immaterial, impertinent, or scandalous matter.' Courts routinely strike *ad hominem* attacks and baseless allegations where they serve no probative purpose and create unfair prejudice.

Defendant Google's reply includes ad hominem remarks and inflammatory assertions—that are not only factually inaccurate but also irrelevant to and harmful to the merits Big Tech regulation. Such statements serve no probative purpose and risk unfairly biasing the Court against the plaintiffs and/or creating regressive precedent. Accordingly, Greenflight respectfully requests that the Court both grant leave for a sur-reply and consider striking these improper portions of Google's reply to preserve the integrity of the proceedings.

### Google's Erroneous Allegation of a "Fabricated" American Tobacco Citation

Google's Reply brazenly accuses Plaintiffs of "fabricating" a quotation from the Supreme Court's landmark decision in *American Tobacco Co. v. United States*, 328 U.S. 781 (1946). Specifically, Google contends that Plaintiffs misquoted the phrase: "The power that controls the market by destroying competition . . . is a monopoly . . . though it be shared by three persons acting in concert." According to Google, this "language does not appear in *American Tobacco* or any other case" and therefore must have been "fabricated." That accusation is erroneous and should be stricken. The Supreme Court in *American Tobacco* unequivocally states that:

> "It is undoubtedly true . . . that trade and commerce are 'monopolized' within the meaning of the federal statute when, as a result of efforts to that end, such power is obtained that **a few persons**, **acting together**, can control the prices of a commodity moving in interstate commerce." *American Tobacco*, 328 U.S. at 811 (quoting *United States v. Patten(1913)*, 187 F. 664, 672 (S.D.N.Y.), rev'd on other grounds, 226 U.S. 525 (1913)).

Hence, the Court expressly recognizes that "a few persons" can, by their concerted power, destroy or exclude competition, and that such an arrangement constitutes a forbidden monopoly under Section 2 of the Sherman Act. The so-called "fabrication" Google complains of simply paraphrases the Court's reference to "a few persons" as "three persons," and "acting together" as "acting in concert." Google's accusation is demonstrably false. The *American Tobacco* Court explicitly recognized that a 'few persons, acting together' can control a market and exclude competition. Plaintiffs' phrasing—substituting 'three' for 'few'—does not change the substantive meaning and certainly does not constitute fabrication. Google's attempt to create a distraction

through semantic nitpicking should be rejected. Google's entire objection is nothing more than an effort to impugn Plaintiffs' citation to well-established Supreme Court authority denouncing oligopoly conduct.

Indeed, *American Tobacco* is particularly apt here because it unambiguously confirms that a "few persons," working in tandem, can violate Section 2 upon obtaining "such power . . . that they are able . . . to exclude actual or potential competition from the field" and intend to do so. *Id.* at 809–11. Google, evidently alarmed by the parallel between "Big Tobacco" in 1946 and "Big Tech" in 2025, reflexively argues that Plaintiffs must have "fabricated" the most critical language in *American Tobacco*. Not so. The relevant language appears, in substance, on page 811 of the opinion (citing *Patten*). If Google's challenge rests on whether "few persons" is the same as "three persons acting in concert," that challenge is trivial and misguided. *American Tobacco* stands for the principle that multiple large firms (whether "few" or specifically "three") collectively acquiring exclusionary power violate Section 2.

It is telling that Google seeks to trivialize or cast doubt on *American Tobacco*—the Supreme Court's decision on how a group of large, dominant firms can be found liable under Section 2 without necessarily forming a single unified entity. Google evidently wishes the Court to reject any parallel between "Big Tech" and the "Big Tobacco" triopoly that faced scrutiny and condemnation in 1946.Contrary to Google's invitation, the Court should not set aside the American Tobacco reference that is so central to Bog Tech. Instead, the appropriate remedy is to strike or disregard Google's baseless accusation of "fabrication," or at the very least, permit leave to file the Sur-reply with the "few persons, acting together" quotation.

