Dr. Jeffrey Isaacs
11482 Key Deer Circle
Wellington, FL 33449
jeffreydi@gmail.com
(212) 257-0737



FILED BY _WJ_ D.C.

AUG 11 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GREENFLIGHT VENTURE CORPORATION<br>*on behalf of themselves*<br>*and all others similarly situated,*<br>JEFFREY ISAACS (*pro se*)<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC<br><br>　　　　　　　Defendant. | Case No. **24-cv-80395-RLR**<br><br><br>**PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT** |

## **PLAINTIFF'S RULE 59 MOTION TO ALTER OR AMEND (RECONSIDERATION)**

Plaintiff Jeffrey Isaacs, *pro se*, respectfully moves under Federal Rule of Civil Procedure 59(e) that the Court alter or amend the judgment entered on February 14, 2025 (deemed entered on July 14, 2025 pursuant to Fed. R. Civ. P. 58(c)(2)(B) and Fed. R. App. P. 4(a)(7)(A)(ii)). Alternatively, the Court may adjudicate this motion under Rule 60.

Reconsideration of the Court's prior Order (DE 65) is justified by significant new developments in analogous litigation that undermine the rationale of this Court's dismissal. In April 2025, after this Court's Order, the U.S. District Court for the Northern District of California denied Google's motion to dismiss in *Yelp Inc. v. Google LLC* (24-cv-06101-SVK, Doc. 47), a case materially similar to this one involving Google's alleged suppression of a vertical search competitor in its search results. The California court held that *Yelp's* allegations of Google's self-preferencing and content suppression stated a plausible claim for monopolization and *unfair competition*, and it allowed those claims to proceed. This directly undercuts this Court's conclusion that Google's suppression of content cannot give rise to antitrust or UCL liability. At minimum, *Yelp* provides persuasive authority that the claims here are not futile and deserve adjudication on the merits, or at the very least, leave to amend to incorporate the *Yelp* complaint further[1].

The Order therefore failed to adjudicate a key claim under California's Unfair Competition Law, namely, Plaintiff's claim that Google's retaliatory suppression of Plaintiff's website *OkCaller* violated federal witness retaliation laws (18 U.S.C. § 1512) and thus constituted an "unlawful" business practice under the UCL. This unlawful retaliation claim was squarely raised in the Second Amended Complaint ("SAC") and Plaintiffs briefings, yet the Court's dismissal Order did not address it, instead dismissing the UCL count in summary fashion (and in a footnote characterizing Plaintiff's statutory references as "vague"). Reconsideration is warranted to ensure this claim is heard on its merits.

---

[1] At time of dismissal, the Court had been briefed upon the existence of the similar *Yelp* case. Additionally, press coverage was provided indicating that, in light of the DOJ antitrust verdict against Google, cases like *Yelp* (and this case) were expected to finally end the two decade 'status quo' that Google Search couldn't be challenged in court.

Plaintiff notes that Google's retaliatory conduct has continued unabated since dismissal of this case. OkCaller's organic traffic, which dropped by around 98% in late 2022, further and distinctly decreased to near zero just weeks after the Court's order. Plaintiff continues to suffer ongoing harm from the alleged retaliation and anticompetitive behavior. This ongoing injury highlights the manifest injustice of denying Plaintiff any forum for relief on a claim that was not substantively ruled upon.

## PROCEDURAL POSTURE

On February 4, 2025, the Court granted Defendant's motion to dismiss all of Greenflight's claims without leave to amend. On February 14, 2025, the Court dismissed Plaintiff's claims which had been severed *sua sponte*. Accordingly, under Fed. R. Civ. P. 58(c)(2) and Fed. R. App. P. 4(a)(7)(A)(ii), the judgment is treated as "entered" 150 days after the entry of the last and final Order – i.e. on July 14, 2025. This Motion is filed on August 7, 2025, which is within 28 days of the July 14, 2025 judgment date, and is therefore timely under Rule 59(e).