Recent developments at filing time further validate the continuing force of *American Tobacco*. Notably, Apple—the other half of the alleged Google–Apple duopoly—has now stepped into the Department of Justice's ongoing litigation involving the "ISA" arrangement. Apple sought status to intervene in the remedial proceedings, which was denied. Hours ago, the Hon. Amit Mehta denied Apple's Emergency Motion for Stay as, essentially, meritless. He reiterated that his "*court has concluded that Google violated federal antitrust law by entering into exclusive search distribution agreements with ... Apple) to achieve and maintain a monopoly in ... general search services.*"

This precisely proves the point Plaintiffs are making about the "duopoly" phenomenon: two major technology giants share and reinforce one another's market power across smartphone distribution and general search. As *American Tobacco* teaches, "a few persons, acting together," can maintain a monopoly by excluding or suppressing potential rivals. That Apple is concerned enough to join or shield Google's appeal only underscores how cohesively their shared power operates—*just* as the three tobacco giants in *American Tobacco* joined forces for decades to dominate the cigarette market.

Given these realities, Google's entire line of attack—claiming Plaintiffs "fabricated" the controlling Supreme Court principle from *American Tobacco*—is disingenuous. Google's contrary contention is not a legal argument but a rhetorical maneuver designed to sow unwarranted doubt about settled antitrust doctrine. In short, the ISA agreement is a 'big deal' with obvious implications for the duopoly that are so substantial, Apple has repeatedly pushed to intervene. Google cannot be allowed to taint this case, concerning the developer impact of ISA, by improperly suggesting Plaintiffs' reference to *American Tobacco* is somehow itself improper. The Court should reject—and, indeed, strike—Google's spurious claim that Plaintiffs "fabricated" the key *American Tobacco* language. That language has appeared in Supreme Court rulings for nearly a century, reflecting the bedrock principle that a powerful oligopoly, if acting in concert, can commit a Section 2 violation by excluding competition. It was widely recognized in *American Tobacco* itself and remains black-letter law to this day. Google's dubious attempt to impugn Plaintiffs' textual fidelity is a mere distraction from the fundamental parallels: "Big Tech," perhaps even more so than "Big Tobacco" before it, is alleged to have formed an unacceptable grip on society.

### GWT is Part of the GSE—Plaintiffs Are Participants in the Multi-Sided Market

A Sur-Reply is also necessary to indicate Plaintiffs respectfully object to Google's reply concerning Count I of the SAC, which raises a straightforward Section 2 claim rooted in the "general search services" ("GSE") market. Contrary to Defendant's assertions, Plaintiffs have adequately alleged that they both participate in and are injured by Google's conduct in this GSE market, and have further shown a plausible roadmap—based on new regulatory or remedial measures—to evolve or expand OkCaller.com into a competitor. By dismissing Plaintiffs' claims as "implausible," the reply effectively asks the Court to decide factual disputes on a motion to dismiss—precisely what *Twombly* and Rule 12(b)(6) warn against. Plaintiffs have alleged a multi-sided GSE ecosystem in which they are directly engaged, and that suffices at this stage.

The reply mischaracterizes *Amex*, 138 S. Ct. 2274 (2018), as purely addressing "market contours" rather than standing. In reality, *Amex* emphasizes that platforms serving two or more distinct user groups often form a single relevant product market. Here, Plaintiffs plausibly allege that Google's GSE operates on multiple sides: (1) end-users performing queries, and (2) developers submitting and optimizing content through GWT. SAC ¶¶ 64–66. By refusing to accept OkCaller's content or systematically de-indexing it, Google wields monopoly power over the developer-facing side of its GSE platform. Plaintiffs are thus "consumers" of GSE distribution—an integral side of the same market. Whether or not *Amex* "expressly addresses standing" does not matter; multi-sided markets under *Amex* necessarily inform whether plaintiffs participate in the relevant market for standing purposes.

Google faults Plaintiffs (and raises an impermissible new argument in a reply) for not meeting an "intention and preparedness" standard (citing *Cable Holdings of Ga., Inc. v. Home Video*, 825 F.2d 1559, 1562 (11th Cir. 1987)) to become a general search engine. But the SAC explicitly pleads that, with access to raw indexing data (as is proposed under forthcoming DOJ or EU regulations), OkCaller would be able to expand or pivot into broader search. SAC ¶¶ 66–70, 107. That is a factual allegation, not idle conjecture, given OkCaller's established capacity to handle billions of phone lookups and the successful developer tools Plaintiffs already deploy. Under *Twombly*, such allegations of nascent competition—if accepted as true—are enough to plausibly allege the potential for OkCaller to enter the broader GSE market. Whether Plaintiffs can indeed surmount those barriers is quintessentially a fact issue not suitable for resolution at the pleading stage.