Although the Court's dismissal Order cautioned that any motion for reconsideration might be summarily denied, Plaintiff submits that the circumstances here meet the strict standard for Rule 59(e) relief. A Rule 59(e) motion is appropriate to correct clear errors of law or fact, to account for new evidence or intervening changes in law, or to prevent manifest injustice. Plaintiff's motion is based on (1) a clear oversight in the Court's adjudication of the UCL claim, (2) intervening new legal authority (the *Yelp v. Google* decision) undermining the Court's reasoning, and (3) the need to prevent manifest injustice in light of ongoing retaliatory harm. Plaintiff does not seek to relitigate matters already decided, but rather to ensure that an important claim receives proper consideration and that recent developments in the law are taken into account.

## ARGUMENT

### I. The *Yelp v. Google* Case Illustrates the Viability of Plaintiffs' Claims

*Both Yelp and Plaintiffs Faced Google's Self-Preferencing in a Directory Service*

*Yelp's* recent lawsuit against Google demonstrates a scenario strikingly similar to Plaintiffs' case. *Yelp*, like Plaintiffs, operates a directory/reference service (*Yelp* provides a platform for local business information and reviews). In August 2024, Yelp sued Google alleging

that Google abused its dominance in online search to favor Google's own competing service (Google's local search results) over *Yelp's* directory. Specifically, Yelp's complaint asserted that Google, unable to create a better local search product, uses its monopoly power in general search to make sure that users never get to local search competitors in the first instance, diverting traffic away from those rivals and toward Google's own inferior local search product. This is textbook "self-preferencing": Google steering users to its own directory service and away from a rival's platform, even when the rival's information is higher quality.

Plaintiffs' allegations mirror this. Both *Yelp* and Plaintiffs offer specialized directory search or reference platforms, and both claim Google leveraged its search engine monopoly to disfavor organic results pointing to their services, while prominently displaying Google's own content or preferred partners. In *Yelp's* case, Google allegedly promoted its in-house local review listings over *Yelp's* results, reducing traffic to *Yelp*. Here, Google's conduct is analogous; Plaintiffs allege Google's search design and algorithms channeled users away from Plaintiffs' directory and towards Google's preferred advertising buyers and sellers, and their own local search products. In both instances, the competing directory service lost visibility and users because of Google's interventions. The overlap is unmistakable:

- *Directory Services*: *Yelp's* platform for local business info and Plaintiffs' platform (e.g. OkCaller for reverse phone lookup) are both information directory services reliant on search visibility.
- *Self-Preferencing Conduct*: *Yelp* and Plaintiffs assert Google altered its search results or interface to prefer its own vertical services (local reviews, or direct answers) over organic links to the competitors.
- *Traffic Diversion*: Both claim Google's behavior diverted user traffic away from their services. *Yelp* saw users who would have clicked *Yelp* instead kept on Google's page or sent to Google's content; Plaintiffs similarly experienced a dramatic drop in referrals (OkCaller's traffic "dropped to zero") once Google intervened.
- *Competitive Harm*: Each alleges this self-preferencing stifled competition. Consumers receive a lower-quality result (Google's "inferior" product in *Yelp's* view) while the more innovative or specialized competitor is marginalized.

In short, *Yelp's* case confirms that Plaintiffs are not simply "every person who has ever posted something on the internet," but rather are direct competitors in a specific market sub-sector targeted by Google's conduct. Both *Yelp* and Plaintiffs stand in the same position as business rivals whose services were undermined by Google's search engine self-preference.

### *Google's Self-Preferencing Was Treated as Anticompetitive in Yelp's Case*

Significantly, the Northern District of California court in *Yelp Inc. v. Google LLC* recognized that such self-preferencing allegations state a viable claim under the antitrust laws and California's Unfair Competition Law. *Yelp's* complaint included claims for monopolization and attempted monopolization of the "local search services" market, as well as related claims (monopoly leveraging) and a UCL claim. At the core of these claims was Google's self-preferential design of its search results page, a "monopolistic product design/redesign" favoring Google's own local search content. These are essentially the same types of allegations Plaintiffs raise here, just applied to a different category of search service.