The reply clings to the notion that Plaintiffs must prove they served as a direct "conduit" to harm rival GSEs like Bing. DE 53 at 5. But in *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982), the Supreme Court emphasized that an antitrust plaintiff may assert standing if their injury is "inextricably intertwined" with the overall scheme to maintain monopoly power. The SAC sets forth precisely such an inextricable link: by foreclosing OkCaller's content, Google simultaneously deprives rival search engines of the scale, data, and user base necessary to challenge Google. SAC ¶¶ 60–70, 107. Plaintiffs need not show a literal "conduit" arrangement; they need only demonstrate a direct nexus between Google's conduct and their own competitive injury. That connection is thoroughly alleged here—OkCaller's forced exclusion is "a necessary step" in Google's monopolization strategy. Google never touches upon the logical flow of injury,

where a search engine like Bing, in a competitive GSE market, would bring higher traffic to OkCaller. That proximate, foreseeable, and reasonable logic is hardly speculative.

At bottom, Google's reply reiterates its core stance that OkCaller.com is "just a reverse phone lookup site" and not plausibly in the GSE market. But Plaintiffs' allegations of a multi-sided GSE platform, coupled with the proposed regulatory solutions that would open Google's indexing data, must be taken as true at this stage. *Brown Shoe Co. v. United States*, 370 U.S. 294, 322 (1962), teaches that market definition often requires a rich, fact-driven inquiry—particularly so in novel digital contexts. The SAC thus amply states a plausible Section 2 claim, making dismissal under Rule 12 inappropriate.

**Plaintiffs Allege a Plausible "Agreement" for Section 1 Purposes**

Google urges dismissal based on the supposed absence of any identifiable "agreement" under Section 1 of the Sherman Act, invoking *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538 (11th Cir. 1996) to argue that only unilateral conduct is at issue. This caricature omits the heart of Plaintiffs' claims. It's also rather incredulous, given Apple's extraordinary efforts to intervene in the ISA final hearing. The SAC explicitly identifies the ISA Agreement as the cornerstone of Google's collusive practices—an arrangement that ensures the near-exclusive funneling of Apple device users to Google's own services, thereby foreclosing legitimate avenues for OkCaller and similarly situated vertical or specialized platforms. ¶¶ 113–116. The arrangement is not just a "baseline contract" but rather the specific mechanism through which Google and Apple coordinate to restrain trade and stifle competition in search distribution.

Defendant's reply wholly avoids Plaintiffs' salient point that Bing, a competing search engine, continues to rank hundreds of thousands of OkCaller's pages. This fact underscores the crux of Plaintiffs' injury: the artificially depressed traffic on Google's platform results not from any inherent deficiency in OkCaller's content or indexing capabilities, but rather from Google's purposeful agreement(s)—particularly with Apple—to exclude or marginalize competing search channels. Given the existence of an alternative search engine that does rank OkCaller pages, Plaintiffs have provided a clear, non-speculative demonstration that OkCaller would, absent such restraints, receive higher volumes of organic traffic. This is the exact antitrust injury that the Sherman Act is designed to redress. The reply's silence on this direct comparative evidence is telling and confirms that Plaintiffs' Section 1 allegations cannot be dismissed on an "agreement-deficiency" theory. Google relies on Lombard's Inc. v. Prince Mfg. Inc., 583 F. Supp. 1572

(S.D. Fla. 1984), aff'd, 753 F.2d 974 (11th Cir. 1985), to suggest that naming a contract is insufficient to transform unilateral conduct into an actionable agreement. But Plaintiffs have demonstrated far more than a bare-bones contract. The ISA Agreement, along with supporting "plus factors," evidences collusive behavior aimed at restricting competition from rival search engines and specialized providers. Plaintiffs' allegations of "plus factors" include, among other things, Google's willingness to act against its stated consumer-focused interests (i.e., providing the "best results") by prioritizing websites that spend heavily on Google Ads—even to the point of degrading organic SERP quality. This is precisely the kind of concerted action that can support an inference of illegal restraint under the Supreme Court's *Twombly* framework, which allows courts to infer an agreement based on a factually coherent narrative of inter-firm collaboration to suppress competition.