In *Yelp*, the court credited the plausibility of Google's anticompetitive conduct. Judge Susan van Keulen's order recounts that Yelp alleged Google redesigned its search results (the "SERP") to steer users toward Google's own, inferior local search vertical and away from competitors. This is exactly analogous to Plaintiffs' contention that Google's search interface changes and algorithmic tweaks steered users away from Plaintiffs' directory. The *Yelp* court treated such self-preferencing as a form of exclusionary conduct – potentially a tying arrangement or a form of refusal to deal or leveraging – that can violate Section 2 of the Sherman Act. In other words, using a dominant general search engine to disadvantage a competing specialized search service is a recognized theory of antitrust harm.

Notably, *Yelp* also included a UCL claim paralleling the antitrust violations. The court allowed *Yelp's* UCL claim to proceed to the same extent as the antitrust claims. The same should hold true here. Because Plaintiffs' allegations of Google's anticompetitive self-preferencing are at least as plausible as *Yelp's*, Plaintiffs' UCL claim (predicated on the Sherman conduct *and* distinct retaliation facts) should likewise survive. The *Yelp* precedent undercuts any notion that Google's conduct is beyond the reach of unfair competition law. To the contrary, a nearly identical UCL theory is being litigated successfully by *Yelp*.

### *The Yelp Decision Confirms These Claims Should Proceed to Discovery*

After full briefing on Google's motion to dismiss in *Yelp*, the court refused to dismiss the core of that case, allowing most claims to proceed. In the April 2025 order, two months after this case was dismissed, Judge van Keulen held that *Yelp* had sufficiently pleaded that Google holds monopoly power (or at least a dangerous probability of attaining it) in the relevant markets and engaged in exclusionary conduct. *Yelp* supported its allegations with relevant market specific facts, for example, that Google had well over 90% of the local search market by user share, and that Google's share of local business reviews had grown dramatically at *Yelp's* expense. The court found this sufficient to indicate monopoly power in that niche, noting that *Yelp's* allegation of ~90% share was bolstered by studies showing consumers overwhelmingly using Google's local search over others. In contrast, *Yelp's* own share (and presumably traffic) in that arena had plummeted. These facts closely parallel Plaintiffs' description of Google's grip over search queries relevant to Plaintiffs' service and the corresponding collapse of Plaintiffs' traffic once Google favored its own results.

Importantly, the *Yelp* court recognized that many issues raised by Google's defense could not be resolved on a Rule 12(b)(6) motion. Google argued, for instance, that Yelp's claims were time-barred because Google's self-preferencing began as far back as 2007. Judge van Keulen rejected that argument at the pleading stage, explaining that "at this early stage of the litigation" the court could not conclude the claims were untimely, especially given ambiguity about when Google's market power in local search truly reached a monopolistic threshold. She noted that the point in time when Google "crossed the threshold" into having durable monopoly power in the submarket was "not yet clear" based on the complaint alone. This acknowledges that factual development is needed on questions of market power accrual and the impact of Google's conduct over time. Likewise, in our case, questions such as when Google's conduct began to significantly harm OkCaller's rankings, or how Google's algorithms and policies throttled Plaintiff's growth, cannot be resolved without discovery. The need for evidence and expert analysis on these points makes dismissal at the pleadings stage inappropriate.