### A Sur-Reply Is Necessary for Objecting to New Factual Disputes Under *Aspen*

Regarding Count III, Defendant insists that Plaintiffs' allegations of refusal to deal are "far removed from *Aspen Skiing*." Google's argument that *Aspen Skiing* requires a 'joint venture' imposes a standard that does not exist in the case law. *Aspen Skiing* does not require the plaintiff to establish a formal joint venture; rather, it recognizes that a 'preexisting, profitable course of dealing' can establish a duty to deal under Section 2. Google's abrupt termination of a longstanding, profitable relationship with OkCaller—after a decade of substantial revenue generation—fits precisely within Aspen Skiing. At most, Google's argument raises a factual dispute about the nature of the relationship, which cannot be resolved on a Rule 12(b)(6) motion. Google's Reply is effectively a concession that they dispute the facts and have waived a Rule 12 defense.

### Google's Erroneous UCL Assertions Must Be Addressed

The Reply states that the "unlawful" prong fails if no Sherman Act violation exists, while the "unfair" prong merely overlaps with the Sherman allegations, and the "fraudulent" prong fails for want of deception or reliance. This argument oversimplifies the SAC's content. Plaintiffs' "unlawful" allegations draw not just on the Sherman Act, but also on the possibility of other statutory or common law predicates, including 18 U.S.C. § 1512 with respect to alleged retaliation. The Reply never addresses whether Plaintiffs' references to the FTC's guidelines on disclosing self-preferencing or "deceptively formatted advertisements" might supply an independent UCL

basis if Google's undisclosed practice of elevating self-owned properties or advertisers is considered a form of deception. The "unfair" prong likewise extends to incipient or partial antitrust infringements or to conduct that violates the spirit of competition laws. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163 (1999), states that a practice that significantly threatens or harms competition can be "unfair" under the UCL even if the plaintiff's Sherman Act claim remains unproven at early stages. The Reply argues that Plaintiffs' "unfair" allegations fully duplicate the Sherman Act. While the SAC does indeed incorporate the alleged antitrust violations by reference, it also provides new details in paragraphs 133 through 140 showing that the absence of transparency, the alleged retaliatory indexing, and the moral/ethical dimension of a gatekeeper exploiting smaller developers' reliance go beyond a standard Section 2 or Section 1 cause of action. Plaintiffs point to Google's two-decade failure to disclose or adopt neutral indexing metrics, which injures developers in ways that might not be fully captured by a strict market-definition analysis. The Reply's blanket statement that no "distinct allegations" exist is incorrect, because paragraphs 136 to 139 specifically describe the "retaliation" angle, the alleged violation of public policy, and the lack of meaningful recourse for smaller publishers. Neither *Twombly* nor *Cel-Tech* requires that these be wholly disconnected from the antitrust allegations; the UCL's "unfair" prong intentionally accommodates broader policy-based wrongdoing. Moreover, it is common practice – like in *Epic v. Apple* – to permit incipient 'lower threshold' UCL claims derived from Sherman.

### Google's Duopoly Case References Do Not Defeat *American Tobacco*

American Tobacco has long been cited as acknowledging that a small group acting in concert can be liable for a Section 2 violation. Defendant's position that the Eleventh Circuit has never recognized "shared monopoly" is immaterial, because the Supreme Court's jurisprudence is clear, and no Eleventh Circuit ruling bars multiple firms from being found collectively liable if they unify their conduct to prevent competition.

### No Place for Ad Hominem Attacks in Nationally Important Big Tech Dialogue

As the Court is likely aware, in 2017 Google published its research paper on AI Transformers ("Attention is all you need"), which in its early stages has already revolutionized computing. Google's lead AI scientist, Geoffrey Hinton—himself a descendant of three generations of distinguished mathematical intelligence theory researchers—resigned from Google and has publicly expressed concern that AI carries approximately a 15% chance of destroying humanity within the next decade. It is undisputed that *Big Tech* has remained largely unregulated

for the past twenty years and that significant portions of the population harbor deep concerns about this unregulated oligopoly leveraging AI, which could yield disastrous consequences. Our Objection noted the concerns raised by Congress, bipartisan Senate reports, and President Joe Biden regarding a "dangerous oligopoly." Yet Google's reply chose to ignore these serious issues—with notably no rebuttal to the President's concern—and instead resorted to *ad hominem* attacks on the Plaintiffs. Defendant appears to wish the Court to believe that our reference to the dystopian vision of *1984* is nothing more than conspiracy drivel. In reality, however, *1984* is actually a conservative reference that pales to the genuine fears expressed by Google's own Hinton about the potential end of humanity, not merely political oppression. While the Court might initially construe Google's comments as "par for the course," under the Federal Rules of Civil Procedure it is manifestly unfair to engage in such immaterial, untrue attacks —especially in a case that addresses concerns shared by nearly all segments of society.