Moreover, *Yelp* demonstrates that antitrust standing and market definition are fact-intensive matters best assessed on a developed record. Yelp's standing to sue Google was

predicated on its participation in the "local search services" market – a market distinct from general web search. Yelp did not sue merely as a disgruntled website owner; it sued as a competitor in a targeted submarket (local business lookups) where Google's conduct had anticompetitive effects. The California court implicitly recognized the validity of that market definition by allowing the case forward. Here, Plaintiffs likewise have identified a specific market (reverse phone lookup services and others) in which Google's actions caused competitive harm. Whether that market is cognizable and whether Google's dominance there is sufficient are classic factual and economic questions. Dismissing the case without allowing Plaintiffs to prove the contours of the market, Google's power, and the competitive impacts would short-circuit the analysis.

Furthermore, a key premise of this Court's dismissal was the notion that Google's suppression of content, absent a duty to include competitors in its search results, does not amount to a legal violation, under *Aspen*. The *Yelp* decision calls that premise into question. While this Court focused on Google's lack of an "affirmative duty to disclose" algorithmic details or to treat rivals equally in search rankings, the *Yelp* court focused on whether Google's conduct, as alleged, could *harm competition* and maintain monopoly power. By framing the issue as one of competitive harm rather than a mere *right-to-carry* duty, *Yelp* found the complaint sufficient because it alleged that Google's self-preferencing conduct foreclosed competition from more innovative rivals by ensuring users never reach those rivals' services. This is precisely what Plaintiff alleges here: Google uses its monopoly power in general search to make sure that users never get to [Google's] competitors in the first instance, diverting traffic away from those rivals – in our case, diverting traffic away from OkCaller and other directory services and toward Google's own preferred content. The *Yelp* court's willingness to entertain this theory strongly suggests that Plaintiff's nearly identical theory was at least plausible, and that dismissing it at the Rule 12 stage may have been premature.

In addition, *Yelp* undermines Google's contention (accepted by this Court) that Plaintiff's UCL claim had to fall if the federal antitrust claims fell. *Yelp* indicates that where antitrust allegations are viable, the UCL will follow; conversely, if this Court were to revisit and find merit in Plaintiff's antitrust or retaliation allegations, the UCL claim should likewise be revived. But even apart from the federal claims, Plaintiff's UCL claim here has an independent predicate in 18 U.S.C. §1512, as discussed below. At a minimum, it shows that the claim theory of Google illegally

maintaining dominance by suppressing competing content is not fanciful; it has survived scrutiny in a court of competent jurisdiction and is proceeding toward discovery and potential trial. Fundamental fairness suggests that Plaintiff's functionally similar claims should not be forever foreclosed at the pleading stage in this Court, especially when new case law has eroded the foundation of the Court's prior ruling.

To be clear, Plaintiff acknowledges that *Yelp v. Google* is not controlling precedent in the Eleventh Circuit. However, its significance lies in the persuasive reasoning and the factual parallel to our case, which is about as persuasive as it gets. The decision represents an intervening development that has changed the court's viewpoint on the legal sufficiency of such claims, which is a recognized basis for granting Rule 59(e) relief. At the very least, *Yelp* demonstrates that reasonable jurists can and do find merit in claims like Plaintiff's. Plaintiff urges this Court to consider *Yelp* as indicative of how a full merits analysis might differ from the initial dismissal here.

### *The Court's Floodgates Concern Is Misplaced in Light of Yelp*

In dismissing Plaintiffs' claims, this Court voiced a concern that accepting Plaintiffs as a Google competitor would mean 'every website on the internet with a search presence could sue [Google] in antitrust,' an outcome the Court deemed untenable. With respect, *Yelp* shows why that feared parade of horribles will not come to pass. Not every entity with a webpage can sue Google – only those who can plausibly allege a competitive relationship and antitrust derived-injury in a relevant market. *Yelp* met that standard by pleading that it directly competes in the market for local search results and local search advertising, and that Google's conduct harmed it within those markets.