Google's response does not engage with the substantive concerns raised in the objection regarding unchecked Big Tech power, AI, and monopolization. Instead, it dismisses these concerns as fringe. This is improper argumentation that seeks to discredit Plaintiffs rather than address the issues at hand. Courts have recognized that such *ad hominem* attacks serve no legitimate purpose and may be stricken under Rule 12(f).[1] Notably, Judge Mehta repeatedly flagged Google's ongoing and problematic litigation posturing. Google wishes to turn the tables, facing Plaintiffs with fewer resources than the DOJ. That is unacceptable.

There exists a Big Tech duopoly—and, make no mistake, much like Big Tobacco, it is harming our nation. For these reasons, we respectfully request that the Court strike Defendant's improper and unfounded characterizations of our reliance on *1984* and the *American Tobacco* precedent.

**CONCLUSION**

Defendant's Reply thus fails in multiple respects: it raises new lines of argument not in the Motion to Dismiss (for instance, shifting from a "lack of standing" theory to a newly minted claim

---

[1] Plaintiff reserves the right to introduce Google's *ad hominem* attacks as evidence in future proceedings. While the company claims innocence of Section 1512 allegations, their court filings indicate a level of animus, despite the fact that Plaintiffs are simply exercising their rights (as nearly all of society now does) to question Big Tech's influence and control.

that Plaintiffs must show an "express contract" to be deemed a refusal to deal), it misconstrues controlling legal standards (especially *Amex* for multi-sided markets, *Aspen Skiing* for refusal to deal, and *Cel-Tech* for the UCL's "unfair" prong), and it disregards the additional factual material the SAC sets forth, especially the detail on bridging webmaster tools with GSE distribution, the decadelong profitable preexisting relationship, and the expansions on Apple–Google synergy. Because each portion of Defendant's Reply is undermined by these omissions, there is little substance left to justify a dismissal under Rule 12(b)(6), and a Sur-Reply is necessary to clarify these points. Discovery would be the proper venue to test whether Google's vaguely claimed "business judgment" truly explains why it ended a profitable arrangement with OkCaller.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), counsel for Greenflight emailed counsel for Google regarding the relief requested herein. Google outright opposes this motion, and refused to engage in a Meet & Confer.

Respectfully submitted on this 5th day of February 2025.

/s/Ayelet Faerman  
AYELET FAERMAN, ESQ.  
FBN: 102605  
Faerman Law, P.A.  
3859 NW 124th Ave  
Coral Springs, FL 33065  
Tel: (954) 271-8484  
Fax: (954) 271-8474  
ayelet@faerman.law  

/s/ Keith Mathews  
Keith Mathews  
Attorney for Plaintiff  
*Pro Hac Vice*  
NH Bar No. 20997  
American Wealth Protection  
Manchester, NH 03105  
Ph. 603-622-8100  
keith@awplegal.com

[Proposed Order Granting Leave for Sur-Reply]

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY

THIS CAUSE came before the Court upon Plaintiff Greenflight Venture Corporation's Motion for Leave to File Sur-Reply ("Motion"). The Court, having reviewed the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED. Plaintiff may file a sur-reply, within 3 days of the date of this Order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this ___ day of February, 2025.

_____

The Honorable Robin Rosenberg

United States District Judge

EXHIBIT A



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served on this 5rd day of February, 2025, to all parties of record, including GOOGLE LLC counsel of record, via electronic mail as per the Federal Rules of Civil Procedure and Local Court Rules.

/s/ Ayelet Faerman
Ayelet Faerman, Esq.
Faerman Law P.A.
3859 NW 124 Ave
Coral Springs, FL 33065
954-271-8484
ayelet@faerman.law