Plaintiffs are not akin to a casual Google user or a mere "passive recipient of traffic." Plaintiffs (like Yelp) operated a competing search/lookup service serving the same user need that Google targeted with its own features. It is precisely this kind of direct competitor that antitrust law empowers to challenge a monopolist's exclusionary conduct. The fact that *Yelp*, a well-known market participant in a Google dominated niche, can pursue its case undermines the notion that

recognizing Plaintiffs' standing opens the floodgates[2]. The universe of potential plaintiffs remains limited to those who can plead facts showing they were competitors in a market where Google's behavior had anticompetitive effects. Far from inviting "everyone" to sue Google, adherence to antitrust principles will screen out plaintiffs (as this Court rightly wishes) whose grievances are not tied to a genuine market competition injury. But where, as here, a plaintiff is situated similarly to *Yelp*, running a service that competes on the merits until Google tilts the playing field, the law affords an opportunity to seek redress.

## II. The Court Overlooked Plaintiff's UCL "Unlawful Retaliation" Claim Based on 18 U.S.C. § 1512, Warranting Reconsideration

Plaintiff's Fourth Claim for Relief asserted that Google's actions violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., under all three prongs: unlawful, unfair, and fraudulent. In particular, the SAC explicitly alleged that Google engaged in unlawful retaliatory conduct proscribed by federal law. SAC ¶136 states that "Google's actions are unfair and illegal to the extent the company retaliates against antitrust advocates, such as Plaintiffs… the conduct violates federal witness protection statutes, including 18 U.S.C. 1512, and therefore is [unlawful] under the UCL." Plaintiff further alleged specific facts indicating Google learned of Plaintiff's prior litigation against Big Tech and then "dropped OkCaller's rankings" and blacklisted the site in retaliation. In short, the SAC pleaded that Google likely[3] violated 18 U.S.C. § 1512 (the federal witness tampering/retaliation statute) by retaliating against Plaintiff for engaging in protected litigation, and that this statutory violation served as a predicate "unlawful… business practice" under the UCL.

Under California law, the UCL's "unlawful" prong is broad in scope – it "means that the business practice violates another legal rule". The UCL thus borrows violations of other laws (federal or state) and makes them independently actionable as unfair competition. Here, Plaintiff's

---

[2] Unlike *Yelp*, this case is a class-action and, in fact, the first-to-file for a Google Developer Compensation Fund. By definition, such lawsuits help regulate any 'floodgates' by efficiently representing all potential parties, which in this case is the putative group of developers.

[3] The Court apparently attributed vagueness to the fact that Plaintiff's didn't outright allege Defendant to be guilty of witness retaliation. That was responsible pleading awaiting discovery. As a civil case, more likely than not suspicion suffices, certainly at the pleadings stage. In fact, if there was any question before, Plaintiff is under massive retaliation by Big Tech (see below), facing potentially millions in manufactured sanctions for simply interpreting res judicata the same way this Court – and Google – did. That case by Apple suspiciously failed to mention this case, when it documented (over twenty-five pages) of related litigation.

theory was that Google's suppression of OkCaller violated federal law (18 U.S.C. §1512's prohibition on retaliating against a party to federal proceedings), rendering Google's conduct "unlawful" under the UCL. This is a cognizable and serious claim. Indeed, the SAC detailed the elements of Google's retaliatory motive and conduct (Plaintiff's protected litigation activity, Google's adverse action in delisting OkCaller, and temporal proximity) to support a prima facie case of retaliation. Greenflight's counsel emphatically pressed this point in the briefing, arguing that "Google's abrupt deindexing of OkCaller can reasonably be viewed as retaliatory conduct in violation of 18 U.S.C. § 1512(b)–(d)" and that such unlawful conduct supports UCL liability. Defendant, in its Reply, did not meaningfully rebut the substance of this retaliation theory.

Despite the prominence of this issue, the Court's Dismissal Order did not address whether Plaintiffs' UCL-unlawful claim predicated on §1512 was adequately pleaded or viable. The Order's discussion of the UCL count focused almost entirely on the "fraudulent" prong (concluding Google had no duty to disclose its search algorithm) and on perceived overlap between the UCL claim and the federal antitrust claims. The Court then dismissed the UCL count in a broad brush, stating in a footnote that "Greenflight's vague references to other violations of the law cannot form the basis of liability under other prongs of the California Business Code." With respect, this cursory treatment overlooks the specific and substantive §1512 retaliation allegation in the SAC. Plaintiff's invocation of 18 U.S.C. §1512 was not a mere "vague reference" to some unspecific law; it was a deliberate effort to tether Google's conduct to a particular federal statute embodying a well-recognized public policy against retaliating for participation in legal proceedings. Far from being an extraneous aside, this allegation is central to Plaintiff's theory of why Google's conduct was "unlawful" and "unfair." By failing to grapple with the §1512-retaliation contention, the Court has effectively left Plaintiff's retaliation claim unadjudicated – something Apple has pounced on (see below). In any case, the Court did not analyze *Foman* factors concerning futility of amendment; if the Court sought additional §1512 facts, it seems highly likely that amendment would be able to clarify any vagueness.

This omission is a clear error warranting relief under Rule 59(e). The Eleventh Circuit has held that a judgment may be altered to address claims or issues that were raised but not ruled upon, especially where the omission could preclude a deserving claim entirely (thereby working a manifest injustice). Plaintiff respectfully submits that the Court should reconsider its dismissal of

the UCL claim in order to directly adjudicate the unlawful retaliation theory on its merits. In doing so, the Court can consider whether Plaintiff's allegations that Google learned of Plaintiff's lawsuits and then used its 'monopolistic power' to retaliate by suppressing OkCaller plausibly state a UCL violation. Plaintiff contends that they do, as the SAC lays out specific facts supporting an inference of retaliatory intent and causation. At the very least, Plaintiff should be afforded the opportunity to proceed on this claim or to amend it if the Court finds any technical pleading deficiency.

Moreover, addressing the UCL retaliation claim would not prejudice Defendant, which had a full opportunity to rebut the §1512 theory on the motion to dismiss (and indeed *did not* argue that such conduct would be lawful or insufficient, only employing strawman argument to attack Plaintiff's allegations' proximity links. If Plaintiff's retaliation allegations are credited as true at the pleading stage, Google's conduct plainly violates public policy and a federal criminal statute – a paradigmatic case of "unlawful" and "unfair" business practice under California law. Put simply, no court has held that a business may retaliate against a private party for exercising legal rights, with impunity under the UCL. To the contrary, such retaliatory suppression strikes at the heart of the "unethical, oppressive, unscrupulous" conduct the UCL's broad provisions are designed to address. Plaintiff respectfully urges the Court to reconsider its prior dismissal and allow this claim to be heard.

### III.   Conflicting Determinations with the Northern California District

In a related matter pending in the Northern District of California—*Coronavirus Reporter Corp. and Greenflight Venture Corp. v. Apple Inc.*, No. 3:24-cv-8660-EMC—Judge Chen ruled that Greenflight's claims were barred by *res judicata* because Dr. Isaacs, acting *pro se* in an earlier *Coronavirus Reporter* action (No. 3:21-cv-05567-EMC), had already litigated the "same" interests as Greenflight. That holding treats Dr. Isaacs's *pro se* appearance as if it bound the corporation, notwithstanding the settled rule that a corporation may not appear through a non-lawyer. This Court, by contrast, apparently correctly severed Dr. Isaacs from Greenflight at the outset of the present case (at least as to Sherman Act), recognizing that he could pursue only his individual

claims[4]. The two rulings cannot both be right: either a non-lawyer shareholder's filing binds the corporation (as Judge Chen concluded) or it does not (as this Court concluded).

Because Apple has already relied on Judge Rosenberg's dicta in seeking sanctions in *Coronavirus Reporter II*, Plaintiff respectfully requests that Google, in its response, state whether it agrees with this Court's severance decision (i.e., that Dr. Isaacs may not represent Greenflight) or instead adopts Apple's position that Dr. Isaacs's *pro se* filings can bind the company for res judicata purposes. Google is alleged to jointly monopolize ICAM with Apple and a clear statement from Google will assist both Courts of Appeals in resolving any inconsistent treatment of the corporate representation issue.

### *Privity and standing: why Google cannot have it both ways*

Judge Chen's *Coronavirus Reporter 2025* order treated Dr. Isaacs and Greenflight as being in "perfect privity" for *res judicata* purposes, resting largely on the fact that Greenflight's counsel, Keith Mathews, informally used "client" rather than "client representative" in a handful of e-mails. No evidentiary hearing was held on ownership structure, assignment history, or the scope of Dr. Isaacs' individual rights. By contrast, in this Court Google unequivocally argued, in moving to dismiss the patent infringement counts, that Dr. Isaacs lacked standing because he was not an owner of the patents held by Greenflight. Google thus urged this Court to view the corporation and the individual as legally distinct, non-privy parties. The Court apparently accepted that distinction when it *sua sponte* severed Dr. Isaacs and stayed discovery on his personal claims.

Those two positions cannot both be true. If Dr. Isaacs lacked standing here because he possessed no ownership interest sufficient to sue, then the essential element of privity (a substantial and exceptional identity of interests) is missing (patent holdings, amongst other assets, have no identity), and Judge Chen's res judicata ruling rests on a false premise. Conversely, if Google now

---

[4] Neither court grappled with the issue of a shareholder's standing to bring an antitrust lawsuit, which was Plaintiff's intent in both filings. However, both Google and Apple provided persuasive authority that, generally, shareholders lack standing under Sherman Act. Hence, the CAND case seemingly formed a divergent opinion from this Court – that Plaintiff could and did represent Greenflight as a shareholder, and binding the entity itself. Even if the Court reserves any question about who may pursue antitrust damages, *Yelp* undercuts the premise that such conduct is categorically lawful and confirms that Plaintiff's UCL claim should not have been dismissed at the pleadings stage.

embraces Judge Chen's finding that Dr. Isaacs and Greenflight are privies for all antitrust purposes, it necessarily concedes that its standing argument in this Court was incorrect, and the severance of parties was improvident prior to an evidentiary hearing. Plaintiff therefore requests that Google, in its opposition, state clearly whether it (i) continues to deny privity between Dr. Isaacs and Greenflight (consistent with its standing argument here) or (ii) now affirms privity (consistent with Apple's and Judge Chen's view). If Google selects the latter, Plaintiff reserves the right to file additional claims should the reversal-of-position warrant them.

### *Why the conflict matters, not merely as an academic point*

Judge Chen relied on his "perfect privity" finding to hold that the *Greenflight / Coronavirus Reporter* complaint was barred by *res judicata*, and on that ground imposed sanctions likely exceeding $500,000 against Greenflight and its counsel, forcing bankruptcy as Greenflight's revenue effectively stopped three years ago with OkCaller's demise. If Greenflight and Dr. Isaacs are *not* in privity—as this Court implicitly recognized when it severed Dr. Isaacs and when Google argued Isaacs lacked patent standing—then the prior Apple action could not preclude Greenflight's claims, and the *CAND FAC* pleading would hardly be "frivolous." Put differently, the entire sanctions award rests on a premise that this Court and Google have previously rejected.

Plaintiffs have therefore proceeded in reliance on this Court's view that the corporation and the individual are distinct legal actors. Certainly the USPTO views them distinctly as well. But Apple now urges the opposite view in California, to squash a vocal antitrust advocate, seeking to punish Plaintiffs and their lawyer for Big Tech's defense inconsistencies. Fundamental fairness requires Google to pick a position: either (i) concede that Dr. Isaacs and Greenflight are not privies—undermining the basis for sanctions in the Northern District of California—or (ii) admit that its own standing argument here was incorrect, in which case the 12(b)(6) briefings are voided, at least in part.

### **Pattern of Non-Recognition of Cognizable UCL Retaliation Claims**

Furthermore, there exists a concerning pattern of courts ignoring Plaintiffs' retaliation claims under pressure from exceptionally resourced defendants who collectively and improperly diminish Plaintiffs' allegations. Just last month, the Chen Court completely ignored Greenflight's

well-pled UCL developer retaliation claim against Apple, which was echoed by similar class actions & *amicus* briefs filed by Hagens Berman and Microsoft, respectively. Moreover, that Court blocked an anti-SLAPP filing and awarded sanctions estimated at a half-million dollars against Greenflight (*see supra*). Apple referenced this Court's dicta that "suggestions" of discovery abuse existed. For that reason alone, Plaintiff requests an evidentiary hearing on the purported discovery abuses. Without belaboring the issue, Plaintiff had reasonable suspicion that Google dropped OkCaller because of his involvement in antitrust advocacy. Two subpoenas were issued to Google's Mountain View and Miami offices. Google claimed the witness fees weren't paid, despite the process server attesting otherwise, so Attorney Mathews re-served the subpoenas to cure this and other defects Google complained about. There was nothing harassing about this; in fact, Plaintiffs believe Google had less than clean hands in the matter and should testify in detail.

In fact, Apple's counsel, Gibson Dunn, was recently awarded "Law360 Competition Group of the Year" for getting Apple "off the hook" of $200billion in claims alleged under Dr. Isaacs' claim theory. Gibson Dunn told the federal courts Dr. Isaacs' theories were in the "hinterlands" and disorganized, yet proudly accepted an award for winning such a complex and challenging case. Moreover, Plaintiff's claim theories (per se tying of App Store to iPhone) have recently been filed (five years after Plaintiff developed them) by the esteemed Quinn Emmanual (who got tying essentially wrong in *Epic* five years ago) and Berger Montague. Thus, a real impetus for retaliation exists, and has been ignored by multiple district courts. As it stands, Plaintiff has been amongst the most vocal advocates against Big Tech (as Law360's award evidences). His invention serving 200 million Americans was abruptly shut down, and Apple is laughing all the way to California at the idea *Plaintiffs* abused discovery by simply asking the Court – what happened? This is, respectfully, not the justice Plaintiff sought when he set out to raise Big Tech antitrust awareness five years ago.

For these reasons, as detailed below, Plaintiff respectfully requests that the Court alter or amend the judgment to reinstate and adjudicate Plaintiff's UCL retaliation claim (and other related claims) in light of the Court's apparent oversight and the important legal developments since the dismissal.

## CONCLUSION

WHEREFORE, Plaintiff Jeffrey Isaacs respectfully requests that the Court:

(1) vacate the Court's February 4, 2025 Order granting Defendant's motion to dismiss (DE 65) and reopen this action and the February 14, 2025 OSC denial;

(2) reinstate the Second Amended Complaint or, in the alternative, grant leave to file an amended complaint; and

(3) grant such further relief as the Court deems just and proper,

(4) hold a hearing, in the alternative, before denying this motion.

Respectfully submitted this 7th day of August, 2025.

*Jeffrey Isaacs* (Plaintiff, pro se)

11482 Key Deer Circle
Wellington, FL 33449
jeffreydi@gmail.com
(212) 257-0737

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), Plaintiff emailed counsel for Google regarding the relief requested herein. Google opposes the motion and declined further discussion. Accordingly, the parties were unable to resolve the issues raised herein.

Respectfully submitted on this 7th day of August 2025.

*Jeffrey Isaacs* (Plaintiff, pro se)

11482 Key Deer Circle
Wellington, FL 33449
jeffreydi@gmail.com
(212) 257-0737

